Dennis F. Dunne
Risa M. Rosenberg
Jeremy C. Hollembeak
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Andrew M. Leblanc (*pro hac vice* pending)
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1850 K Street, NW
Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

*Attorneys for Alejandro Francisco Sánchez-Mujica*
*as Foreign Representative of Vitro, S.A.B. de C.V.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>VITRO, S.A.B. de C.V.,<br><br>      Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 10-_____ (___) |

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND REQUEST FOR RELATED RELIEF

Alejandro Francisco Sánchez-Mujica (the "Petitioner"), as the duly authorized

representative of Vitro, S.A.B. de C.V. ("Vitro SAB" or the "Debtor"), the debtor in a voluntary

judicial reorganization proceeding (the "Mexican Proceeding") commenced on December 13,

2010 in the United States of Mexico under the *Ley de Concursos Mercantiles* (the "Mexican

Business Reorganization Act") and currently pending before the Federal District Court for Civil

and Labor Matters for the State of Nuevo León (the "District Court of Nuevo León"),

respectfully submits this verified petition for recognition (the "Verified Petition") seeking entry

of an order (i) recognizing the Mexican Proceeding as a "foreign main proceeding" pursuant to

sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and (ii) granting related relief pursuant to section 1520 of the Bankruptcy Code. In support of the Verified Petition the Petitioner has filed contemporaneously herewith and incorporated herein by reference (i) the Declaration of Alejandro Francisco Sánchez-Mujica, as Foreign Representative of Vitro, S.A.B. de C.V. (the "Foreign Representative Declaration" or "Frgn. Rep. Decl.")[1] and (ii) the Declaration of Alonso Rivera Gaxiola, as Mexican Counsel to Vitro, S.A.B. de C.V. (the "Mex. Counsel Decl."), and respectfully states as follows:

## BACKGROUND

**A.     Vitro SAB's Business**

1.      Vitro SAB is a corporation with variable capital (*sociedad anónima bursátil de capital variable*) organized under the laws of Mexico in 1909 and is a holding company that conducts substantially all of its operations through subsidiaries (collectively with such subsidiaries, "Vitro"). Vitro is the largest manufacturer of glass containers and flat glass in Mexico, with consolidated net sales in 2009 of Ps. 23,991 million ($1,837 million). (See Frgn. Rep. Decl. ¶ 4.) It has manufacturing facilities in 11 countries and distribution centers throughout the Americas and Europe, and exports its products to more than 50 countries worldwide. (See Frgn. Rep. Decl. ¶ 4.) In 2009, 46% of Vitro's consolidated net sales were made in Mexico, while an additional 46% were made in the United States and Europe. (See Frgn. Rep. Decl. ¶ 4.) Vitro's operations are organized into two operating business units: (1) the Glass Containers business unit and (2) the Flat Glass business unit, representing approximately 52% and 47%, respectively, of Vitro's consolidated net sales in 2009. (See Frgn. Rep. Decl.

---

[1]     All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Foreign Representative Declaration.

¶ 4.)  During 2009, Vitro maintained a workforce of approximately 17,000 worldwide, approximately 81% of whom were located in Mexico.[2]  (See Frgn. Rep. Decl. ¶ 4.)

**(i)   *Glass Containers Business***

2.      Vitro's Glass Containers business unit manufactures and distributes glass containers for the soft drink, beer, food, juices, wine and liquor, pharmaceutical and cosmetics industries, as well as raw materials, machinery and molds for the glass industry.  (See Frgn. Rep. Decl. ¶ 5.)  Based on its consolidated net sales of Ps. 12,385 million ($948 million) in 2009, the Glass Containers business unit is the largest glass container producer in Mexico and Central America and among the largest in the world.  (See Frgn. Rep. Decl. ¶ 5.)  Substantially all of Vitro SAB's Glass Containers subsidiaries are wholly owned except for Empresas Comegua, S.A., a joint venture in which Vitro SAB holds an investment of 49.7%.  (See Frgn. Rep. Decl. ¶ 5.)

**(ii)   *Flat Glass Business***

3.      Vitro's Flat Glass business unit focuses on the manufacturing, processing and distribution of flat glass for the construction and automotive industries.  (See Frgn. Rep. Decl. ¶ 6.)  Based on its consolidated net sales of Ps. 11,377 million ($871 million) in 2009, the Flat Glass business unit is the largest flat glass producer in Mexico, the second largest in Latin America, one of the largest distributors of flat glass products in the United States and a leading provider of insulated flat glass products in Spain and Portugal.  (See Frgn. Rep. Decl. ¶ 6.)  Viméxico, a joint venture in which Vitro SAB holds an investment of 91.8%, is a holding company for some of the Flat Glass business unit subsidiaries.  (See Frgn. Rep. Decl. ¶ 6.)  In addition to Viméxico, Vitro SAB has partners in three additional subsidiaries: (i) Cristales

---

[2]         Substantially all such employees are employed by Vitro SAB's affiliates.

Automotrices, S.A. de C.V., which conducts Vitro's automotive glass replacement installation business throughout México City, (ii) Vitro Cristalglass, which is engaged in the manufacturing and distribution of flat glass products for the Spanish, French and Portuguese construction industries, and (iii) Vitro Chaves Industria de Vidrio, S.A., a subsidiary of Vitro Cristalglass in Portugal. (See Frgn. Rep. Decl. ¶ 6.)

**B.** **Vitro SAB's Indebtedness[3]**

4.      As of September 30, 2010, Vitro's aggregate outstanding third party consolidated indebtedness was approximately $1.981 billion,[4] consisting of:

- $1.216 billion in outstanding principal amount under the 2012 Notes, 2017 Notes and 2013 Notes (each as defined below and, together, the "Old Notes");

- $253 million relating to certain of Vitro SAB's and its subsidiaries' derivative financial instruments (including certain agreed upon amounts represented by promissory notes, the "DFI Claims");

- $59 million of debt consisting of the *Certificados Bursátiles* and the ABN Note (each as defined below and, together, the "Other Debt" and, together with the Old Notes and the DFI Claims, the "Restructured Debt");

- $268 million in past-due interest and unamortized discounts (together, the "Accrued Interest"); and

- $185 million of additional indebtedness that Vitro SAB does not plan to restructure or discharge in the Mexican Proceeding (the "Non-restructured Debt").

The circumstances giving rise to Vitro SAB's indebtedness with respect to the Restructured Debt are discussed below. In addition, as of September 30, 2010, Vitro SAB's aggregate outstanding indebtedness to its direct or indirect subsidiaries (the "Intercompany Claims") was approximately $1.91 billion. (See Frgn. Rep. Decl. ¶ 7.)

---

[3]      Certain of Vitro SAB's indebtedness is denominated in pesos. Throughout this Verified Petition, except as expressly set forth in pesos, solely for purposes of presenting Vitro SAB's indebtedness in U.S. dollars, such indebtedness has been converted at a rate of 12.5011 pesos per one U.S. dollar, the Free Exchange Rate as of September 30, 2010.

[4]      (See Frgn. Rep. Decl. ¶ 7 n.4.)

**(i)** ***Old Notes***

5.　　On October 22, 2003 and on February 1, 2007, respectively, Vitro SAB issued (i) $225 million aggregate principal amount of 11.75% Senior Notes due 2013 (the "2013 Notes"), and (ii) $1.0 billion of Senior Notes, comprised of $300 million aggregate principal amount of 8.625% Senior Notes due 2012 (the "2012 Notes") and $700 million aggregate principal amount of 9.125% Senior Notes due 2017 (the "2017 Notes") under separate indentures (as each has been supplemented as of the date hereof, collectively, the "Indentures").  (See Frgn. Rep. Decl. ¶ 8.)  The Old Notes are general unsecured obligations of Vitro SAB, guaranteed, on an unsecured basis, by more than fifty of Vitro SAB's wholly-owned direct and indirect subsidiaries (in such capacities, the "Old Guarantors").  (See Frgn. Rep. Decl. ¶ 8.)

**(ii)** ***DFI Claims***

6.　　As discussed above, Vitro is an international enterprise, receiving the majority of its cash inflows from operations in currencies other than the U.S. dollar.  As a result, it has significant exposure to fluctuations in the interest and currency exchange-rates caused by its commitments on U.S. dollar-denominated indebtedness.  Additionally, because of the large energy requirements of its manufacturing operations, it also has significant exposure to fluctuations in the price of natural gas, its main energy input.  To mitigate these exposures, and in response to market trends during the first seven months of 2008,[5] Vitro SAB and certain of its subsidiaries (collectively, the "Vitro DFI Parties") entered into certain derivative financial instruments (the "DFIs"), including (i) interest rate swap agreements to hedge future interest payments, (ii) currency swap and option agreements to hedge exposure to foreign currency

---

[5]　　During this period, the Mexican peso appreciated 7.4% relative to the U.S. dollar, the Mexican equilibrium interbank interest rates ("TIIE") increased 6.5%, and natural gas prices recorded a sharp price increase, all of which exerted negative pressure on Vitro's operating and financial results.  (See Frgn. Rep. Decl. ¶ 9 n.5.)

exchange rate variations and (iii) forwards and other derivative agreements to hedge its exposure to natural gas price variations. (See Frgn. Rep. Decl. ¶ 9.) By the fourth quarter of 2008, the DFI positions of the Vitro DFI Parties had been materially and adversely impacted by the high volatility in commodity and currency markets in the second half of 2008, forcing the Vitro DFI Parties to unwind the majority of their open positions in the fourth quarter of 2008.[6] The DFI Claims are the result of the Vitro DFI Parties' defaults under the DFIs in early 2009.

### (iii) *Other Debt*

7.       On February 13, 2003, Vitro SAB issued a *Certificados Bursátiles* note (the "*Certificados Bursátiles Vitro 03*") at an annual floating interest rate of 3.25% over the rate on 182-day *Certificados de la Tesorería de la Federación* (i.e., notes issued by the government of Mexico). (See Frgn. Rep. Decl. ¶ 10.) On July 2, 2008, Vitro SAB issued another *Certificados Bursátiles* note (the "*Certificados Bursátiles Vitro 08*" and, together with the *Certificados Bursátiles Vitro 03*, the "*Certificados Bursátiles* ") at an annual floating interest rate of 2.50% over the 28-day TIIE. (See Frgn. Rep. Decl. ¶ 10.) As of September 30, 2010, the aggregate principal amount outstanding under the *Certificados Bursátiles Vitro 03* and *Certificados Bursátiles Vitro 08* was Ps. 150 million ($12.0 million) and Ps. 400 million ($32.0 million), respectively. (See Frgn. Rep. Decl. ¶ 10.) The *Certificados Bursátiles* are senior unsecured obligations of Vitro SAB.

8.       On September 29, 2008, Vitro SAB issued a promissory note (the "ABN Note") in favor of ABN Amro Bank N.V. ("ABN") in the principal amount of $15 million. (See Frgn. Rep. Decl. ¶ 11.)

---

[6]       Specifically, between July 2008 and December 2008, natural gas prices plummeted more than 50%, and the Mexican peso registered a 30% devaluation against the U.S. dollar, reversing the appreciation trend experienced in the first seven months of the year and making it substantially more expensive for Vitro to service its U.S. dollar-denominated debt. (See Frgn. Rep. Decl. ¶ 9 n.6.)

## C.   Events Precipitating Commencement of Mexican Proceeding

### (i)   *Global Recession*

9.       The global economic and financial crisis, and the severe economic recession which began in the second half of 2008, affected each of Vitro's major markets, Mexico, the United States and Spain, and significantly affected its businesses.  The sharp decline in demand for new cars and trucks in the automobile industry, for new homes and buildings in the construction industry and reduced beer bottle demand from the main client of Vitro's Glass Containers unit resulted in a 36.8% decline in Vitro's consolidated operating income for 2008 compared to 2007, from Ps. 2,704 million to Ps. 1,710 million, and a further 22.3% decline in Vitro's operating income for 2009 compared to 2008, from Ps. 1,710 million to Ps. 1,329 million.  (See Frgn. Rep. Decl. ¶ 12.)  Income before taxes decreased from Ps. 175 million in 2007 to a loss of Ps. 7,857 million in 2008 and a loss of Ps. 1,352 million in 2009. (See Frgn. Rep. Decl. ¶ 12.)  Net income decreased from Ps. 131 million in 2007 to a loss of Ps. 5,682 million in 2008 and a loss of Ps. 754 million in 2009.  (See Frgn. Rep. Decl. ¶ 12.)  Even though the economy has shown moderate signs of recovery in 2010, some of Vitro's markets are still experiencing contraction and excess capacity, including the construction sector in the United States and Spain.  For the nine-month period ended September 30, 2010, Vitro's consolidated net sales decreased 4.8% to Ps. 17,498 million ($1,400 million) from Ps. 18,389 million ($1,471 million) for the same period ended September 30, 2009.  (See Frgn. Rep. Decl. ¶ 12.)

### (ii)   *DFI Litigation*

10.       As discussed above, in the second half of 2008, the DFI positions of the Vitro DFI Parties were materially and adversely impacted by the high volatility in commodity and currency markets, resulting in margin calls by its DFI counterparties ("Counterparties") forcing the Vitro

DFI Parties to post $85 million in collateral deposits. (<u>See</u> Frgn. Rep. Decl. ¶ 13.) To eliminate further liquidity deterioration related to additional margin calls, in the fourth quarter of 2008, the Vitro DFI Parties restructured their DFI portfolio and unwound the majority of their open positions to guarantee their ability to continue their normal course of operations. (<u>See</u> Frgn. Rep. Decl. ¶ 13.)

11.     In January 2009, four Counterparties served notices on the applicable Vitro DFI Parties of their default under the relevant DFIs based on the failure to pay approximately $293 million allegedly due thereunder. Over the next 30 days, six Counterparties commenced actions (collectively, the "<u>DFI Litigation</u>")[7] against such Vitro DFI Parties in the Supreme Court of the State of New York demanding payment of approximately $240.3 million plus interest and fees allegedly payable under the DFIs. (<u>See</u> Frgn. Rep. Decl. ¶ 14.) On April 13, 2010, the Supreme Court of New York granted these Counterparties' motions as to the Vitro DFI Parties' liability and referred the matter of damages to a special referee. (<u>See</u> Frgn. Rep. Decl. ¶ 14.)

**(iii)     *Default under Old Notes and Other Debt***

12.     Vitro's defaults under the DFIs resulted in events of default under each Indenture, enabling the trustee or the registered holders of 25% or more in principal amount of each issue of the Old Notes to declare such notes immediately due and payable. To preserve cash necessary to continue its business operations, Vitro SAB stopped interest making payments on the Old Notes, beginning with a $45 million coupon due on February 2, 2009 on the 2012 Notes and 2017 Notes. (<u>See</u> Frgn. Rep. Decl. ¶ 15.) Since that time, Vitro SAB has not made the scheduled

---

[7]     The DFI Litigation includes actions by (i) Credit Suisse International, initiated on January 30, 2009 (Index No. 09-600298); (ii) Citibank, N.A., initiated on February 06, 2009 (Index No. 09-600376); (iii) Calyon Credit Agricole CIB ("<u>Calyon</u>"), initiated on February 10, 2009 (Index No. 09-600407) (the "<u>Calyon Litigation</u>"); (iv) Barclays Bank PLC, initiated on February 18, 2009 (Index No. 09-600521); (v) Deutsche Bank AG, initiated on February 26, 2009 (Index. No. 09-600612); and (vi) Merrill Lynch Capital Services, Inc., initiated on February 27, 2009 (Index No. 09-600634).

interest payments on the 2012 Notes and 2017 Notes due August 2009, February 2010 and

August 2010, or those on the 2013 Notes due May 2009, November 2009, May 2010 and

November 2010. (See Frgn. Rep. Decl. ¶ 15.)

13.     Vitro SAB also did not make a scheduled payment of Ps. 150 million

($11.9 million), plus accrued interest, due February 5, 2009 on the *Certificados Bursátiles

Vitro 03*. (See Frgn. Rep. Decl. ¶ 16.) Subsequently, the common representative (*representante

común*) of the *Certificados Bursátiles* initiated legal proceedings thereon against Vitro SAB in

Mexico that is still pending. (See Frgn. Rep. Decl. ¶ 16.)

14.     In July 2009, ABN commenced a lawsuit against Vitro SAB and certain of its

subsidiaries in Mexico, demanding payment of the ABN Note. (See Frgn. Rep. Decl. ¶ 17.) A

first instance judgment was entered in that action against Vitro SAB, but in September 2010, the

Mexican appellate court vacated that judgment and ordered the proceedings to be restarted. (See

Frgn. Rep. Decl. ¶ 17.)

**(iv)     *Restructuring Process and Negotiations***

15.     As a result of all of the foregoing, in February 2009, Vitro SAB announced its

intention to restructure all of the Restructured Debt. (See Frgn. Rep. Decl. ¶ 18.) In connection

therewith, Vitro SAB retained Rothschild Inc. as financial advisor and engaged in a series of

transactions in an effort to strengthen its liquidity and maintain normal operations during the

restructuring process. (See Frgn. Rep. Decl. ¶ 18.) As discussed further below, Vitro has also

engaged in active negotiations with certain holders of the Old Notes, the DFI Claims and the

Other Debt.

**(a)     Negotiations with Steering Committee**

16.     Since February 2009, Vitro SAB has engaged in good faith negotiations with

various parties, including the *ad hoc* committee of the holders of the Old Notes (the "Steering

Committee") and its advisors regarding a potential restructuring.  Unfortunately, those

negotiations did not result in an agreement, with the Steering Committee rejecting three

restructuring proposals from Vitro SAB between August 2009 and July 2010.  (See Frgn. Rep.

Decl. ¶ 19.)  Instead, in January of 2010, certain holders of the Old Notes (including several

members of the Steering Committee) served Vitro SAB with notices of acceleration in respect of

the 2012 Notes and 2017 Notes.  (See Frgn. Rep. Decl. ¶ 19.)  Nevertheless, Vitro SAB

continued to negotiate with the Steering Committee in the hope of reaching a consensual

resolution.  However, the continued recalcitrance of the members of the Steering Committee, in

conjunction with certain other developments (including the adverse rulings in the DFI Litigation

and the acceleration of the 2013 Notes in April 2010) led Vitro SAB to explore alternative means

to implement a restructuring.

(b)      <b>Settlement of DFI Litigation and Negotiations with Fintech</b>

17.      On June 7, 2010, the relevant Vitro DFI Party, Vitro Envases Norteamérica, S.A.

de C.V. ("VENA"), reached a settlement agreement with Calyon, one of the Counterparties that

had commenced the DFI Litigation, pursuant to which Calyon agreed to dismiss the Calyon

Litigation in exchange for a payment of approximately $67.3 million.  (See Frgn. Rep. Decl. ¶

20.)  Vitro SAB intends to continue negotiating with Calyon to include this settlement amount in

the Restructured Debt, but has not yet reached an agreement allowing it to do so.

18.      The other five Counterparties that had commenced the DFI Litigation sold their

DFI Claims to Fintech Investments Ltd. (together with any affiliate and/or investment vehicle

thereof, "Fintech").  (See Frgn. Rep. Decl. ¶ 21.)  The only Counterparty that had not

commenced litigation against Vitro SAB also sold its DFI Claim to Fintech.  (See Frgn. Rep.

Decl. ¶ 21.)  Thereafter, Vitro SAB engaged in settlement negotiations with Fintech and, as a

10

result, on September 3, 2010, reached a settlement (the "Settlement and Debt Acknowledgment Agreement") whereby, among other things, Fintech agreed to dismiss the DFI Litigation in exchange for promissory notes in the aggregate amount of approximately $189 million issued by the three relevant Vitro DFI Parties, Compañía Vidriera, S.A. de C.V. ("COVISA"), Comercializadora Álcali, S.A. de C.V. ("COMALI") and VENA, and guaranteed by Vitro SAB. (See Frgn. Rep. Decl. ¶ 21.) On November 3, 2010, with the consent of Fintech, COVISA, COMALI and VENA assigned the Settlement and Debt Acknowledgement Agreement to Vitro SAB, which, in turn, issued a single promissory note with three scheduled payments due on January 31, 2011, February 28, 2011 and March 31, 2011, in replacement of the promissory notes issued on September 3, 2010.

19.     Vitro SAB also engaged in negotiations with Fintech with respect to the restructuring proposal Vitro SAB had formulated for the Steering Committee in July 2010. As a result of those negotiations, Vitro SAB agreed to make substantial changes to the July 2010 proposal for the benefit of all holders of Restructured Debt. (See Frgn. Rep. Decl. ¶ 22.)

### (c)     Formulation of *Concurso* Plan

20.     The restructuring proposal resulting from the negotiations with Fintech (as amended from time to time, the "*Concurso* Plan")[8] was to be effectuated through an exchange offer and consent solicitation followed by a prepackaged voluntary judicial reorganization proceeding in Mexico. Fintech agreed to enter into a lock-up and plan support agreement (the "Fintech Lock-Up Agreement") in respect of all of the Restructured Debt it then held or subsequently acquired (including the Old Notes, the DFI Claims and the Other Debt), and to provide financing for the Tender Offer (as defined below). (See Frgn. Rep. Decl. ¶ 23.)

---

[8]        A true and correct copy of the *Concurso* Plan is attached to the Foreign Representative Declaration as Exhibit C, and an English translation thereof is attached to the Foreign Representative Declaration as Exhibit D.

21.     Vitro does not have the means to repay the Restructured Debt.  Nor does it believe that it will be able to find a material source of financing to refinance the Restructured Debt, including the Old Notes.  (See Frgn. Rep. Decl. ¶ 24.)  Thus, the principal objectives of the *Concurso* Plan are to lower Vitro SAB's principal and interest payments on, and extend the maturity dates of, the Old Notes and the other Restructured Debt.  (See Frgn. Rep. Decl. ¶ 24.) The completion of  restructuring through the *Concurso* Plan is critical to resolving Vitro SAB's liquidity crisis and ensuring its continued viability, while providing a fair recovery to the holders of Restructured Debt.  (See Frgn. Rep. Decl. ¶ 24.)

### (d)     Launch of Tender Offer and Exchange Offer and Consent Solicitation

22.     On November 1, 2010, Vitro SAB launched two alternative offers to the holders of the Old Notes: a tender offer to purchase the Old Notes (the "Tender Offer") and an exchange offer and solicitation of consents to an in-court restructuring under the Mexican Business Reorganization Act (the "Exchange Offer and Consent Solicitation" and, together with the Tender Offer, the "Offers").  Concurrently, Vitro SAB also sought consents to the *Concurso* Plan from the other holders of Restructured Debt.  (See Frgn. Rep. Decl. ¶ 25 n.9.)  The expiration of both Offers was extended at the request of certain holders of Old Notes to facilitate their participation therein.  While the Tender Offer expired on December 7, 2010, the Exchange Offer and Consent Solicitation is currently scheduled to expire at 5:00 p.m. (New York City time) on December 21, 2010.  (See Frgn. Rep. Decl. ¶ 25.)[9]

### (1)     *Tender Offer*

23.     Pursuant to the Tender Offer, Vitro SAB and Administración de Inmuebles Vitro, S.A. de C.V. ("AIV"), a wholly-owned subsidiary of Vitro SAB, offered to purchase, for cash,

---

[9]     FTI Consulting was appointed to act as independent financial advisor to act on behalf of the holders of Old Notes that may wish to consult with them in matters related to the Offers.  (See Frgn. Rep. Decl. ¶ 25 n.10.)

the maximum aggregate principal amount of the Old Notes that could be purchased for $100,000,000 at a purchase price (the "Tender Offer Consideration") per $1,000 principal amount of no less than $500 but no more than $575 (as determined pursuant to a modified Dutch auction, the "Clearing Price").  (See Frgn. Rep. Decl. ¶ 26.)

24.     Pursuant to a loan agreement with AIV (the "Loan Agreement"), Fintech agreed to provide the funds for the Tender Offer Consideration.  The Loan Agreement provides that, as consideration for providing these funds, Fintech will receive the tendered Old Notes, which it will thereafter exchange pursuant to the Exchange Offer and Consent Solicitation, receiving the corresponding Consent Payment (as defined below). (See Frgn. Rep. Decl. ¶ 27.)

**(2)     *Exchange Offer and Consent Solicitation***

25.     Pursuant to the Exchange Offer and Consent Solicitation, Vitro SAB has offered those holders of the Old Notes that participated in the Exchange Offer and Consent Solicitation or otherwise entered into lock-up agreements or consented to the *Concurso* Plan (the "Participating Creditors"), a cash consent payment (the "Consent Payment") equal to each Participating Creditor's *pro rata* share of $75.0 million held in a Mexican trust (the "Payment Trust").[10]  (See Frgn. Rep. Decl. ¶ 28.)  All holders of the Old Notes who become Participating Creditors are deemed to have consented to the proposed *Concurso* Plan as it may be amended in the course of the Mexican Proceeding (as so amended, the "*Convenio Concursal*").  (See Frgn. Rep. Decl. ¶ 28.)

---

[10]     The Consent Payment paid to any Participating Creditor will in no event be less than 5% or greater than 10% of the aggregate principal amount of the Restructured Debt held by such Participating Creditor.  (See Frgn. Rep. Decl. ¶ 28 n.11.)

### (e) Recoveries under *Concurso* Plan

26. Under the *Concurso* Plan, on the Issue Date,[11] the Restructured Debt will be exchanged for the following consideration:

- $850 million in aggregate principal amount of unsecured notes due 2019;[12]

- $100 million (plus the Issue Date Adjustment) in aggregate principal amount of new convertible debt obligations, which will mandatorily convert into 15% of Vitro SAB's equity interests (on a fully diluted basis) if not paid in full at maturity or upon the occurrence of certain events of default;[13]

- a cash payment (the "Restructuring Cash Payment") in an amount equal to the balance of $75.0 million held in the Payment Trust remaining after the making of the Consent Payments; and

- a cash restructuring fee to be determined as described in the Solicitation Statement (the "Restructuring Fee" and, together with the New Notes and the Restructuring Cash Payment, the "Restructuring Consideration").[14]

(See Frgn. Rep. Decl. ¶ 29.)

27. Based on the foregoing, under the *Concurso* Plan, for every $1,000 of the principal amount of the Restructured Debt exchanged, the holders thereof will be entitled to receive:

- $561 principal amount of New 2019 Notes or New *Certificados Bursátiles*, as applicable;

---

[11] Subject to certain qualifications described in the Solicitation Statement, the Issue Date is expected to occur on or about the date the *Convenio Concursal* is consummated. (See Frgn. Rep. Decl. ¶ 29 n.12.)

[12] These notes, which will be identical in all material respects, will consist of new notes due 2019 (the "New 2019 Notes") to be issued in exchange for the Old Notes, and new *Certificados Bursátiles* (the "New *Certificados Bursátiles*") to be issued in exchange for *Certificados Bursátiles*.

[13] These obligations, which will be identical in all material respects, will consist of new mandatorily convertible debentures (the "New MCDs") to be issued in exchange for the Old Notes, and new *Obligaciones Convertibles en Acciones* (the "New *Obligaciones Convertibles en Acciones*" and, together with the New 2019 Notes, New *Certificados Bursátiles*, and New MCDs, the "New Notes") to be issued in exchange for *Certificados Bursátiles*.

[14] Subject to the occurrence of the Issue Date, holders of the Restructured Debt will receive their *pro rata* share of the Restructuring Consideration (including the Restructuring Cash Payment and Restructuring Fee) regardless of whether or not they were Participating Creditors. The holders of Intercompany Claims will not receive any Restructuring Consideration on account of such claims. (See Frgn. Rep. Decl. ¶ 29 n.15.)

- $66 principal amount of New MCDs or New *Obligaciones Convertibles en Acciones*, as applicable (not including the Issue Date Adjustment);

- a *pro rata* portion of the Restructuring Cash Payment; and

- a *pro rata* portion of the Restructuring Fee.

28.     Additionally, Vitro SAB's obligations under the New 2019 Notes, including any repurchase obligation resulting from a Change of Control and other mandatory prepayment provisions thereunder, on the Issue Date, will be unconditionally guaranteed (the "New Guarantees"), jointly and severally, on an unsecured basis, by Vitro SAB's direct and indirect subsidiaries that are currently guarantors of the Old Notes (each, a "New Guarantor").  (See Frgn. Rep. Decl. ¶ 31 n.16.)

29.     In exchange for the Restructuring Consideration and the New Guarantees, the *Concurso* Plan provides for the cancelation of all obligations of Vitro SAB and its subsidiaries with respect to the Restructured Debt (including all Accrued Interest and all guarantee obligations of the Old Guarantors), regardless of whether or not any particular holder of the Restructured Debt voted to accept the *Concurso* Plan.  (See Frgn. Rep. Decl. ¶ 32.)

30.     Vitro SAB believes that, as a result of the implementation of the *Concurso* Plan through the Mexican Proceeding, the holders of the Restructured Debt will recover 68% to 75% of the face value of their respective claims.  (See Frgn. Rep. Decl. ¶ 33 n.17.)  With respect to the Old Notes, as explained in the Solicitation Statement:

> [Vitro SAB] believe[s] that the proposed *Concurso* Plan represents a significantly enhanced recovery for Holders relative to the recovery they could potentially achieve through litigation and higher than the average market price of the Old Notes for the last twelve months.

(See Frgn. Rep. Decl. ¶ 33.)

31.     Vitro SAB and AIV have been advised by the depository that, as of the expiration

of the Tender Offer, an aggregate principal amount of approximately $44 million of Old Notes

had been tendered pursuant to the Tender Offer, at a Clearing Price of $575.  (See Frgn. Rep.

Decl. ¶ 34.)  Additionally, although the Exchange Offer and Consent Solicitation has not expired,

Vitro SAB has been advised that, as of December 7, 2010, consents obtained through the

Exchange Offer and Consent Solicitation, together with consents obtained through lock-up

agreements, represent approximately 32% of the Restructured Debt.  (See Frgn. Rep. Decl. ¶ 34.)

      **(v)**     ***Litigation Commenced by Members of Steering Committee***

32.     The Steering Committee has opposed the Offers.  In fact, ***six days prior*** to the

launch of the Offers, the Steering Committee issued a press release urging the holders of the Old

Notes not to participate in Vitro SAB's proposed restructuring and denouncing the yet-to-be-

publicly-disclosed terms of the *Concurso* Plan as allegedly providing an "unacceptably poor

economic outcome" for the holders of the Old Notes.  (See Frgn. Rep. Decl. ¶ 35.)  Thereafter,

several members of the Steering Committee initiated various legal proceedings in multiple

jurisdictions against Vitro.

      **(a)**     **Commencement of Involuntary Chapter 11 Cases Against Vitro
             SAB's U.S. Subsidiaries**

33.     Fifteen of Vitro SAB's indirect U.S. subsidiaries are Old Guarantors with respect

to Vitro SAB's payment obligations under the Old Notes (in such capacity, the "Old U.S.

Guarantors").  However, under the terms of the Indentures, the obligations of the Old Guarantors

are only triggered when demand is made on them.  (See Frgn. Rep. Decl. ¶ 36 n.18.)  No such

demand has been made on the Old U.S. Guarantors and, accordingly, the Old U.S. Guarantors

are not in default with respect to their obligations under the Old Notes and are generally paying

their debts as they become due.  Nevertheless, on November 17, 2010 -- less than two weeks

before Vitro SAB was scheduled to conclude the Offers and commence the Mexican Proceeding -- four members of the Steering Committee (the "Dissident Minority Noteholders"),[15] representing a mere 6% of the principal amount of the Old Notes,[16] filed involuntary chapter 11 petitions against the Old U.S. Guarantors (in such capacities, the "Alleged U.S. Debtors") in the United States Bankruptcy Court for the Northern District of Texas (the "Texas Court"). The involuntary cases (the "U.S. Involuntary Cases") are being jointly administered before The Honorable Russell F. Nelms under Case No. 10-47470.

34.     From the outset, the Dissident Minority Noteholders used the U.S. Involuntary Cases as a thinly-veiled attempt to disrupt the Offers and the *Concurso* Plan, thereby obtaining leverage in Vitro SAB's restructuring. On November 18, 2010, one day after filing the involuntary petitions, the Dissident Minority Noteholders filed a motion, pursuant to section 303(f) of the Bankruptcy Code (the "303(f) Motion"), requesting restrictions on the Alleged U.S. Debtors' ability to engage in transactions with their foreign affiliates or participate in Vitro SAB's restructuring. The Texas Court denied the 303(f) Motion, finding, among other things, that the Dissident Minority Noteholders failed to demonstrate that any harm would result from the Alleged U.S. Debtors' participation in the Offers or the *Concurso* Plan, and that the Dissident

---

[15]     The Dissident Minority Noteholders are: (1) Knightland Master Fund, L.P., (2) Brookville Horizons Fund, L.P., (3) Davidson Kempner Distressed Opportunities Fund L.P., and (4) Lord Abbett Bond-Debenture Fund, Inc.

[16]     As represented in each involuntary petition, the Dissident Minority Noteholders hold, in the aggregate, approximately $75 million in face amount of Vitro SAB's $1.216 billion of Old Notes. (See Frgn. Rep. Decl. ¶ 36 n.20.) Separately, counsel to the Steering Committee (which also serves as counsel to the Dissident Minority Noteholders) filed in the U.S. Involuntary Cases a Verified Statement pursuant to Bankruptcy Rule 2019, indicating that the nine members of the Steering Committee (including the four Dissident Minority Noteholders) purport to hold, in the aggregate, approximately $673 million of the Old Notes. (See Frgn. Rep. Decl. ¶ 36 n.20.) To date, however, none of the other members of the Steering Committee has joined the Dissident Minority Noteholders in the involuntary petitions pursuant to section 303(c) of the Bankruptcy Code, or made the required disclosures pursuant to Bankruptcy Rule 1003 to become a petitioning creditor in the U.S. Involuntary Cases.

Minority Noteholders' unsubstantiated allegations and expressed distrust of Mexican law failed to justify the requested relief.  (See Frgn. Rep. Decl. ¶ 37.)

35.     In addition, on November 22, 2010, the Dissident Minority Noteholders filed a motion pursuant to Bankruptcy Rule 2004 (the "2004 Motion") followed by a barrage of formal discovery requests, seeking expedited depositions and production of documents in less than one week over the Thanksgiving holiday.  On December 1, 2010, the Texas Court denied the majority of the Dissident Minority Noteholders' requests, but permitted limited discovery and a single deposition relating to the determination of whether the Alleged U.S. Debtors were generally not paying their debts as they become due.  (See Frgn. Rep. Decl. ¶ 38.)

36.     On December 9, 2010, the Alleged U.S. Debtors filed a joint answer to the involuntary petitions, denying most allegations therein and asserting certain affirmative defenses, including that the claims of the Dissident Minority Noteholders are contingent as to liability and subject to a *bona fide* dispute as to liability or amount, that the Alleged U.S. Debtors are generally paying their debts as they become due, and that, pursuant to section 305(a)(1) of the Bankruptcy Code, the interests of creditors would be better served by dismissal of the U.S. Involuntary Cases.  To date, no order for relief has been entered in the U.S. Involuntary Cases. A status conference is scheduled to take place in the Texas Court on December 20, 2010 at 9:30 a.m. (Fort Worth time).  (See Frgn. Rep. Decl. ¶ 39.)

**(b)     Filing of Involuntary Mexican Petitions**

37.     On December 7, 2010, the Steering Committee released a statement to the press asserting that certain of its members had filed petitions (the "Involuntary Mexican Petitions") in Mexican District Court seeking the opening of involuntary reorganization proceedings against Vitro SAB and certain of its Mexican subsidiaries.  To the best of its knowledge, Vitro SAB has never been served with any Involuntary Mexican Petition.  Furthermore, on information and

belief, Vitro SAB understands that the Involuntary Mexican Petitions have been dismissed.  (See Frgn. Rep. Decl. ¶ 40.)

### (c)    Litigation Commenced in New York State Court

38.    On December 2, 2010, three funds managed or controlled by the Steering Committee member Aurelius Capital Management, LP (collectively, "Aurelius") commenced an action (the "Aurelius Action") in the Supreme Court of the State of New York (the "New York Court") against Vitro SAB and 49 of its subsidiaries (alleged guarantors of the Old Notes) for breach of contract and payment of accelerated principal and accrued interest on its Old Notes.[17] Aurelius also made an *ex parte* application for a pre-judgment order of attachment with respect to any property of Vitro SAB and the other defendants in the Aurelius Action located in the State of New York sufficient to secure the damages claim asserted by Aurelius.[18]  On December 3, 2010, Justice Shirley Werner Kornreich granted an order (the "Aurelius Order of Attachment"), which was served on Vitro SAB on December 7, 2010, directing the Sheriff of the City of New York to "levy upon" any such property.[19]  As a result of the Aurelius Order of Attachment, D.F. King & Co., Inc., which is acting as the Depositary for the Tender Offer and Information and Exchange Agent for the Exchange Offer and Consent Solicitation, has determined that it could not give the direction to The Depository Trust Company to distribute the cash deposited therewith for the consummation of the Tender Offer and the making of the Consent Payments until it receives further guidance from the New York Court as to whether such distribution will

---

[17]    (See Frgn. Rep. Decl. ¶ 41 n.21.)  Aurelius alleges that it holds, in the aggregate, more than $206 million in face amount of Old Notes, and seeks damages in the aggregate amount of more than $257 million for unpaid principal and accrued interest.  (See Frgn. Rep. Decl. ¶ 41 n.21.)

[18]    (See Frgn. Rep. Decl. ¶ 41 n.22.)

[19]    By its terms, the Aurelius Order of Attachment applied to "[a]ny tangible and intangible property (whether real or personal, whether presently existing or hereinafter arising) located in the State of New York that could be assigned or transferred" excluding "any property that is owned by or in the possession or custody of any of the [Alleged U.S. Debtors] unless an until [the U.S. Involuntary Cases] are dismissed."  (See Frgn. Rep. Decl. ¶ 41 n.23.)

violate the terms of the Aurelius Order of Attachment, and has refused to give such direction. A hearing with respect to the continued effectiveness of the Aurelius Order of Attachment has been scheduled before Justice Kornreich on December 16, 2010. (See Frgn. Rep. Decl. ¶ 41.)

39.    On December 9, 2010, two funds managed or controlled by the Steering Committee member Elliott Management Corp. (collectively, "Elliott") commenced another action (the "Elliott Action") in the New York Court against the same defendants and seeking the same relief as the Aurelius Action.[20]  Upon information and belief, on December 10, 2010, Justice Kornreich granted an order (the "Elliott Order of Attachment"), granting substantially similar relief to Elliott as was provided in the Aurelius Order of Attachment. As of the filing of this Declaration, Vitro SAB has not been served with the Elliott Order of Attachment, but a hearing with respect to the continued effectiveness of the Elliott Order of Attachment has been scheduled before Justice Kornreich on December 16, 2010. (See Frgn. Rep. Decl. ¶ 42.)

**D.    Commencement of Mexican Proceeding**

40.    On December 13, 2010, to effectuate its proposed restructuring as contemplated by Exchange Offer and Consent Solicitation, Vitro SAB filed a petition (the "*Concurso* Petition") and prepackaged *Concurso* Plan under the Mexican Business Reorganization Act with the District Court of Nuevo León. (See Frgn. Rep. Decl. ¶ 44.)

**JURISDICTION AND VENUE**

41.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

42.    Section 1410 of title 28 of the United States Code provides as follows:

---

[20]    (See Frgn. Rep. Decl. ¶ 42 n.24.)  Elliott alleges that it holds, in the aggregate, more than $85 million in face amount of Old Notes, and seeks damages in the aggregate amount of more than $106 million for unpaid principal and accrued interest. (See Frgn. Rep. Decl. ¶ 42 n.24.)

A case under chapter 15 of title 11 may be commenced in the district court of the United States for the district—

    (1)      in which the debtor has its principal place of business or principal assets in the United States;

    (2)      if the debtor does not have a place of business or assets in the United States, in which there is a pending against the debtor an action or proceeding in a Federal or State court; or

    (3)      in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

43.     Vitro SAB does not have a place of business or assets in the United States. Thus, venue is proper in this Court under subsection (2) above because the Aurelius Action and the Elliott Action are pending in the Supreme Court of the State of New York, New York County.

## RELIEF REQUESTED

44.     The Petitioner seeks entry of an order, substantially in the form attached hereto as Exhibit A, (i) recognizing the Mexican Proceeding as a "foreign main proceeding" pursuant to sections 1515 and 1517 of the Bankruptcy Code and (ii) granting the Debtor all of the relief afforded to such proceedings pursuant to section 1520 of the Bankruptcy Code.

## BASIS FOR RELIEF

**A.**    **The Verified Petition Satisfies Requirements of Section 1517 of the Bankruptcy Code**

45.     Section 1517(a) of the Bankruptcy Code sets forth the requirements for recognition of a foreign proceeding, and provides, as relevant here, that, after notice and a hearing, a bankruptcy court shall enter an order recognizing a foreign proceeding if (1) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of the Bankruptcy Code, (2) the foreign representative applying for recognition is a person or body, and

(3) the petition meets the requirements of section 1515 of the Bankruptcy Code.[21]  As set forth

below, the Mexican Proceeding and this Verified Petition satisfy all of the foregoing

requirements and accordingly, the Mexican Proceeding should be recognized as a foreign main

proceeding.

      **(i)**     ***The Mexican Proceeding Is a "Foreign Main Proceeding"***

      (a)     **The Mexican Proceeding is a "Foreign Proceeding"**

      46.     As explained in the Mexican Counsel's Declaration, the Mexican Proceeding is a

"foreign proceeding" under Section 101(23) of the Bankruptcy Code, which defines a "foreign

proceeding" as:

> a collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets
> and affairs of the debtor are subject to control or supervision by a
> foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. §101(23).

      47.     The Mexican Proceeding meets this definition because it is a collective

administrative proceeding under the Mexican Business Reorganization Act, administered in

Nuevo León, Mexico, which relates to insolvency and adjustment of debt.  (See Frgn. Rep. Decl.

¶ 47.)  The purpose of the Mexican Proceeding is to allow Vitro SAB to implement restructuring

of the Restructured Debt by obtaining judicial approval of the *Concurso* Plan.  (See Frgn. Rep.

Decl. ¶ 47.)  The process is controlled by the District Court of Nuevo León, which has authority

to grant or deny the *Concurso* Petition and has review and approval rights of any plan of

reorganization filed by Vitro SAB.  (See Mexican Counsel Decl. ¶ 12.)  Vitro SAB anticipates

---

[21]     According to the legislative history of section 1517, "the decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code.  The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition." H.R. Rep. 109-31, pt. 1, at 113 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 175.

that the District Court of Nuevo León will enter its "business reorganization judgment" granting the *Concurso* Petition prior to this Court holding a hearing (the "Recognition Hearing") with respect to recognizing the Mexican Proceeding as a foreign main proceeding (the "Recognition Order"). In any event, Vitro SAB is not asking this Court to enter the Recognition Order until the *Concurso* Petition has been granted.[22]

48. Under the Mexican Business Reorganization Act, though a debtor remains in control of its business and operations, the process of formulating a plan of reorganization is overseen by a court appointed administrator, the *conciliador*, which possesses powers similar to those of a representative of the office of the United States Trustee in a case under the Bankruptcy Code. (See Mexican Counsel Decl. ¶ 14.) Although the *conciliador* has not yet been appointed in the Mexican Proceeding, upon information and belief, it is expected that the *conciliador* will be appointed within approximately 15 days of the filing of the Mexican Proceeding. For these reasons, Vitro SAB's assets are "subject to control or supervision by a foreign court" and all of the requirements of section 101(23) are met.

49. The Bankruptcy Court for the Southern District of New York has previously recognized proceedings under the Mexican Business Reorganization Act as foreign proceedings under Chapter 15 of the Bankruptcy Code. See, e.g., Order Granting Recognition of Foreign Main Proceeding and Related Relief, In re Controladora Comercial Mexicana, S.A.B. de C.V., Case No. 10-13750 (SMB) (Bankr. S.D.N.Y. Aug. 19, 2010) (holding that "the Concurso Proceeding is a 'foreign proceeding' within the meaning of 101(23) of the Bankruptcy Code" and recognizing such proceeding as a "foreign main proceeding") (attached hereto as Exhibit B, the "CCM Order"); Order Granting Recognition of Foreign Main Proceeding and Related Relief,

---

[22] Concurrently with the filing of the Verified Petition, Vitro SAB has commenced an adversary proceeding seeking, among other things, certain provisional relief, pursuant to sections 105(a) and 1519 of the Bankruptcy Code.

In re Corporacion Durango S.A.B. de C.V., Case No. 08-13911 (ALG) (Bankr. S.D.N.Y. Dec. 11, 2008) (same) (attached hereto as Exhibit C, the "Durango Order").[23]

(b)     **The Mexican Proceeding is a "Foreign Main Proceeding"**

50.     Section 1502(4) of the Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. §1502(4). Thus, it must be shown that the Mexican Proceeding is pending in the country where Vitro SAB has "the center of its main interests."

51.     Although the Bankruptcy Code does not provide a conclusive test to determine a debtor's center of main interests, pursuant to section 1516 of the Bankruptcy Code, it is presumed, absent evidence to the contrary, that such center is located wherever its registered office is located. 11 U.S.C. § 1516(c). The concept of "center of main interests" has been equated by the courts to the concept of a debtor's "principal place of business." In re Tri-Continental Exch. Ltd., 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006).

52.     There is no doubt that Mexico is Vitro SAB's "center of main interests." Vitro SAB's registered office and principal place of business is located in Nuevo León, Mexico. Therefore, Vitro SAB's center of main interests is presumed to be in Mexico. No evidence contradicts this presumption. On the contrary, Nuevo León, Mexico is also where all of Vitro SAB's administrative functions are conducted and from where all of its business is managed and controlled. (See Frgn. Rep. Decl. ¶ 49.) As the Mexican Proceeding is a foreign proceeding located in Vitro SAB's center of main interests, it is therefore a "foreign main proceeding" for

---

[23]     As in the present case, the CCM Order and Durango Order were each entered after the Mexican court in each case issued a "business reorganization judgment" granting the debtor's *concurso* petition, even though, in both cases, petitions for recognition were filed with this Court concurrently with the filing of the *concurso* petitions in the Mexican court and before the Mexican court had granted such petitions.

the purposes of the Bankruptcy Code. Accordingly, the requirements of section 1517(a)(1) of the Bankruptcy Code have been satisfied.

      **(ii)**    ***Foreign Representative Is a Person and Is Duly Authorized***

    53.    The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. §101(24).

    54.    This chapter 15 case was commenced by the Petitioner, a natural person who is an executive employee of Vitro SAB in Mexico duly appointed and authorized to serve as Vitro SAB's "foreign representative" pursuant to the resolutions of Vitro SAB's Board of Directors. (See Frgn. Rep. Decl. ¶ 52.)

    55.    Courts in this District have on numerous occasions held that a foreign representative may be appointed by the debtor's Board of Directors, and need not be appointed by the foreign court overseeing the foreign proceeding. See, e.g., In re Bd. of Dirs. of Hopewell Int'l Ins., Inc., 275 B.R. 699, 707 (S.D.N.Y. 2002) (holding that company's board of directors qualified as foreign representative); see also In re Bd. of Dirs. of Telecom Argentina S.A., No. 05- 17811 (BRL), 2006 WL 686867, at *21 (Bankr. S.D.N.Y. Feb. 24, 2006) (same); In re Netia Holdings, 277 B.R. 571, 587 n.76 (Bankr. S.D.N.Y. 2002) (same). Neither section 101(24) nor chapter 15 of the Bankruptcy Code requires foreign representatives to be appointed by foreign courts. See In re Hopewell, 275 BR. at 707 (interpreting section 101(24) of Bankruptcy Code and stressing that "nothing in the statute requires a court appointment"). Rather, section 101(24) simply requires that such representative be "authorized" to administer the reorganization or the

liquidation of the debtor's assets or affairs or act as a representative of the foreign proceeding. See 11 U.S.C. § 101(24).

56. Further, in each of <u>CCM</u> and <u>Durango</u>, this Court recognized an individual who was not appointed by the Mexican court as a duly authorized foreign representative of the debtor within the meaning of sections 101(24) and 1517(a)(2) of the Bankruptcy Code. <u>See</u> Declaration of Lic. Fernando Del Castillo Elorza as Foreign Representative of Controladora Comercial Mexicana Pursuant to 28 U.S.C. § 1746, ¶ 4, <u>In re Controladora Comercial Mexicana, S.A.B. de C.V.</u>, Case No. 10-13750 (SMB) (Bankr. S.D.N.Y. July 16, 2010) (attached hereto as <u>Exhibit D</u>), and <u>CCM Order</u> ¶ E (finding petitioner who had been granted power of attorney by debtor authorizing petitioner to initiate legal proceedings on behalf of debtor had been duly appointed and authorized to serve as debtor's "foreign representative"); Declaration of Gabriel Villegas Salazar Pursuant to 28 U.S.C. § 1746, ¶ 4, <u>In re Corporacion Durango S.A.B. de C.V.</u>, Case No. 08-13911 (ALG) (Bankr. S.D.N.Y. Oct. 6, 2008) (attached hereto as <u>Exhibit E</u>) and <u>Durango Order</u> ¶ 4 (same).

57. The Petitioner, an individual duly appointed by Vitro SAB's Board of Directors, is thus the duly appointed foreign representative of Vitro SAB. Accordingly, the requirements of section 1517(a)(2) of the Bankruptcy Code have been satisfied.

**(iii)** *Requirements of Section 1515 of Bankruptcy Code Have Been Met*

58. The final requirement for the recognition of a foreign main proceeding is compliance with the procedural requirements of section 1515 of the Bankruptcy Code. Section 1515 requires that a petition for recognition be filed with the court and be accompanied by certain documents and statements. <u>See</u> 11 U.S.C. § 1515.

59. All of the requirements of section 1515 of the Bankruptcy Code have been satisfied. First, as required by section 1515(a) of the Bankruptcy Code, this chapter 15 case was

properly commenced by the Petitioner on behalf of Vitro SAB through the filing of the Verified Petition.

60.     Second, as required under sections 1515(b) and (d), evidence of the Mexican Proceeding and the appointment of the Petitioner as foreign representative has been provided, in the forms of (i) a certified copy of the voluntary petition filed by Vitro SAB with the District Court of Nuevo León, attached as Exhibit Q to the Foreign Representative Declaration, (ii) an English translation of the voluntary petition filed by Vitro SAB with the District Court of Nuevo León, attached as Exhibit R to the Foreign Representative Declaration, and (iii) a certified copy of an English translation of the Board Resolution appointing the Petitioner as the Foreign Representative of Vitro SAB, attached as Exhibit S to the Foreign Representative Declaration.

61.     Finally, in compliance with section 1515(c) of the Bankruptcy Code, the Verified Petition has been accompanied by the Foreign Representative's Declaration, wherein the Petitioner has declared, under penalty of perjury, that, to the best of his knowledge, the Mexican Proceeding is the only insolvency proceeding of any kind pending for Vitro SAB and, thus, is the only known "foreign proceeding" with respect to Vitro SAB, as that term is defined in section 101(23) of the Bankruptcy Code.  (See Frgn. Rep. Decl. ¶ 52.)  Accordingly, the requirements of section 1515 of the Bankruptcy Code and, thus, of section 117(a)(3) of the Bankruptcy Code have been satisfied.

62.     Accordingly, Petitioner respectfully submits that the Mexican Proceeding should be recognized as Vitro SAB's "foreign main proceeding."

**B.     Vitro SAB Is Entitled to Relief Pursuant to Section 1520 of the Bankruptcy Code**

63.     Section 1520 of the Bankruptcy Code sets forth a series of statutory protections, including the automatic stay, that become effective automatically upon the entry of an order recognizing a foreign main proceeding.  See 11 U.S.C. § 1520.  Accordingly, the Petitioner

respectfully requests that, upon recognition of the Mexican Proceeding as a foreign main proceeding, Vitro SAB be granted the full extent of the relief provided pursuant to section 1520 of the Bankruptcy Code and submits that no further showing is needed on the issue.

## NOTICE

64.     Notice of the Verified Petition has been provided to (i) the Office of the United States Trustee for the Southern District of New York, (ii) the Indenture Trustees for each issue of the Old Notes, (iii) Cleary Gottlieb Steen & Hamilton LLP, counsel to Fintech, (iv) White & Case LLP, counsel to the Steering Committee and (v) all known U.S. and foreign creditors of Vitro SAB.  The Debtor submits that no other or further notice need be provided.

## NO PRIOR REQUEST

65.     No previous request for the relief requested herein has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Petitioner respectfully requests that the Court (a) enter an order, substantially in the form attached hereto as Exhibit A granting the relief requested herein and (b) grant the Debtor such other and further relief as the Court deems just and proper.

Dated:      December 14, 2010
            New York, New York

/s/ Dennis F. Dunne_____
Dennis F. Dunne
Risa M. Rosenberg
Jeremy C. Hollembeak
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone:  (212) 530-5000

Andrew M. Leblanc (*pro hac vice* pending)
MILBANK, TWEED, HADLEY & McCLOY LLP
1850 K Street, NW
Suite 1100
Washington, DC 20006
Telephone:  (202) 835-7500

*Attorneys for Alejandro Francisco Sánchez-Mujica*
*as Foreign Representative of Vitro, S.A.B. de C.V.*

## VERIFICATION

ALEJANDRO FRANCISCO SÁNCHEZ-MUJICA hereby declares:

1.      I hold the title of Executive Vice President and General Counsel of Vitro, S.A.B.

de C.V. ("Vitro SAB"), and have been authorized by Vitro SAB's Board of Directors to

commence this chapter 15 case.

2.      I have read the Verified Petition and I am informed and believe that the factual

allegations contained therein are true and correct.

3.      I verify under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed:  December 13, 2010
               State of Nuevo León, Mexico

/s/ Alejandro Francisco Sánchez-Mujica
ALEJANDRO FRANCISCO SÁNCHEZ-MUJICA

**<u>Exhibit A</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>VITRO, S.A.B. de C.V.,<br><br>      Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 10-_____ (___) |

## ORDER GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING AND CERTAIN RELATED RELIEF

Alejandro Francisco Sánchez-Mujica (the "Petitioner"), the duly authorized

representative of Vitro, S.A.B. de C.V. ("Vitro SAB" or the "Debtor") in a voluntary judicial

reorganization proceeding commenced on December 13, 2010 in the United States of Mexico

under the *Ley de Concursos Mercantiles* (the "Mexican Business Reorganization Act") and

currently pending before the Federal District Court for Civil and Labor Matters for the State of

Nuevo León (the "District Court of Nuevo León"), having filed the verified petition dated

December 14, 2010 (the "Verified Petition"), seeking entry of an order (i) recognizing the

Mexican Proceeding as a "foreign main proceeding" pursuant to sections 1515 and 1517 of title

11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and

(ii) granting certain related relief pursuant to section 1520 of the Bankruptcy Code; and upon the

Court's review and consideration of the Verified Petition, the Declaration of Alejandro Francisco

Sánchez-Mujica, as Foreign Representative of Vitro SAB, (I) in Support of Verified Petition for

Recognition of Foreign Main Proceeding and Request for Related Relief and (II) in Compliance

with 11 U.S.C. § 1515 and Rule 1007(a)(4) of Federal Rules of Bankruptcy Procedure (the

"Foreign Representative's Declaration"), the Declaration of Alfonso Rivera Gaxiola, as Mexican

Counsel to Vitro SAB, in Support of Verified Petition for Recognition of Foreign Main

Proceeding and Request for Related Relief (the "Mexican Counsel's Declaration"), all the documents attached thereto (the "Supporting Documents"), and the Notice Pursuant to 11 U.S.C. § 1518 of Entry of Order in Foreign Proceeding Granting Debtor's Voluntary Petition for Relief under the Mexican Business Reorganization Act (the "Notice of Concurso Relief" and, together with the Verified Petition, the Foreign Representative Declaration, the Mexican Counsel Declaration, and the Supporting Documents (collectively, the "Chapter 15 Pleadings"); and a hearing having been held before this Court on _____ (the "Recognition Hearing"); and it appearing that timely notice of the filing of the Chapter 15 Pleadings, the relief sought therein, and the Recognition Hearing has been provided pursuant to the Order Scheduling Hearing and Specifying the Form and Manner of Service of Notice, dated December __, 2010, which notice is deemed adequate for all purposes and no other or further notice thereof need be provided; and the appearances of all interested parties having been noted in the record of the Recognition Hearing; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157; and consideration of the Chapter 15 Pleadings and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); and venue being proper before this Court pursuant to 28 U.S.C. § 1410; and the Court having determined that the relief sought in the Verified Petition is in the best interests of Vitro SAB, its creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Chapter 15 Pleadings establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, the Court hereby finds and determines as follows:

a)      This chapter 15 case was properly commenced pursuant to sections 1504 and 1515 of the Bankruptcy Code.

b)      The Petitioner, Alejandro Francisco Sánchez-Mujica, is a "person" pursuant to 11 U.S.C. § 101(41) and has been duly appointed and authorized to serve as Vitro SAB's "foreign representative" with respect to the Mexican Proceeding within the meaning of section 101(24) of the Bankruptcy Code.

c)      The Chapter 15 Pleadings meet all of the requirements set forth in section 1515 of the Bankruptcy Code.

d)      The Mexican Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

e)      The Mexican Proceeding is pending in Mexico, which is the country where Vitro SAB has the center of its main interests, and, as such, the Mexican Proceeding is a "foreign main proceeding" within the meaning of sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

For all of the foregoing reasons, and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED**, that the Verified Petition is granted, and the Mexican Proceeding is recognized as a foreign main proceeding pursuant to sections 1517(a) and 1517(b)(l) of the Bankruptcy Code; and it is further

**ORDERED**, that Vitro SAB and the Petitioner are entitled to all of the relief set forth in section 1520 of the Bankruptcy Code, including, without limitation, the stay under section 362 of the Bankruptcy Code, through the duration of this chapter 15 case or until otherwise ordered by this Court and, upon entry of this Order, section 1520 shall be given its full force and effect; and it is further

**ORDERED**, that no action taken by the Debtor, the Foreign Representative, their respective successors, agents, representatives or counsel in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the Mexican Proceeding, this Order, this chapter 15 case, any further order for additional relief in this chapter 15 case, or any adversary proceeding in connection therewith, will be deemed to constitute a waiver of the immunity afforded to the Debtor, the Foreign Representative or their respective successors, agents, attorneys, or representatives pursuant to section 1510 of the Bankruptcy Code; and it is further

**ORDERED**, that the Petitioner shall serve a copy of this Order upon all known government units and creditors of Vitro SAB affected by this order (and, with respect to the holders of the Old Notes, on the Indenture Trustees under such notes) by first class mail no later than _____; and it is further

**ORDERED**, that Vitro SAB is hereby authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order; and it is further

**ORDERED**, that this Court shall retain jurisdiction to hear and determine all matters

arising from the implementation and/or interpretation of this Order.

Dated:  New York, New York
           _____, 2010


                             _____
                             UNITED STATES BANKRUPTCY JUDGE

## <u>Exhibit B</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
In re:                                                        :          Chapter 15
                                                              :
**CONTROLADORA COMERCIAL**                                    :          Case No. 10-13750 (SMB)
**MEXICANA, S.A.B. de C.V.**                                  :
                                                              :
            Debtor in a Foreign Proceeding.                   :
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ORDER GRANTING RECOGNITION OF FOREIGN MAIN**
**PROCEEDING AND REQUEST FOR RELATED RELIEF**

Fernando del Castillo Elorza (the "Petitioner"), having filed the Verified Petition for

Recognition of Foreign Main Proceeding and Request for Related Relief, dated July 16, 2010

(the "Chapter 15 Petition"), in its capacity as the duly-appointed foreign representative of

Controladora Comercial Mexicana, S.A.B. de C.V. ("CCM"), the debtor in a voluntary

insolvency proceeding commenced under Mexico's *Ley de Concursos Mercantiles* (the

"Concurso Law"),[1] which is currently pending in Mexico before the Federal District Court; and

upon the Court's review and consideration of the Chapter 15 Petition, the Declaration of

Fernando del Castillo Elorza in Support of the Chapter 15 Petition (the "Foreign Representative

Declaration"), the Declaration of Fernando del Castillo in Support of the Chapter 15 Petition (the

"del Castillo Declaration") and the Notice Pursuant to 11 U.S.C. § 1518 of Entry of Order in

Foreign Proceeding Granting Debtor's Voluntary Petition for Relief under the Mexican Business

Reorganization Act (the "Notice of Concurso Declaration" and, together with the Chapter 15

Petition, the Foreign Representative Declaration and the del Castillo Declaration, the "Chapter

15 Pleadings"); and no objections or other responses having been filed; and a hearing having

---

[1]      Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in
the Chapter 15 Petition.

1

been held before this Court on August 19, 2010 (the "Recognition Hearing"); and it appearing that timely notice of the filing of the Chapter 15 Pleadings and the Recognition Hearing has been given to CCM's known creditors and that no other or further notice need be provided;

NOW, THEREFORE, the Court hereby finds and determines as follows:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

C.    Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

D.    This chapter 15 case was properly commenced pursuant to sections 1504 and 1515 of the Bankruptcy Code.

E.    Petitioner, counsel to CCM in Mexico, is a "person" pursuant to 11 U.S.C. § 101(41) and has been duly appointed and authorized to serve as CCM's "foreign representative" with respect to the Concurso Proceeding within the meaning of section 101(24) of the Bankruptcy Code.

F.    The Chapter 15 Pleadings meet all of the requirements set forth in section 1515 of the Bankruptcy Code.

G.    The Concurso Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

H.    The Concurso Proceeding is pending in Mexico, which is the country where CCM has the center of its main interests, and, as such, the Concurso Proceeding is a "foreign main proceeding" within the meaning of sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

ACCORDINGLY, after due deliberation and sufficient cause appearing therefore, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Chapter 15 Petition is granted and the Concurso Proceeding is recognized as a foreign main proceeding pursuant to sections 1517(a) and 1517(b)(1) of the Bankruptcy Code;

2.      CCM and the Petitioner are entitled to all of the relief set forth in section 1520 of the Bankruptcy Code, including without limitation the stay under section 362 of the Bankruptcy Code, through the duration of this chapter 15 case or until otherwise ordered by this Court and, upon entry of this Order, section 1520 shall be given its full force and effect;

3.      Notwithstanding anything contained herein or in the Bankruptcy Code (including, without limitation, Sections 1507, 1520, 1521, or 362) to the contrary, upon the occurrence of a Trigger Event (as such term is defined in the Motion), the automatic stay of section 362 of the Bankruptcy Code (and any stay or injunction thereafter ordered by this Court or imposed by operation of any provision in the Bankruptcy Code) shall automatically be lifted without the need for further order or action of the Court solely for the purposes of allowing a Derivative Counterparty to: (i) send a notice terminating its Standstill Agreement with CCM (to the extent such notice is required pursuant to the terms of the relevant Standstill Agreement) and (ii) exercise all of its rights and remedies (including, without limitation, continuance of the Derivatives Litigation) against CCM and its assets, free of any stay or injunction ordered by this Court or imposed by operation of any provision of the Bankruptcy Code;

4.      This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through this chapter 15 case, and any request by an entity for relief from the provisions of

this Order, for cause shown, that is properly commenced within the jurisdiction of this Court; and

5.      The Petitioner shall serve a copy of this Order upon all known government units and creditors of CCM affected by this order (and, with respect to the Noteholders, on the Indenture Trustees for distribution to the Noteholders) by first class mail no later than August 23, 2010.

6.      Notwithstanding the pendency of the above captioned Chapter 15 proceeding, the New York Court shall have exclusive jurisdiction over any dispute arising out of or relating to any Stipulation.

Dated: August 19, 2010
          New York, New York

                                                                    **/s/   STUART M. BERNSTEIN**
                                                                    THE HONORABLE STUART M. BERNSTEIN
                                                                    UNITED STATES BANKRUPTCY JUDGE

4

## **Exhibit C**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | ) | Chapter 15 |
|  | ) |  |
| Corporación Durango, S.A.B. de C.V., | ) | Case No. 08-13911 (RDD) |
|  | ) |  |
| Debtor in a Foreign Proceeding. | ) |  |
|  | ) |  |

## ORDER GRANTING RECOGNITION OF FOREIGN MAIN
## PROCEEDING AND REQUEST FOR RELATED RELIEF

Upon consideration of the Verified Petition for Recognition of Foreign Main

Proceeding and Request for Related Relief dated October 6, 2008 (the "Petition"), the Villegas

Salazar Declaration,[1] the del Castillo Declaration and the Notice Pursuant to 11 U.S.C. § 1518

of Entry of Order in Foreign Proceeding Granting Debtor's Voluntary Petition for Relief

under the Mexican Business Reorganization Act (the "Notice of Concurso Declaration" and,

together with the Petition, the Villegas Salazar Declaration, and the del Castillo Declaration, the

"Chapter 15 Pleadings"), each filed on October 6, 2008 by or on behalf of the Petitioner, Gabriel

Villegas Salazar, in his capacity as the duly-appointed foreign representative of Corporación

Durango, S.A.B. de C.V. ("Corporación Durango" or the "Debtor"), the debtor in a voluntary

insolvency proceeding commenced under Mexico's *Ley de Concursos Mercantiles* (the

"Mexican Business Reorganization Act" or "Concurso Law"), which is currently pending in

Mexico before the District Court for Civil Matters for the District of Durango, as well as the

Supplemental Notice pursuant to 11 U.S.C. § 1518, filed on December 9, 2008; and it appearing

that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157; and it

appearing that venue is proper before this Court pursuant to 28 U.S.C. § 1410; and the Court

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the Petition.

having considered and reviewed the Chapter 15 Pleadings and the Supplemental Notice and having held a hearing to consider the relief requested in the Petition on December 11, 2008 (the "Recognition Hearing"); and it appearing that timely notice of the filing of the Chapter 15 Pleadings, the Petition, and the Recognition Hearing has been given to Corporación Durango's known creditors and that no other or further notice need be provided; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND**, that:

1.       This case was properly commenced pursuant to sections 1504 and 1515 of the Bankruptcy Code.

2.       The Concurso Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

3.       The Concurso Proceeding is pending in Mexico, which is the country where the Debtor has the center of its main interests, and, as such, the Concurso Proceeding is a "foreign main proceeding" within the meaning of sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

4.       Petitioner, Gabriel Villegas Salazar, who serves both as General Counsel and Secretary of the Board of Directors of the Debtor, has been duly appointed and authorized to serve as the Debtor's "foreign representative" with respect to the Concurso Proceeding within the meaning of section 101(24) of the Bankruptcy Code.

5.       The Petition meets all of the requirements set forth in section 1515 of the Bankruptcy Code.

6.       The Concurso Proceeding is entitled to recognition by the Court pursuant to

section 1517(a) of the Bankruptcy Code.

7.    The Debtor and the Foreign Representative are entitled to all of the relief set forth in section 1520 of the Bankruptcy Code.

For all of the foregoing reasons, and for the reasons stated by the Court on the record of the Recognition Hearing, and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED**, that:

(A) The Concurso Proceeding is granted recognition as a foreign main proceeding pursuant to section 1517(a) of the Bankruptcy Code;

(B) The Debtor and the Foreign Representative are granted all of the relief set forth in section 1520 of the Bankruptcy Code;

(C) The relief granted in this Order shall not extend to any of the Debtor's subsidiaries or affiliates;

(D) Notwithstanding anything contained herein or in section 1520 of the Bankruptcy Code to the contrary, the stay of section 362 of the Bankruptcy Code does not operate as a stay of any and all actions or proceedings in a court of appropriate jurisdiction by the trustee under the indenture (the "Indenture") governing the Senior Notes, the ad hoc group of holders of the Senior Notes (including each of its members, the "Ad Hoc Noteholder Group"), or their representatives to determine whether any of the Senior Notes are required to be submitted for cancellation pursuant to the Indenture and/or applicable law and to enforce such submission and cancellation, and all rights of parties with respect thereto are fully preserved; and

(E) The Petitioner shall serve a copy of this Order upon all known persons and

governmental units affected by this Order by first class mail no later than December 16, 2008.

Dated: New York, New York
      December 11, 2008

                                       /s/Robert D. Drain_____
                                       UNITED STATES BANKRUPTCY JUDGE

**Exhibit D**

Gary L. Kaplan
Peter B. Siroka
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Attorneys for Lic. Fernando del Castillo Elorza as*
*Foreign Representative of Controladora*
*Comercial Mexicana, S.A.B. de C.V.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re: | Chapter 15 |
| **CONTROLADORA COMERCIAL** | Case No. 10-13750 (SMB) |
| **MEXICANA, S.A.B. de C.V.** | |
| Debtor in a Foreign Proceeding. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DECLARATION OF LIC. FERNANDO DEL CASTILLO ELORZA**
**AS FOREIGN REPRESENTATIVE OF CONTROLADORA**
**COMERCIAL MEXICANA PURSUANT TO 28 U.S.C. § 1746**

      I, Lic. Fernando del Castillo Elorza, declare under penalty of perjury under the laws of

the United States of America that the following is true and correct:

      1.      I hereby submit this declaration (the "Declaration") in support of the Verified

Petition for Recognition of a Foreign Main Proceeding and Request for Related Relief (the

"Verified Petition") and the Motion of the Debtors for a Temporary Restraining Order and

Preliminary Injunction, which I have filed contemporaneously herewith, and which seeks entry

of an order (i) recognizing the voluntary insolvency proceeding that was initiated by

Controladora Comercial Mexicana S.A.B. de C.V. ("CCM") and is currently pending in the

District for Civil Matters in Mexico City, Federal District, Mexico (the "Concurso Proceeding")

as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) recognizing Fernando del Castillo Elorza as the foreign representative of CCM in connection with the Concurso Proceeding and (iii) granting related relief pursuant to section 1520 of the Bankruptcy Code.  Except as set forth below, I have personal knowledge of the matters set forth in this Declaration.

2.      Although my native language is Spanish, I am fluent in English and have elected to execute and submit this Declaration in English.

3.      I am counsel to CCM in Mexico.

4.      In order to carry out my duties as foreign representative of CCM, I am the recipient of a Power of Attorney from CCM which authorizes me to, among other things, initiate legal proceedings on behalf of CCM.  A true and correct copy of the Power of Attorney granted to me by CCM and an English translation thereof are attached hereto as **"Exhibit A"** and **"Exhibit B"**, respectively.

5.      Contemporaneously herewith, I have caused this chapter 15 case to be commenced through the filing of the Verified Petition.

6.      Originally founded in 1944, CCM is the holding company for a series of Mexican businesses that comprise the third largest operator of food retail stores in Mexico.  As of December 31, 2009, CCM's businesses operated 231 retail stores and 73 restaurants under eight different formats—six different retail store formats, one warehouse club and one chain of family restaurants—in twenty-four Mexican states.  CCM's retail brands include Comercial Mexicana, Bodega Comercial Mexicana, Mega, City Market, Sumesa, Fresko and Al Precio.  CCM also owns the Restaurantes California chain of family-style restaurants and participates in a joint-venture with Costco Wholesale Corporation to operate warehouse clubs under the Costco brand.

For the fourth quarter of 2009, CCM reported net sales of approximately MXP$ 14.441 billion (approximately US$1.139 billion) and employed approximately 33,000 people.[1]

7.      CCM's principal indebtedness consists of (i) unsecured notes, (ii) Mexican commercial paper (the "Cebures") and (iii) unsecured bank loans (the "Bank Debt").  There are three series of unsecured notes: (a) US$200 million in principal of 6.625% Senior Notes due 2015 (the "2015 Notes"); (b) MXP$ 3 billion in principal of 8.7% Senior Notes due 2027 (the "2027 Notes"), and (c) MXP$ 111,341,051 in principal of UDI-denominated 8% Senior Notes due 2010[2] (the "2010 Notes" together with the 2015 Notes and 2027 Notes, the "Notes").  The Notes are beneficially owned by many different holders (the "Noteholders"); and as such, not all Noteholders are known to CCM.  The Bank of New York Mellon acts as indenture trustee for the 2015 and 2027 Notes, while HSBC acts indenture trustee for the 2010 Notes.  The Cebures consist of MXP$ 1.5 billion of commercial paper, 97.3% of which is held by a subsidiary of CCM, Tiendas Comercial Mexicana ("Tiendas"), which acquired the Cebures in an exchange offer on May 4, 2010.  The remaining Cebures are held by a number of different owners who did not participate in the exchange offer.  The Bank Debt consists of MXP and USD denominated unsecured loans to seven different Mexican banks (the "Commercial Banks") totaling MXP$ 2.545 billion and US$99.4 million.[3]  CCM has also entered into a Settlement and Debt Acknowledgement Agreement (as defined below) to settle CCM's obligations under certain foreign exchange and interest rate Derivative Transactions (as defined below), as more fully described below.

---

[1]      As a holding company, CCM has no employees of its own.  All employees are employees of CCM's subsidiaries and affiliates.

[2]      The MXP value of the 2010 Notes is based on the UDI conversion rate as of April 28, 2010.  The 2010 Notes are 24,981,400 UDI in principal.

[3]      A list of the Commercial Banks and their respective holdings of the Bank Debt is included on Schedule 3 to the Term Sheet (defined below).

8.     CCM began engaging in hedging activities in the 1990s to control currency risk on U.S. imports and debt service.  From time to time, CCM also entered into interest rate swaps to convert long term fixed rate payments into cheaper floating rate payments, to save on debt service costs.

9.     In 2005, CCM entered into a substantial program of forward dollar purchases to hedge against the potential decline in value of the Mexican peso (the "Peso Hedges").  When the Mexican peso did not decline, CCM began to lose money on the Peso Hedges.  Subsequently, CCM entered into various derivative transactions to offset the losses from the Peso Hedges. Many of these transactions involved CCM taking positions in the U.S. dollar and other foreign currencies.

10.     During 2007 and 2008, CCM entered into derivative transactions (the "Derivative Transactions") with JP Morgan Chase Bank, N.A., Banco Nacional de Mexico, SA Institution de Banca Multiple, Grupo Financiero Banamex, Banco Santander, S.A, Grupo Financiero Santander, Barclays Bank PLC, J. Aron & Company,[4] Merrill Lynch Capital Services Inc. and Merrill Lynch Capital Markets AG (together, the "Derivative Counterparties").

11.     In late September and early October 2008, following turmoil in the financial markets and the Lehman Brothers bankruptcy filing, there was a significant devaluation of the Mexican peso and the Euro against the U.S. dollar.  As a result of this devaluation, CCM found itself facing substantial claims for margin calls arising on account of the Derivative Transactions. In early October, the Derivative Counterparties exercised contractual provisions to terminate the transactions, and asserted claims exceeding US $2 billion against CCM for the amounts they claim are due upon such early termination.

---

[4]     On October 20, 2008, J. Aron & Company was assigned the claims in the Derivative Transactions.  For ease of reference, both J. Aron & Company and J. Aron & Company's assignor are referred to herein as "J. Aron & Company."

12.    Because of the mounting loss claims and additional margin calls associated with the Derivative Transactions, CCM faced a severe liquidity crisis and became unable to pay its suppliers and providers.  All payments to suppliers and providers temporarily ceased on October 7, 2008, the same day that CCM made its final margin call payment to the Derivative Counterparties.  On October 9, 2008, CCM filed a voluntary petition (the "First Concurso Petition") to commence a case under Mexico's *Ley de Concursos Mercantiles* (the "Concurso Law") with the District Court for Civil Matters for the Federal District, Mexico (the "Federal District Court"), which was subsequently rejected on October 27, 2008.  On October 29, 2008, CCM filed a second petition for relief under the Concurso Law with the Federal District Court (the "Second Concurso Petition").  The Second Concurso Petition was rejected on November 3, 2008.  Both the First Concurso Petition and the Second Concurso Petition were denied on technical grounds under Mexican law.

13.    On November 6, 2008, certain of the Derivative Counterparties (the "DCP Plaintiffs")[5] filed complaints against CCM in the New York State Supreme Court for New York County (the "New York Court"), which are currently pending before Justice Eileen Bransten (the "Derivatives Litigation").[6]  Generally, the complaints allege that CCM breached the underlying agreements governing the Derivative Transactions by failing to post required collateral or make payments allegedly owed to the DCP Plaintiffs.  The DCP Plaintiffs are seeking combined damages of over USD $1.5 billion.  Each of the DCP Plaintiffs moved for summary judgment in the Derivatives Litigation (such motions, the "Summary Judgment Motions").  On March 16,

---

[5]    The DCP Plaintiffs are JP Morgan Chase Bank, N.A., Barclays Bank PLC, J. Aron & Company, Merrill Lynch Capital Services Inc. and Merrill Lynch Capital Markets AG.

[6]    The case names and their index numbers are: <u>J.P. Morgan Chase Bank, N.A. v. CCM</u>, Index Number 603215/2008; <u>J. Aron & Company v. CCM</u>, Index No. 603225/2008; <u>Merrill Lynch Capital Markets AG and Merrill Lynch Capital Services Inc. v. CCM</u>, Index No. 603214/2008; and <u>Barclays Bank PLC v. CCM</u>, Index No. 603233/2008.

2010, the New York Court issued its decisions granting the Summary Judgment Motions as to liability only, and referring the quantification of losses to a special referee to hear and report. CCM has appealed those decisions. At a conference held on May 12, 2010, the New York Court invited CCM to file motions setting forth its grounds for seeking pretrial discovery on loss calculations. The parties have stipulated, subject to Court approval, that such motions will be filed on July 21, 2010, and will be argued, after briefing, on October 28, 2010. Prior to the filing of the Concurso Proceeding with the Federal District Court, CCM entered into a stipulation with each of the DCP Plaintiffs, which was so ordered by the New York Court (each a "Stipulation") staying the Derivatives Litigation pending completion of the global settlement contained in the Term Sheet and the Concurso Plan.[7] Each Stipulation provides that upon (i) the occurrence of a termination event under a Standstill Agreement (as defined below) and (ii) the expiration or earlier termination of the Subsidiary Agreement, the Stipulation will terminate, such that a DCP Plaintiff may elect to continue the Derivatives Litigation and/or exercise any of its rights and remedies against CCM or its assets.

14. Following the rejection of the Second Concurso Petition and shortly after the commencement of litigation by the DCP Plaintiffs, CCM commenced the process of negotiating a global settlement of its outstanding indebtedness with its various creditor constituencies. After more than a year of negotiations, in late May 2010, CCM agreed with the Derivative Counterparties, the Commercial Banks and certain Noteholders (the "Ad Hoc Group of Noteholders") on the terms of a restructuring to be consummated through a prenegotiated plan of reorganization under the Concurso Law that is supported by over 85% of the eligible debt and claims of CCM (as further described in the Term Sheet (defined below), the "Eligible Debt").

---

[7]     A copy of a Stipulation is attached as **Exhibit 4** to the Verified Petition.

15.     On July 14, 2010, CCM commenced the Concurso Proceeding by filing a voluntary petition for relief under the Concurso Law (the "Concurso Petition") in the Federal District Court, along with a prenegotiated concurso plan of reorganization (the "Concurso Plan"). As of the date hereof, the Concurso Plan is supported by a sufficient majority so as to bind non-consenting parties under Mexican Law.  Two days after the filing of the Concurso Plan, CCM filed the Verified Petition and Verified Complaint for a temporary restraining order and preliminary injunction.

16.     The Concurso Plan, as more fully described in the term sheet setting forth the terms of the Concurso Plan, which is attached to the Verified Petition as **"Exhibit 1"** (the "Term Sheet") (defined below), provides that in exchange for extinguishment of their existing claims, (i) the Derivative Counterparties will receive their pro rata share of a financial package consisting of (a) a new term loan facility (the "New Term Loan"), (b) a new asset-linked debt facility (the "Asset-Linked Facility"), and (c) new secured bonds (the "New Bonds"); (ii) the Commercial Banks will receive their pro rata share of a financial package consisting of portions of the New Term Loan and Asset-Linked Facility; and (iii) the Noteholders will receive a portion of the New Bonds.

17.     The New Term Loan consists of two tranches: an MXP$ 5.25477 billion amortizing tranche and an MXP$ 3.40773 billion bullet tranche.  The New Term Loan is secured by, among other things (a) first-priority liens on (i) all of CCM's real property assets with a value in excess of MXP$ 50 million (with certain specific exceptions), (ii) all of the capital stock owned by CCM, directly or indirectly, in each of the Guarantors (as defined in the Term Sheet) (other than capital stock currently serving as collateral for the Scheduled Working Capital Debt Facilities (to be defined in the definitive documentation) and Credit Support Facilities (to be

defined in the definitive documentation)), (iii) all collateral previously pledged for the Scheduled

Working Capital Debt Facilities and Credit Support Facilities that ceases to secure such facilities

(each as defined in the Term Sheet), and (iv) a Creditor Proceeds Account (as defined in the

Term Sheet); and (b) the Comerci Proceeds Account (as defined in the Term Sheet) and any

funds or securities therein, to the extent held for reinvestment in connection with an asset sale or

casualty event.  The Asset-Linked Facility will consist of two tranches of (i) MXP$ 4.15074

billion and (ii) MXP$ 1.61593 million minus the amount of any cash proceeds paid by CCM to

the Tranche A2 (as defined in the Term Sheet) creditors on the Closing Date[8] from Additional

Tranche A2 Collateral Sales (as defined in the Term Sheet) made before the Closing Date,

respectively.  The two tranches of the Asset-Linked Facility are secured by separate pools of

collateral, and proceeds from the sale of such collateral will be used to pay down the balance of

the respective tranche, and if the proceeds exceed the remaining balance of such tranche the

excess must be used to pay the other tranche (60% of any excess remaining after payment of the

other tranche of the Asset-Linked Facility will be used to prepay the New Term Loan and the

New Bonds, and the remaining 40% of such excess may be used by CCM for certain enumerated

purposes set forth in the Term Sheet).  The New Bonds will consist of a series of Mexican bonds

and U.S. Dollar bonds in the amount of MXP$ 1.95143 billion and US$223.9 million,

respectively.  The New Bonds will be secured by the same collateral package as the New Term

Loan.

      18.     Prior to the filing of the Concurso Proceeding, in order to facilitate the

restructuring described above, CCM entered into standstill agreements with creditors holding an

aggregate of approximately 85% of the Eligible Debt (each a "Standstill Agreement" and,

---

[8]     The "Closing Date" is the date that is three (3) days following the date on which there is a final and non-appealable judgment issued by the Mexican court with respect to the Concurso Plan.

collectively, the "Standstill Agreements").  As a material inducement for the Derivative

Counterparties to enter into such Standstill Agreements, CCM and each Derivative Counterparty

also entered into agreements which acknowledge such Derivative Counterparty's claim and settle

such claim for the consideration described above and more fully in the Term Sheet (each a

"Settlement and Debt Acknowledgement Agreement").[9]  The Standstill Agreements provide that

under certain terms and conditions set forth therein, holders of Eligible Debt and CCM will agree

to support and facilitate the restructuring on the terms and conditions set forth in the Term Sheet

and the Concurso Plan.  The Standstill Agreements further provide that pending the

consummation of the restructuring embodied in the Term Sheet and the Concurso Plan, each

Creditor (as defined in each Standstill Agreement) that enters into a Standstill Agreement will

forbear from exercising its rights and remedies in respect of certain debt and certain pending

claims.

19.     Concurrently with entry into the Standstill Agreements, CCM and its subsidiaries

entered into agreements with those creditors that executed Standstill Agreements, which obligate

CCM and its subsidiaries, on the one hand, and those creditors executing Standstill Agreements,

on the other hand, to use their reasonable best efforts to consummate a restructuring of CCM

and/or its subsidiaries on an out-of-court basis on the same commercial and other terms as set

forth in the Term Sheet and the Concurso Plan in the event that the Concurso Proceeding is

unsuccessful (each such agreement, a "Subsidiary Agreement" and, collectively, the "Subsidiary

Agreements").[10]

---

[9]      The form of Derivative Counterparty Standstill Agreement, with the form of Settlement and Debt
Acknowledgement Agreement attached as an annex, executed by the Derivative Counterparties and CCM
is attached as **Exhibit 2** to the Verified Petition.

[10]     A copy of a Subsidiary Agreement is attached as **Exhibit 3** to the Verified Petition.

20.     The Standstill Agreements each provide that upon any termination pursuant to its terms that is not caused by a breach of such Standstill Agreement by CCM (or its principal operating subsidiary, Tiendas Comercial Mexicana, S.A. de C.V. ("TCM")) (any termination of a Standstill Agreement, a "Standstill Termination Event"), CCM and such Creditor will have the obligations set forth in the relevant Subsidiary Agreement.  CCM and the DCP Plaintiffs have agreed that upon the occurrence of a termination event with respect to any Standstill Agreement, any stays or injunctive relief in effect in this Chapter 15 case will automatically be lifted without the need for further order or action of the Court to allow the relevant DCP Plaintiff to: (i) send a notice terminating its Standstill Agreement with CCM, to the extent such a notice is required under the relevant Standstill Agreement, and (ii) exercise all of its rights and remedies (including, without limitation, continuance of the Derivatives Litigation) against CCM and its assets, free of any stay or injunction ordered by this Court.

21.     As discussed above, in order to effectuate the global settlement contemplated in the Concurso Plan, on July 14, 2010, CCM filed the Concurso Petition with the Federal District Court.  A true and correct copy of the Concurso Petition is attached as **"Exhibit C"** hereto.[11]

22.     As set forth more fully in the del Castillo Declaration, following filing of the Concurso Proceeding, an examination will be held and the Federal District Court will issue a "business reorganization judgment" determining whether the Concurso Petition will be granted. If the Concurso Petition is granted, a stay similar to the Bankruptcy Code's automatic stay will be put in place enjoining creditors from taking any actions to enforce judgments or seize assets, and CCM will begin the process of reorganization.

23.     The Concurso Plan, which reflects the terms set forth in the Term Sheet and has been subscribed to by parties holding over 85% of CCM's outstanding indebtedness, was

---

[11]     An English translation of the Concurso Petition is attached as **"Exhibit D"** hereto.

submitted along with the Concurso Petition. In the absence of the requested relief, there is a possibility that certain creditors (including Noteholders who have not signed lock-up agreements) or others may commence actions against CCM in the United States in an effort to derail CCM's efforts to restructure through the Concurso Plan and circumvent the Concurso Process. CCM is already faced with the Derivatives Litigation, the effect of which has been to delay commencement of the Concurso Proceeding by dividing CCM's focus and attention and significantly increasing the costs of restructuring. Additional actions commenced in the United States would exacerbate these effects and impose a significant burden and distraction to CCM's efforts to consummate the Concurso Plan.

24. In the absence of the Court granting the requested relief, CCM will suffer irreparable harm. Actions taken by third parties to delay or derail implementation of the Concurso Plan would likely unravel CCM's entire restructuring, as such actions would lead to a termination of the Standstill Agreements, the continuation of the Derivatives Litigation and the exercise of additional remedies by creditors. Abandoning the current restructuring plan would leave CCM with significantly increased liabilities and no clear path to restructure those liabilities. CCM would be left with nothing but the prospect of reengaging in another round of expensive and time consuming negotiations in order to reach a new restructuring agreement, if such a new agreement is even possible, which would almost certainly be on significantly worse terms than those in the Term Sheet. Because of those concerns, I am also seeking entry of a temporary restraining order and preliminary injunction to enjoin creditors of CCM from initiating or continuing any proceedings or taking any actions in the United States with respect to CCM and/or its assets pending this Court's recognition of the Concurso Proceeding as a foreign main proceeding.

25.     I fully anticipate that CCM will be able to successfully consummate the Concurso Plan and complete its restructuring.

26.     I believe that the entry of a temporary restraining order would pose little, if any, harm upon those parties who would oppose a temporary restraining order or preliminary injunction because the scope of any such injunction would be limited to the territorial jurisdiction of the United States and such parties would not derogate any of the rights or remedies available to them in the Concurso Proceeding.  There is no value lost to creditors through the continuation of the Concurso Proceeding; to the contrary, CCM will continue as a going concern through and after completion of the Concurso Proceeding, maximizing the value of its estate for the benefit of all creditors.  As such, I believe that the balance of the harms weighs in favor of injunctive relief.

**STATEMENT PURSUANT TO**
**SECTION 1515(C) OF THE BANKRUPTCY CODE**

27.     I am informed that section 1515(c) of the Bankruptcy Code provides that "[a] petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative."

28.     In compliance with section 1515(c) of the Bankruptcy Code, I hereby declare that, to my knowledge, the only foreign proceeding (as such term is defined in section 101(23) of the Bankruptcy Code) pending with respect to CCM is the Concurso Proceeding.

**LIST PURSUANT TO BANKRUPTCY RULE 1007(A)(4)**

29.     I am informed that Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that a foreign representative filing a petition for recognition under chapter 15 of the Bankruptcy Code shall file with the petition:

> (A) a corporate ownership statement containing the information described in [Bankruptcy] Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of

the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition and all entities against whom provisional relief is being sought under § 1519 of the [Bankruptcy] Code.

30.    In accordance with Bankruptcy Rule 1007(a)(4), I hereby provide the following information:

**(A)    Administrators in the Concurso Proceeding**

As noted above, the Concurso Proceeding was commenced through the filing of the Concurso Petition in the Federal District Court earlier today.  As such, no administrator has as of yet been appointed.  This list will be supplemented as soon as practicable, but no later than (5) business days following the appointment of any administrator in the Concurso Proceeding.

**(B)    Parties to Litigation in the United States in Which CCM is a Party**

As noted above, CCM is currently party to litigation in the United States with the following parties:

- J.P. Morgan Chase Bank, N.A.

- J. Aron & Company

- Merrill Lynch Capital Markets AG

- Merrill Lynch Capital Services Inc.

- Barclays Bank PLC

**(C)    Parties Against Whom Provisional Relief is Sought Under Section 1519**

Concurrently herewith, CCM has commenced an adversary proceeding seeking a temporary restraining order and preliminary injunction against Does 1 through 1000, who, upon information and belief, are Noteholders or other creditors of CCM, and all other persons (including individuals, partnerships and corporations, and all those acting for or on their behalf), and all governmental units (including the United States of America and any State,

Commonwealth, District, Territory, municipality, department, agency or instrumentality of the United States, a State, Commonwealth, District, Territory, municipality, a foreign state or other foreign or domestic governments, and all those acting for or on their behalf).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 16, 2010
      Mexico, D.F.

/s/ Fernando del Castillo Elorza
Fernando del Castillo Elorza

7495764

# **EXHIBIT A**




*Enrique Almanza Pedraza*
*Notaría 198*



exp 2369/2010

-------- INSTRUMENTO NÚMERO CIENTO VEINTISÉIS MIL TRESCIENTOS TREINTA Y TRES. --------------------------------------------------------------126,333

-------- LIBRO NÚMERO DOS MIL DOSCIENTOS SETENTA Y TRES. --------------2,273

-------- FOLIO NÚMERO TRESCIENTOS TREINTA Y UN MIL TRESCIENTOS NOVENTA Y SIETE. ------------------------------------------------------------331,397

-------- EN LA CIUDAD DE MÉXICO, DISTRITO FEDERAL, a seis de julio del año dos mil diez, YO, ENRIQUE ALMANZA PEDRAZA, Notario Número ciento noventa y ocho de esta Ciudad, hago constar: <u>EL PODER ESPECIAL</u>, que otorga: la Sociedad Mercantil denominada **"CONTROLADORA COMERCIAL MEXICANA", SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**, a quien en lo sucesivo se le denominará "**LA PODERDANTE**", representada en este acto por los señores **CARLOS GONZALEZ ZABALEGUI** y **LUIS FELIPE GONZALEZ SOLANA**, en favor de los señores **ALBERTO GUILLERMO SAAVEDRA OLAVARRIETA, FERNANDO DEL CASTILLO ELORZA** y **ALFONSO CASTRO DIAZ**, a quienes en lo sucesivo se les denominará **"LOS APODERADOS"**, para que lo ejerciten de manera **INDIVIDUAL** o **MANCOMUNADA**, por cualquiera DOS de **"LOS APODERADOS"**, de conformidad con lo siguiente:-------------------------------------------------------------------------------

----------------------------------- <u>PROTESTA DE LEY</u> ---------------------------------

-------- Que advertí al compareciente de las penas en que incurren los que declaran con falsedad ante un Notario Público, en los términos de los artículos ciento sesenta y cinco de la Ley del Notariado y trescientos once del Nuevo Código Penal, ambos ordenamientos vigentes para el Distrito Federal. ------------------------------------

-------- Expuesto lo anterior se otorga la siguiente: --------------------------------------

----------------------------- C L Á U S U L A S ---------------------------------

-------- PRIMERA.- La Sociedad Mercantil denominada **"CONTROLADORA COMERCIAL MEXICANA", SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**, (LA **"PODERDANTE"**), representada como ha quedado dicho, en los

términos del artículo dos mil quinientos noventa y seis y dos mil quinientos cincuenta y cuatro del Código Civil Federal y de sus correlativos en los Códigos Civiles de las Entidades de la República Mexicana y el Distrito Federal, otorgan en favor de los señores **ALBERTO GUILLERMO SAAVEDRA OLAVARRIETA, FERNANDO DEL CASTILLO ELORZA** y **ALFONSO CASTRO DÍAZ** (cada uno, un **"APODERADO"** y conjuntamente, los **"APODERADOS"**) el siguiente <u>PODER ESPECIAL</u>, que es especial en cuanto su objeto pero tan amplio como sea necesario en derecho, para que sea ejercitado de <u>manera INDIVIDUAL o MANCOMUNADA, por cualesquiera DOS de los **"APODERADOS"**</u>, con las facultades y limitaciones que se indican: --------------------------

------- Poder Especial en términos del artículo dos mil quinientos noventa y seis del Código Civil Federal y de sus correlativos en los Códigos Civiles de las entidades de la República Mexicana y el Distrito Federal, que es especial en cuanto su objeto pero tan amplio como sea necesario en derecho, para que sea ejercitado de manera individual o mancomunada, por cualesquiera dos de los **"APODERADOS"** arriba mencionados y en cualquier jurisdicción, para que en nombre y representación de la Sociedad **"PODERDANTE"**: **(i)** firmen y presenten, ante la autoridad competente, la solicitud de concurso mercantil o de concurso mercantil con plan de reestructura previo de **"CONTROLADORA COMERCIAL MEXICANA", SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**, de conformidad con lo que establece la legislación aplicable a la materia; **(ii)** suscriban cualesquier otros instrumentos o documentos relacionados con la tramitación del concurso mercantil o del concurso mercantil con plan de reestructura previo mencionado en el inciso anterior; **(iii)** realicen cuantos actos, agencias y diligencias sean necesarias o convenientes para cumplir con los fines señalados en el presente poder, firmando cuantos documentos públicos o privados se requieran al efecto, siempre y cuando sean consecuencia del Plan de Reestructura Previo suscrito por los mandatarios de **"CONTROLADORA COMERCIAL MEXICANA", SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**, que otorgan la presente delegación de facultades, y **(iv)** firmen y presenten, ante la autoridad competente, cualesquier otros

  

*Enrique Almanza Pedraza*
*Notaria 198*
3

instrumentos o documentos relacionados con la tramitación de un procedimiento accesorio al concurso mercantil, al amparo del Capítulo "15" (quince) de la Ley de Insolvencia de los Estados Unidos de América *(U.S. Bankruptcy Code)*, incluyendo, sin limitar a: cualesquier solicitudes *(Petitions)*, ordenes de reconocimiento *(Recognition Orders)*, quejas *(Complaints)*, acciones *(TRO Motions)*, ordenes para probar causa *(Orders to Show Cause)*, solicitudes temporales de no acción *(Temporary Restraining Orders)* y solicitudes de medidas precautorias y preliminares *(Preliminary Injunction)*, todas ellas, de conformidad con lo que establece la legislación aplicable a la materia. ----

-------------------------------- R E P R E S E N T A C I Ó N --------------------------------

--------Manifiestan los señores **CARLOS GONZALEZ ZABALEGUI** y **LUIS FELIPE GONZALEZ SOLANA**, que su representada es persona capaz y que las facultades con que actúan no les han sido modificadas ni en forma alguna revocadas y me acreditan los anteriores extremos con el documento que agrego al apéndice de este instrumento bajo la letra "A".-------------------------------------------------------------------------------------

-------------------------------- G E N E R A L E S --------------------------------

-------- Los comparecientes manifiestan bajo protesta de decir verdad, ser de Nacionalidad Mexicana: -------------------------------------------------------------------------

--------El señor **CARLOS GONZALEZ ZABALEGUI**, originario del Distrito Federal, nacido el día trece de julio de mil novecientos cincuenta y uno, casado, Licenciado en Administración de Empresas, con domicilio en Avenida Revolución número setecientos ochenta, Módulo dos, Colonia San Juan, Delegación Benito Juárez, en esta Ciudad, a quien conozco personalmente; con Curp "GOZC-510713-HDF-NBR-04". --------------------

-------- El señor **LUIS FELIPE GONZALEZ SOLANA**, originario del Distrito Federal, nacido el cinco de diciembre de mil novecientos cincuenta y ocho, casado, Licenciado en Administración de Empresas, con domicilio en Paseo de los Laures número ciento veintidós, Colonia Bosques de las Lomas, en esta Ciudad; con **Curp** "GOSL-581205-H-DF-NLS-0-2".----------------------------------------------------------------------------------

-------- <u>**YO, EL NOTARIO CERTIFICO:**</u> I.- Que me identifiqué plenamente como Notario

4

ante el compareciente; II.- Que lo inserto y relacionado concuerda con sus originales que doy fe de tener a la vista; III.- Que los comparecientes son de mi conocimiento personal y los considero con capacidad legal para otorgar este instrumento; IV.- Que leí y expliqué íntegro a los comparecientes, el valor, las consecuencias y alcances legales del contenido de este instrumento, quiénes además lo leyeron personalmente y manifestaron su pleno entendimiento; y V.- Que conforme con su contenido manifestó su conformidad, firmando el mismo día y año de su otorgamiento, en cuyo acto LO AUTORIZO DEFINITIVAMENTE. - DOY FE.----------------------------------------------

------- FIRMA DE LOS SEÑORES CARLOS GONZALEZ ZABALEGUI Y LUIS FELIPE GONZALEZ SOLANA.-----------------------------------------------

------- E. ALMANZA P.- RUBRICA. ------------------------------------------

------- EL SELLO DE AUTORIZAR.------------------------------------------

------- ARTICULO DOS MIL QUINIENTOS CINCUENTA Y CUATRO DEL CODIGO CIVIL. ---------------------------------------------------

------- "En todos los poderes generales para pleitos y cobranzas, bastará que se diga que se otorga con todas las facultades generales y las especiales que requieran cláusula especial conforme a la Ley, para que se entiendan conferidos sin limitación alguna. --------

------- En los poderes generales para administrar bienes, bastará expresar que se dan con ese carácter, para que el apoderado tenga toda clase de facultades administrativas. -

------- En los poderes generales para ejercer actos de dominio, bastará que se den con ese carácter para que el apoderado tenga todas las facultades de dueño, tanto en lo relativo a los bienes, como para hacer toda clase de gestiones a fin de defenderlos. -------

------- Cuando se quisieren limitar en los tres casos antes mencionados, las facultades de los apoderados, se consignarán las limitaciones o los poderes serán especiales. -------

------- Los Notarios insertarán este artículo en los testimonios de los poderes que otorguen". ----------------------------------------------------

------- *ES CUARTO TESTIMONIO* QUE SE SACA DE SU ORIGINAL Y SE EXPIDE PARA "LOS APODERADOS" SEÑORES ALBERTO GUILLERMO SAAVEDRA



Enrique Almanza Pedraxa
Notaria 198

SAAVEDRA OLAVARRIETA, FERNANDO DEL CASTILLO ELORZA Y ALFONSO CASTRO DIAZ. -------------------------------------------------------------------------

------- ESTA COTEJADO Y CORREGIDO Y VA EN TRES  FOJAS UTILES DE LAS CUALES SE ENCUENTRAN ESCRITAS CINCO  PAGINAS CON TINTA FIJA Y PROTEGIDAS POR KINEGRAMAS LOS CUALES PUEDEN NO TENER NUMERACION PROGRESIVA. - DOY FE. --------------------------------------------------------

------- MEXICO, DISTRITO FEDERAL, *A LOS SEIS DIAS DEL MES DE JULIO DEL AÑO DOS MIL DIEZ.--- DOY FE.* -------------------------------------------------

------- JLMV/egt* --------------------------------------------------------------------



# **EXHIBIT B**

[seal]                              [seal]

Enrique Almanza Pedraza.

Notary Public 198.

file 2369/2010

------- INSTRUMENT NUMBER ONE HUNDRED TWENTY-SIX THOUSAND THREE HUNDRED AND THIRTY-THREE ------------------------------------------------------- 126,333

------- BOOK NUMBER TWO THOUSAND TWO HUNDRED AND SEVENTY-THREE ---2,273

------- FOLIO NUMBER THREE HUNDRED THIRTY-ONE THOUSAND THREE HUNDRED AND NINETY-SEVEN. ------------------------------------------------------------------ 331,397

------- IN THE CITY OF MEXICO, FEDERAL DISTRICT, on July 6th, 2010, I, ENRIQUE ALMANZA PEDRAZA, Notary Public Number One Hundred and Ninety-Eight of this City, hereby certify that: THIS SPECIAL POWER OF ATTORNEY is granted by the Business Corporation denominated "CONTROLADORA COMERCIAL MEXICANA", SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE, hereinafter referred to as "THE PRINCIPAL," represented in this act by CARLOS GONZALEZ ZABALEGUI and LUIS FELIPE GONZALEZ SOLANA, in favor of ALBERTO GUILLERMO SAAVEDRA OLAVARRIETA, FERNANDO DEL CASTILLO ELORZA and ALFONSO CASTRO DIAZ, hereinafter referred to as "THE ATTORNEYS-IN-FACT", to be exercised INDIVIDUALLY OR JOINTLY by any TWO of "THE ATTORNEYS-IN-FACT," pursuant to the following:------------------------------------------------------

------------------------------------------------ **SWORN BY LAW** --------------------------------------------------

------- I have advised the individual appearing before me of the potential sanctions applicable to those who make a false statement to a Notary Public in accordance with article 165 of The Notary Public Law and article 311 of the New Criminal Code, both in effect in the Federal District. --------------------------------------------------------------------------------------------------------

Pursuant to the above, the following clauses are established: -------------------------------------------

------------------------------------------- **C L A U S E S** -----------------------------------------------

------- **FIRST.-** The Business Corporation denominated **"CONTROLADORA COMERCIAL MEXICANA", SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE, (THE "PRINCIPAL")**, represented as noted above, in accordance with articles 2596 and 2554 of the Federal Civil Code and related provisions of the Civil Codes of the Entities of the Mexican Republic and the Federal District, grants **ALBERTO GUILLERMO SAAVEDRA OLAVARRIETA, FERNANDO DEL CASTILLO ELORZA** and **ALFONSO CASTRO DIAZ** (each of them, an "ATTORNEY-IN-FACT" and jointly **the "ATTORNEYS-IN-FACT"**) the following **SPECIAL POWER OF ATTORNEY**, which is special as to its purpose but shall be as general as necessary in terms of its legal authority, to be exercised **INDIVIDUALLY or JOINTLY by any TWO of the "ATTORNEYS-IN-FACT"**, with the following powers and limitations: -----------------------------------------------------------------------------------------------------

----------- Special Power of Attorney under the terms of article 2596 of the Federal Civil Code and related provisions of the Civil Codes of the Entities of the Mexican Republic and the Federal District, which is special as to its purpose but shall be as general as necessary in terms of its legal authority, to be exercised individually or jointly by any TWO of the above-mentioned **"ATTORNEYS-IN-FACT"** in any jurisdiction, so that in the name and on behalf of the **"PRINCIPAL"** Corporation they may: **(i)** execute and submit to the competent court an application for the commencement of insolvency proceedings or of insolvency proceedings with a prepackaged restructuring plan of **"CONTROLADORA COMERCIAL MEXICANA", SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**, pursuant to the applicable laws; **(ii)** execute any other instruments or documents relating to the insolvency proceedings or the

insolvency proceedings with a prepackaged restructuring plan; **(iii)** carry out any acts, transactions and duties that are necessary or desirable in furtherance of the purpose indicated in this power of attorney, and execute such public or private documents as may be necessary for such purpose, provided that they are incidental to the Prepackaged Restructuring Plan executed by the attorneys-in-fact of **"CONTROLADORA COMERCIAL MEXICANA"**, **SOCIEDAD ANÓNIMA BURSÁTIL DE CAPITAL VARIABLE**, granting this delegation of powers, and **(iv)** execute and submit to the relevant authority any other instruments or documents relating to the commencement of a proceeding ancillary to the insolvency proceeding under Chapter "15" (fifteen) of the US Bankruptcy Code including, without limitation: Petitions, Recognition Orders, Complaints, TRO Motions, Orders to Show Cause, Temporary Restraining Orders and Preliminary Injunctions, all of them in accordance with the provisions of the applicable laws. -------------------------------------------------------------------

------------------------------------------ **R E P R E S E N T A T I O N** -------------------------------------

------------- **CARLOS GONZALEZ ZABALEGUI** and **LUIS FELIPE GONZALEZ SOLANA** state that their principal has sufficient legal capacity and that their powers have not been altered or revoked in any way, and this is accredited by the document that is hereby incorporated under appendix **"A"** to this document.------------------------------------------------------------------

-------------------------------------- **G E N E R A L   I N F O R M A T I O N** ----------------------------

-------------The appearing parties have affirmed under penalty of perjury that they are Mexican nationals: -----------------------------------------------------------------------------------------------

-------------**CARLOS GONZALEZ ZABALEGUI**, from the Federal District, born on July 13th, 1951, married, Bachelor of Business Administration, residing in Avenida Revolución No. 780, Módulo dos, Colonia San Juan, Delegación Benito Juárez of this City, personally known to me; Individual Identification Number (Curp) **"GOZC-510713-HDF-NBR-04."** -----------------------------

------------ **LUIS FELIPE GONZALEZ SOLANA**, from the Federal District, born on December 5th 1958, married, Bachelor of Business Administration, residing at Paseo de los Laureles No. 122, Colonia Bosques de las Lomas of this City; Individual Identification Number (Curp) **"GOSL-581205-H-DF-NLS-0-2."** --------------------------------------------------------------------

------------ **IN MY CAPACITY AS NOTARY PUBLIC, I CERTIFY THAT:** I.- I identified myself as a Notary Public to the individual appearing before me; II.- The information contained and referred to in this document conforms to the originals that I have before me; III.- The individuals before me are personally known to me and have sufficient legal capacity to grant this instrument; IV.- I have read and fully explained the value, consequences and legal force of this instrument to the individuals before me, who have read the instrument and claimed to have understood it; and V.- The individual appearing before me ratified its content and signed the instrument on the same date and year of its execution, date on which **I, NOTARY PUBLIC, PERMANENTLY AUTHORIZE SAID EXECUTION. – TO ALL OF WHICH I ATTEST.** ------------ **SIGNATURES OF CARLOS GONZALEZ ZABALEGUI AND LUIS FELIPE GONZALEZ SOLANA.**-------------------------------------------------------------------------

------------ **E. ALMANZA P.- RUBRIC.** ----------------------------------------------------------

--------- **SEAL OF AUTHORIZATION.** -----------------------------------------------------------

---------- **ARTICLE 2554 OF THE CIVIL CODE**-------------------------------------------------------

------ "In all general powers of attorney for lawsuits and collections, it shall be sufficient to state that they are granted with all the general and special powers which require a special clause in accordance with the law, so that they may be understood to have been granted without any limitation whatsoever.-----------------------------------------------------------------------

--------- In general powers of attorney for the administration of property, it shall be sufficient to state that they are granted for such purpose in order to confer upon the attorney-in-fact ample powers of administration. -----------------------------------------------------------------------------------

--------- In general powers of attorney for the exercise of acts of ownership, it shall be sufficient to state that they are granted for such purpose in order to confer upon the attorney-in-fact all the rights of ownership with respect to the property in question and the power to take all measures necessary for the protection of said property.-----------------------------------------

--------- If in any of the three above-mentioned cases, it should be desired to limit the powers of the attorneys-in-fact, such limitations shall be expressly set forth therein, or otherwise a special power of attorney shall be granted. --------------------------------------------------------------------

--------- Notaries shall include this article in the notarial copies of the powers of attorney which they execute. ----------------------------------------------------------------------------------------

***THIS FOURTH NOTARIAL COPY*** OF THE ORIGINAL IS ISSUED TO "**THE ATTORNEYS-IN-FACT**" **ALBERTO GUILLERMO SAAVEDRA OLAVARRIETA, FERNANDO DEL CASTILLO ELORZA AND ALFONSO CASTRO DIAZ**.------------------------------------------------

------- THIS INSTRUMENT HAS BEEN REVIEWED AND CORRECTED AND IS GIVEN IN THREE NOTARIAL PAGES, OF WHICH FIVE SHEETS ARE WRITTEN WITH PERMANENT INK AND ARE PROTECTED BY KINEGRAMS WHICH MAY NOT HAVE CONSECUTIVE NUMBERING. – TO ALL OF WHICH I ATTEST------------------------------------------------------

------- MEXICO, FEDERAL DISTRICT, *JULY 6TH 2010.— TO ALL OF WHICH I ATTEST*-------

---------JLMV/egt* ---------------------------------------------------------------------------------------------

[illegible signature]

[seal]

# **EXHIBIT C**

**CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V.**

**SOLICITUD DE CONCURSO MERCANTIL CON PLAN DE REESTRUCTURA PREVIO**

**C. JUEZ DE DISTRITO EN MATERIA CIVIL EN TURNO EN EL DISTRITO FEDERAL.**

**FERNANDO DEL CASTILLO ELORZA**, en representación de **CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V.**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como **Anexo 1)**, señalando como domicilio para oír y recibir notificaciones el ubicado en Campos Elíseos 345, Piso 11, Colonia Chapultepec Polanco, Código Postal 11560, México, Distrito Federal, autorizando en términos amplios del artículo 1069 del Código de Comercio, a los señores licenciados, CARLOS ARTURO OLVERA FERRER (Cédula Profesional número 1620393), GABRIELA GUADALUPE MEZA DÍAZ DE LEÓN (Cédula Profesional 3720580), CARLOS RODRIGO MONTES FLORES (Cédula Profesional número 3854674), ROBERTO FERNÁNDEZ DEL VALLE MITTENZWEY (Cédula Profesional número 4096751), FAVIO CAMILO VÁZQUEZ LÓPEZ (Cédula Profesional número 3999969), CECILIA FLORES RUEDA (Cédula Profesional 3298793), FERNANDO ESPINOSA ASCARRAGA (Cédula Profesional 5714541), ANA LAURA ELIZALDE LEÓN (Cédula Profesional 4455257), CARLOS RICARDO BREHM TINOCO (cédula profesional 5744702), JOSÉ GABRIEL MENDOZA GONZÁLEZ (cédula profesional 5782012), JOAQUÍN SOLÍS RIVERA, ARTURO GUTIÉRREZ ZAMORA, ARTURO SOSA ESCUDERO, ANA ELIZABETH FLORES CORTES y SERGIO SÁNCHEZ ALVIRDE y únicamente para oír y recibir notificaciones, así como para recoger toda clase de documentos y valores, e imponerse de autos, a ADRIANA PADILLA RIVAS, ÁNGELA DANIELA REYES GONZÁLEZ, FERNANDO ZAPATA FONT y VÍCTOR MANUEL GARCÍA ALCÁZAR, indistintamente.

ASÍ COMO LOS SIGUIENTES ACREEDORES:

A) **JORGE LUIS PEON SEGURA**, licenciado en Derecho con cédula profesional número 5193402, expedida por la Dirección General de Profesiones de la Secretaría de Educación Pública, en representación de **BARCLAYS BANK PLC**, personalidad que acredito y pido sea reconocida en términos del instrumento notarial que se exhibe adjunto al presente escrito como **Anexo 2-A)**, señalando como domicilio para oír y recibir toda clase de notificaciones el ubicado en Paseo de la Reforma 265, Piso 10, Colonia Cuauhtémoc, Código Postal 06500, en esta ciudad de México, Distrito Federal, y autorizando en términos de lo dispuesto por el artículo 1069 del Código de Comercio, de aplicación supletoria a la Ley de Concursos Mercantiles y para recoger todo tipo de documentos y valores, interponer recursos, ofrecer e intervenir en el desahogo de las

pruebas, alegar en audiencias, solicitar se dicte sentencia y en general para realizar cualquier acto en defensa de los intereses de los Acreedora y para la Aprobación del Convenio Concursal propuesto a los señores José Víctor Rodríguez Barrera, Carlos Alberto Orendain García de León, Luis Alberto Bonilla Herrera, Rebeca López Rojas y Mauricio Caso de la Parra, con cédulas profesionales números 2736673, 3910091, 5088653, 5174325 y 6113120, expedidas por la Dirección General de Profesiones de la Secretaría de Educación Pública, así como a los señores Pedro Patricio Torres Marco Arzani, Jorge Cesar Almazán Álvarez, Roberto Carlos Cantoral Ramos, Sergio Francisco Cedillo García, Adrián González Moret, Alejandro Guerra Rousse, Arturo Issac Aquino Hernández, Alberto Quintana Pineda y Mauricio José Pasquel Rochin, indistintamente.

B) ALEJANDRO SAINZ ORANTES, en representación de:

(i) **Monumental Life Insurance Company**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-1**;

(ii) **Transamerica Financial Life Insurance Company**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-2**;

(iii) **Transamerica Life Insurance Company**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-3**;

(iv) **Siefore Bancomer Protege, S.A. de C.V.**; **Siefore Bancomer Real, S.A. de C.V.**; **Siefore Bancomer Progresa, S.A. de C.V.**; **Siefore Bancomer Adelante, S.A. de C.V.**; y **Siefore Bancomer Emprende, S.A. de C.V.**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-4**;

(v) **Siefore Invercap, S.A. de C.V.**; **Siefore Invercap II, S.A. de C.V.**; **Siefore Invercap III, S.A. de C.V.**; **Siefore Invercap IV, S.A. de C.V.**; y **Siefore Invercap V, S.A. de C.V.**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-5**;

(vi) **Chiletech, S.A., Administradora de Fondos de Inversión como Administradora de Chiletec Fondo de Inversión**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-6**;

(vii) **Moneda Absolute Return Fund Limited**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-7**;

(viii) **Moneda Latin American Corporate Debt**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-8**;

(ix) **Moneda, S.A., Administradora de Fondos de Inversión como Administradora de los Fondos de Inversión, Moneda Deuda Latinoamericana Fondo de Inversión, Moneda Retorno Absoluto Fondo de Inversión, Moneda Small Cap Latinoamérica Fondo de Inversión y Moneda Latinoamérica Deuda Local Fondo de Inversión**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-9**;

(x) **Ohio National Life Assurance Corporation**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-10**;

(xi) **The Ohio National Life Insurance Company**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-11**;

(xii) **Sun Life Reinsurance (Barbados) Limited**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-12**;

(xiii) **Sun Life Reinsurance (Ireland) Limited**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-13**;

(xiv) **Sun Life Assurance Company of Canada (U.S.)**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-14**;

(xv) **Sun Life Assurance Company of Canada**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-15**;

(xvi) **Sun Life Hong Kong Limited**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-16**;

 (xvii) **Sun Life Insurance & Annuity Company of New York**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-17**;

(xviii) **Sun Capital Investment Grade Bond Fund**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-18**;

(xix) **Anthion Master Fund, LP**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-19**;

(xx) **Teachers Insurance and Annuity Association of America**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-20**;

(xxi) **HSBC B1 Siefore, S.A. de C.V., Grupo Financiero HSBC**; **HSBC B2 Siefore, S.A. de C.V., Grupo Financiero HSBC**; **HSBC B3 Siefore, S.A. de C.V., Grupo Financiero HSBC**; **HSBC B4 Siefore, S.A. de C.V., Grupo Financiero HSBC**; y **HSBC B5 Siefore, S.A. de C.V., Grupo Financiero HSBC**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-21**;

(xxii) **Fondo Sólida Banorte Generali Uno, S.A. de C.V., Siefore**; **Fondo Sólida Banorte Generali Dos, S.A. de C.V., Siefore**; **Fondo Sólida Banorte Generali Tres, S.A. de C.V., Siefore**; **Fondo Sólida Banorte Generali Cuatro, S.A. de C.V., Siefore**; y **Fondo Sólida Banorte Generali Cinco, S.A. de C.V., Siefore**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-22**;

(xxiii) **Larraín Vial S.A. Sociedad Administradora de Fondos (también denominada Larraín Vial SAF) como Administradora del Fondo de Inversión Larraín Vial Renta Fija Latinoamericana FI**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-23**;

(xxiv) **Macquarie Bank Limited**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-24**;

(xxv) **Instituto Mexicano del Seguro Social**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-25**;

(xxvi) **Copernico Latin America Strategic Fund**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-26**;

(xxvii) **Copernico Special Situations Fund**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-27**;

(xxviii) **Bice Vida Compañía de Seguros, S.A.**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-28**;

(xxix) **Barclays Capital, Inc.**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-29**;

(xxx) **JCAM Global Fund (Master) LP**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-30**;

(xxxi) **Atlantic Security Bank**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-31**;

(xxxii) **Pascale Lehmann Scassi-Buffa**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-32**;

(xxxiii) **Leon Lehmann Scassi-Buffa**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-33**; y

(xxxiv) **María C. Haro**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-34**,

(xxxv) **BANCARD INTERNATIONAL INVESTMENT INC**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como Anexo **2-B)-35**,

respectivamente, señalando todos como domicilio para oír y recibir todo tipo de notificaciones y documentos, el ubicado en Boulevard Manuel Avila Camacho 24, piso 6, colonia Lomas de Chapultepec, delegación Miguel Hidalgo, código postal 11000, Distrito Federal, México, autorizando en términos del tercer párrafo del artículo 1069 del Código de Comercio, conjunta o individualmente, indistintamente, a los licenciados en Derecho Luis Alfonso Cervantes Muñiz, con cédula profesional 1056989, Manuel Ruiz de Chávez Gutiérrez de Velasco, con cédula profesional 2794401, Alejandro Campillo Talavera, con cédula profesional 1356999, Hugo López Coll, con cédula profesional 4516293, Daniel Alejandro Díaz Alvarez, con cédula profesional 4048429, Juan Carlos Cajigas Lozano, con cédula profesional 4260507, Diana Elvira Guzmán García, con cédula profesional 6260346, e Hildebrando García Alvarez, con cédula profesional 6356157, y también conjunta o separadamente, indistintamente, únicamente para oír y recibir notificaciones, recibir documentos y valores y para imponerse en autos firmando lo necesario, a la señorita Estefanía Sierra Ulibarri, así como a los señores Diego Seguí Trueba, Santiago Alessio Robles Seguí, Alejandro Díaz Steta, Roberto Benjamín Ibarra de Rueda, Marino Castillo Moreno y Rodrigo Guaida Azar.

C) **GABRIEL PÉREZ RÍOS AGUILAR**, licenciado en Derecho con cédula profesional número 1649997 y **MARÍA FERNANDA RUÍZ PADILLA**, licenciada en Actuaria, con cédula profesional número 2427950, expedidas por la Dirección General de Profesiones de la Secretaría de Educación Pública, respectivamente, en representación de **BANCO SANTANDER (MÉXICO), S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SANTANDER, (antes BANCO SANTANDER, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SANTANDER)**, personalidad que acreditamos y pedimos sea reconocida en términos de los instrumentos notariales que se exhiben adjuntos al presente escrito como **Anexo 2-C)**, señalando como domicilio para recibir notificaciones el primer piso del edificio número veintinueve de la calle de José Ibarrarán, Colonia San José Insurgentes, código postal 03900, México, Distrito Federal, autorizando para oírlas en términos del tercer párrafo del artículo 1069 del Código de Comercio de aplicación supletoria a la Ley de Concursos Mercantiles, así como para recibir documentos a nuestros abogados patronos, señores licenciados Everardo A. Hegewisch Arrillaga, doctor Fernando Hegewisch Díaz Infante, licenciados Ángel Armando Peña Santiago, Claudia Celina Vega López, Ricardo Aguirre Marín, Jacqueline Pérez Rentería, Silvia Elizabeth Vázquez Zamora, Abel Chávez Salinas y Paola Melodía Solís Pérez, con cédulas profesionales números 79583, 1290648, 1611753, 1974998, 3374475, 3577965, 4818142, 4898629, y 6000598, respectivamente, expedidas por la Dirección General

de Profesiones de la Secretaría de Educación Pública y facultando sólo para imponerse de los autos, oír notificaciones y recibir documentos en términos del penúltimo párrafo del precepto legal antes referido a los señores pasantes de derecho Elías Iván Loza Fortanel, Erick García Castañeda, Víctor Arellano Ramírez, Casilda Aguilar Castro y Andrés Bran Jasso, con autorizaciones para ejercer la profesión números 74160, 74051, 74493, 75004 y 75108, respectivamente, expedidas por la misma Dirección General de Profesiones, así como a los señores María Teresa Mendoza Ramírez, María del Rosario Pérez Hernández, Alejandra Velásquez Tello, Esteban Díaz Reséndiz y Maetzín Ramírez Carlock, indistintamente.

D) **GERARDO MANUEL RAMÍREZ ORNELAS**, abogado con cédula profesional 687988, registrada ante el Sistema Computarizado para el Registro Único de Profesionales del Derecho ante los Tribunales de Circuito y Juzgados de Distrito del Consejo de la Judicatura Federal, con el número 22307; en representación de **BBVA BANCOMER, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BBVA BANCOMER**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que se exhibe como **Anexo 2-D)**, señalando como domicilio para oír y recibir todo tipo de notificaciones y documentos, el ubicado en Andrés Bello 45, piso 12, Colonia Chapultepec Polanco, C.P. 11560, en México, Distrito Federal, autorizando en términos del tercer párrafo del artículo 1069 del Código de Comercio, conjunta o individualmente, indistintamente, a los licenciados Carlos David Villasante Santoyo, con cédula profesional 2613630, registrada ante el Sistema Computarizado para el Registro Único de Profesionales del Derecho ante los Tribunales de Circuito y Juzgados de Distrito del Consejo de la Judicatura Federal, con el número 39172; Ángel Fabricio Escalante Sánchez, abogado con cédula profesional 3635201, registrada ante el Sistema Computarizado para el Registro Único de Profesionales del Derecho ante los Tribunales de Circuito y Juzgados de Distrito del Consejo de la Judicatura Federal, con el número 50359; Jordi Oropeza Solórzano, con cédula profesional 4492260, registrada ante el Sistema Computarizado para el Registro Único de Profesionales del Derecho ante los Tribunales de Circuito y Juzgados de Distrito del Consejo de la Judicatura Federal, con el número 79818; Marisol Zaraí Roque Paz, con cédula profesional número 3815024, registrada ante el Sistema Computarizado para el Registro Único de Profesionales del Derecho ante los Tribunales de Circuito y Juzgados de Distrito del Consejo de la Judicatura Federal, con el número 3698; y Jorge Mario Lanz Santamaría, con cédula profesional número 5254915, registrada ante el Sistema Computarizado para el Registro Único de Profesionales del Derecho ante los Tribunales de Circuito y Juzgados de Distrito del Consejo de la Judicatura Federal, con el número 79133; y también conjunta o separadamente, indistintamente, únicamente para oír y recibir notificaciones, recibir documentos y valores y para imponerse en autos firmando lo necesario, a la señores Israel Ernesto Sahagún Morales, Erika Monzerrat Campuzano Navarrete, José Juan Sánchez Navarrete, Angélica Janet Torres Lázaro, Mario Alberto Márquez Navarro, Daniel Arouesty Finkelstein, Ángel

Eduardo Piña Hernández, José Pablo Peralta Mondragón, Cristian Efrén Sánchez Salgado y Pablo Gonzáles Anciola.

E) **ANGEL VARELA TORRES**, abogado con número de cédula profesional un millón ochenta y ocho mil quinientos cuatro expedida por la Dirección General de Profesiones, dependiente de la Secretaría de Educación Pública y en mi carácter de apoderado general para pleitos y cobranzas de la Institución Bancaria denominada **BANCO MERCANTIL DEL NORTE, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BANORTE**, personalidad que acredito en mérito de la copia certificada que exhibo relativa a la escritura pública número cincuenta y ocho mil ciento diez de fecha veintinueve de agosto del año dos mil siete, otorgada ante la fe del señor licenciado Primitivo Carranza Acosta, notario público suplente del notario número setenta y dos y notario del Patrimonio Inmueble Federal, señor licenciado Javier García Ávila, con ejercicio en el municipio de la Ciudad de Monterrey, Estado de Nuevo León, que se exhibe como _Anexo 2-E)_, señalando como domicilio para recibir notificaciones el piso diez del edificio marcado con el número mil doscientos treinta, ubicado en Avenida Prolongación Paseo de la Reforma, Colonia Cruz Manca, Delegación Cuajimalpa, de ésta ciudad de México, Distrito Federal, Código Postal cero cinco mil trescientos cuarenta y nueve, facultando para los mismos efectos, así como para recoger documentos y valores e imponerse de los presentes autos indistintamente, a los señores licenciados en la Carrera de Derecho Sergio Romero Velázquez, Gilberto Ordóñez Anselmo, Leticia Salvador Romero, Guillermo Prieto Alcázar y César Ignacio del Valle Anaya, con números de cédula profesional dos millones novecientos trece mil seiscientos treinta y siete, cuatro millones quinientos sesenta y tres mil novecientos setenta y dos, cinco millones trescientos noventa y seis mil quinientos treinta y cinco, tres millones ochocientos cincuenta y cuatro mil seiscientos setenta y siete y cinco millones ciento setenta mil doscientos cincuenta y ocho, respectivamente.

F) **JESÚS MIGUEL MARÍN SÁNCHEZ y ALBERTO GERARDO FERNÁNDEZ LÓPEZ**, promoviendo en nuestra calidad de apoderados legales de **SCOTIABANK INVERLAT, S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SCOTIABANK INVERLAT**, personalidad que acreditamos y solicitamos se nos reconozca, según los testimonios de las escrituras públicas que en copias certificadas adjuntamos a la presente solicitud como _Anexo 2-F)_, y señalando como domicilio para oír y recibir toda clase de notificaciones, documentos y valores en la calle de Río Rhin número 22, Despacho 303, colonia y delegación Cuauhtémoc, Código Postal 06500, en esta Ciudad de México, Distrito Federal, y autorizando en términos del tercer párrafo del artículo 1069 del Código de Comercio de aplicación supletoria a la Ley de Concursos Mercantiles, y en general para realizar cualquier acto tendiente a la defensa de los derechos de la institución de crédito acreedora y sobre todo para la aprobación del convenio concursal propuesto, indistintamente a los licenciados en derecho LUIS RISCHIA VELÁZQUEZ, con cédula profesional número 3369644, FRANCISCO

MARTÍNEZ MÁRQUEZ, con cédula profesional número 4841715, JUAN CARLOS MALDONADO PATIÑO, con cédula profesional número 6314553, JORGE LUIS DORANTES LIRA, con cédula profesional número 3230465, y autorizando sólo para los efectos de oír y recibir todo tipo de notificaciones, documentos y valores a los licenciados JUAN CARLOS GONZÁLEZ MAGALLANES, RAFAEL ALEJANDRO URUSQUIETA RESÉNDIZ, SUSANA MAYWARINA URUSQUIETA LEYVA y GERARDO ISRAEL MORFÍN SÁNCHEZ.

G) **JOSÉ TRINIDAD HERNÁNDEZ MENDOZA**, Licenciado en Derecho con cédula profesional número 1870933 expedida por la Dirección General de Profesiones de la Secretaría de Educación Pública, en representación de **IXE SOLUCIONES, S.A. DE C.V., SOCIEDAD FINANCIERA DE OBJETO MÚLTIPLE, ENTIDAD REGULADA, IXE GRUPO FINANCIERO**, personalidad que acredito y solicito me sea reconocida en mérito del instrumento notarial que adjunto se exhibe como **Anexo 2-G)**, señalando como domicilio para oír y recibir notificaciones el ubicado en Paseo de la Reforma N° 505, piso 45, Colonia Cuauhtémoc, México, Distrito Federal, C.P. 06500, autorizando en términos amplios del artículo 1069 del Código de Comercio, a los señores licenciados Martín Ollé Casals, Jorge Chávez Flores, Lynda Vanessa Castillo Madrid y José Humberto Estavané Dager, con cédulas profesionales números 4016276, 64659-5, 3206369 y 3808114, expedidas por la Dirección General de Profesiones de la Secretaría de Educación Pública, así como a Erika Pintos Gutiérrez, Gabriela Jimeno Bautista, Marianna Melgoza García, Katya Ivonne Prado García, Jessica Janet Morales Casas, Dafne Suárez Valadez, Oscar Tena Castro y Roberto Ortiz Mina indistintamente.

H) **FERNANDO MARTINEZ DE VELASCO MOLINA**, promoviendo en mi carácter de apoderado de **HSBC MEXICO, S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO HSBC** (en adelante para rápida referencia será mencionado solo como HSBC), personalidad que acredito en los extremos del testimonio notarial que acompaño a este escrito como **Anexo 2-H)**; señalando como domicilio para oir y recibir notificaciones, el ubicado en la avenida Santa Fé número 481 piso 6, de la colonia Cruz Manca Santa Fé, C.P. 05349 de esta ciudad; autorizando para ir y recibir notificaciones, así como para recoger toda clase de documentos a los Licenciados JUAN JESÚS MEZA ROMÁN, JOSÉ RAMOS BARRAGÁN, GONZALO GARCIA VELASCO, FERNANDO GARCIA DE LUCA, CLAUDIA IVETTE PÉREZ DIAZ, PATRICIA PEREZ ULLOA, MARIA ANGELES GARCIA NARANJO y autorizando para oír y recibir notificaciones a los estudiantes de Derecho EDUARDO ZULOAGA MAYTORENA, JOSE ANDRES RIVAS RODRIGUEZ y CHRISTIAN AMABILE COMELLAS.

I) y J) **ORLANDO JOSÉ LOERA HERNÁNDEZ**, promoviendo en mi calidad de apoderado de las sociedades denominadas **MERRILL LYNCH CAPITAL MARKETS,**

**A.G**. y **MERRILL LYNCH CAPITAL SERVICES, INC.** personalidad que acredito en términos de los instrumentos notariales que corren agregados al presente como **Anexos 2-I) y 2-J)**, señalando como domicilio para oír y recibir toda clase de notificaciones, aún las de carácter personal, el ubicado en la calle de Montes Urales número 505, Colonia Lomas de Chapultepec, Delegación Miguel Hidalgo, Código Postal 11000, en la Ciudad de México, Distrito Federal, y autorizando en términos del párrafo tercero del artículo 1069 del Código de Comercio, a los licenciados en derecho Fernando María de Salvidea de Miguel (cédula profesional número 1855570), Carlos Malpica Hernández (cédula profesional número 2258052), Rodrigo Buj García (cédula profesional número 4494360), María del Rocío González Alcántara Lammoglia (cédula profesional número 3682958), Luis Ernesto Peón Barriga (cédula profesional número 4354400), Rolando Zárate Guzmán (cédula profesional número 5712956) y José Manuel Guillemot Cesari (cédula profesional número 1833842), a quienes desde éste momento faculto ampliamente para promover conjunta o separadamente en los términos que se mencionan en el precepto legal invocado y en general, para ejercer cualquier acto que resulte ser necesario para la defensa de los derechos de mi poderdante, asimismo autorizo a los pasantes en Derecho Fernanda Robleda Martínez, Federico Martens Alva, Zaida Toquero Reyes y Patricio Rivas San Román, indistintamente para oír y recibir notificaciones, tomar apuntes, tomar fotografías, solicitar copias, recoger documentos y valores, e imponerse de los autos.

K) **JAIME RENÉ GUERRA GONZÁLEZ**, Licenciado en Derecho con cédula profesional número 239138 expedida a mi favor por la Dirección General de Profesiones de la Secretaría de Educación Pública y **JESÚS ÁNGEL GUERRA MÉNDEZ**, Licenciado en Derecho con cédula profesional número 3659314 expedida a mi favor por la Dirección General de Profesiones de la Secretaría de Educación Pública, en representación de **J. ARON & COMPANY**, personalidad que solicito nos sea reconocida en términos del testimonio notarial que adjunto se exhibe como **Anexo 2-K)**, señalando como domicilio para oír y recibir notificaciones el ubicado en la calle de Santa Margarita número 232, Colonia del Valle, Delegación Benito Juárez, Código Postal 03100, en esta Ciudad de México, Distrito Federal y autorizando para los mismos efectos, para recoger toda clase de documentos y valores, así como para actuar con la amplitud de facultades a que se refiere el tercer párrafo del artículo 1069 del Código de Comercio, a los señores Licenciados en Derecho Jaime René Guerra González con cédula profesional número 239138, Eduardo M. Galdós Muñoz con cédula profesional 1129883, Jaime Corenstein Gitlin con cédula profesional 1367755, Abel Flores Lugo con cédula profesional número 1482365, Jesús Armando Treviño Moyeda con cédula profesional número 924965, Alfonso Peniche García con cédula profesional número 2138562, José María Morfín Castillejos con cédula profesional número 2369017, Ernesto Luis Rodríguez León con cédula profesional número 2619713, Ricardo Silverbauer Carvallo con cédula profesional número 4048491, Román Salazar Castillo con cédula profesional número 3721588, Gabriel Aguilera

Romero con cédula profesional número 3868519, Patricio Fabián Hidalgo Estrada con cédula profesional número 3417914, Roberto Vega Treviño con cédula profesional número 3420891, Raúl García Herrera con cédula profesional número 4682030, Sergio Cabañas Mier con cédula profesional número 4079561, Juan de Garay Alfaroli con cédula profesional número 5742170, Rogelio Héctor Palacios Beltrán con cédula profesional número 3813471, Octavio Ochoa Huerta con cédula profesional número 4048987, Rodrigo Medina de Velasco con cédula profesional número 5544153, Sirse María Garza Cavazos con cédula profesional número 2710261, Armando Preciado Orozco con cédula profesional número 4418855, Eloy Vázquez Castilla con cédula profesional número 3550326, Gonzalo Campos Pizarro con cédula profesional número 5543566, Iris María Guajardo Guerra con cédula profesional número 5779732, Oscar Alejandro De La Fuente Manzano con cédula profesional número 4882040, Adrián Amador Salas con cédula profesional número 5040761, Gabriel Iván Sarabia Zúñiga con cédula profesional número 5040192, Marco Enrique González Medrano con cédula profesional número 5789056, Abraham Mizael Comparan Núñez con cédula profesional número 6113873 y Carlos Gutiérrez Topete Forzante con cédula profesional número 6329680, así como a los pasantes en Derecho Salvador García Ortega, Eloy Monroy León, René Salvador Renaud Moreno, Laura Alejandra González Santa Cruz, Juan Carlos Heredia Lañas, Marco Antonio Aguilar Portillo, Elías Mendoza Murguía, Víctor Erick Menchaca Hidalgo, Allan Galileo Olmedo Villegas, Carlos Alberto García Mora, Ramsés Sánchez Trinidad, Alejandro Luna Castañeda, Silvia María Del Carmen Salas Cariño, Sebastián Aragón Cuahonte, Fernanda Sánchez Hernández, Arianna de la Torre Bazúa y Carlos Javier Arreola Castro, indistintamente.

L) **FERNANDO BORJA MÚJICA**, en mi carácter de apoderado general para pleitos y cobranzas, actos de administración y de dominio de **BANCO NACIONAL DE MÉXICO, SOCIEDAD ANÓNIMA, INTEGRANTE DEL GRUPO FINANCIERO BANAMEX**, personalidad que solicito me sea reconocida en términos del testimonio de la escrituras pública número 50,830, de fecha diecinueve de enero de dos mil cuatro, otorgada ante la fe del señor Licenciado Roberto Núñez y Bandera, Notario Público número 1 del Distrito Federal, instrumento notarial que adjunto se exhibe como **Anexo 2-L),** señalando como domicilio para oír y recibir toda clase de notificaciones el ubicado en elPiso 20 del edificio "Arcos Bosques Corporativo" ubicado en Paseo de los Tamarindos número 400-A, Colonia Bosques de las Lomas, Delegación Cuajimalpa, Código Postal 05120, en esta Ciudad de México, Distrito Federal,autorizando para oír notificaciones en nuestro nombre con todas las facultades que establece la primera parte del tercer párrafo del artículo 1069 del Código de Comercio, indistintamente, a los señores Licenciados Mario Roberto Martínez Guerrero, con cédula profesional número 105554, Ernesto Fernando Algaba Berlanga, con cédula profesional número 290889, Jorge de Haro González, con cédula profesional número 291242, Javier Curiel Obscura, con cédula profesional número 1394335, Daniel Ortega González, con cédula profesional número 2213730, Javier Altamirano Hernández, con cédula profesional

número2958507, Giselle Garduño Altamirano, con cédula profesional número4049774, Ricardo Escalante Garcíadiego, con cédula profesional número4097254, Ernesto Palacios Juárez, con cédula profesional número4522181, María Eugenia López Vallejo Castro, con cédula profesional número4897977, Diego Gutiérrez Martínez-Parente, con cédula profesional número5089874, Alejandro Legaspi Lanz, con cédula profesional número5649087, Tania Divana González Durán, con cédula profesional número4169662, Jorge Rodrigo Farell Kambourian, con cédula profesional número6107192, Ricardo García Cordero Sasía, con cédula profesional número5295709, Francisco Javier Sánchez Saldaña Cardoso, con cédula profesional número3276312, Bernardo Basaldúa Ochoa, con cédula profesional número6257118 y Gerardo Quintana Pineda, con cédula profesional número6000584, cédulas que se encuentran registradas ante el Sistema Computarizado para el Registro Único de Profesionales del Derecho ante los Tribunales de Circuito y Juzgados de Distrito del Consejo de la Judicatura Federal, con los números 51819, 85425, 26823, 85432, 27375, 982, 54358, 4051, 65634, 103548, 73844, 89382, 86018, 79261, 53482, 101250 y 104024, respectivamente, y solo para oír y recibir notificaciones, recibir documentos y valores e imponerse de los autos a cualquiera de los señoresTanya Aguirre de la Torre, Pedro Trueba Gutiérrez, Alberto García Cárdenas, Guillermo Castillo Guzmán, Mauricio Mendoza Cuenca, Santiago Orvañanos Senties, Ricardo Calvillo Ortiz, Santiago Javier Núñez Chaim, Francisco Javier Nuño Calderón, José Fernando Quezada Treviño y Manuel Suarez Ortiz.

M) **FERNANDO BORJA MÚJICA, ROBERTO GLENN CÁRDENAS y JORGE DE HARO GONZÁLEZ**, en nuestro carácter de apoderados de **CITIBANK, N.A.**, personalidad que solicitamos nos sea reconocida en términos de los testimonios de las escrituras públicas números 59,204, de fecha veintinueve de septiembre de dos mil ocho, otorgada ante la fe del señor Licenciado Roberto Núñez y Bandera, Notario Público número 1 del Distrito Federal, y, 19,802, de fecha siete de junio de mil novecientos setenta y seis, otorgada ante la fe del señor Licenciado Ignacio Soto Borja, Notario Público número 129 del Distrito Federal, instrumentos notariales que adjunto se exhiben como **Anexo 2-M),** señalando como domicilio para oír y recibir toda clase de notificaciones el ubicado en el Piso 20 del edificio "Arcos Bosques Corporativo" ubicado en Paseo de los Tamarindos número 400-A, Colonia Bosques de las Lomas, Delegación Cuajimalpa, Código Postal 05120, en esta Ciudad de México, Distrito Federal,autorizando para oír notificaciones en nuestro nombre con todas las facultades que establece la primera parte del tercer párrafo del artículo 1069 del Código de Comercio, indistintamente, a los señores Licenciados Mario Roberto Martínez Guerrero, con cédula profesional número 105554, Ernesto Fernando Algaba Berlanga, con cédula profesional número 290889, Jorge de Haro González, con cédula profesional número 291242, Javier Curiel Obscura, con cédula profesional número 1394335, Daniel Ortega González, con cédula profesional número 2213730, Javier Altamirano Hernández, con cédula profesional número2958507, Giselle Garduño Altamirano, con cédula profesional número4049774,

Ricardo Escalante Garcíadiego, con cédula profesional número4097254, Ernesto Palacios Juárez, con cédula profesional número4522181, María Eugenia López Vallejo Castro, con cédula profesional número4897977, Diego Gutiérrez Martínez-Parente, con cédula profesional número5089874, Alejandro Legaspi Lanz, con cédula profesional número5649087, Tania Divana González Durán, con cédula profesional número4169662, Jorge Rodrigo Farell Kambourian, con cédula profesional número6107192, Ricardo García Cordero Sasía, con cédula profesional número5295709, Francisco Javier Sánchez Saldaña Cardoso, con cédula profesional número3276312, Bernardo Basaldúa Ochoa, con cédula profesional número6257118 y Gerardo Quintana Pineda, con cédula profesional número6000584, cédulas que se encuentran registradas ante el Sistema Computarizado para el Registro Único de Profesionales del Derecho ante los Tribunales de Circuito y Juzgados de Distrito del Consejo de la Judicatura Federal, con los números 51819, 85425, 26823, 85432, 27375, 982, 54358, 4051, 65634, 103548, 73844, 89382, 86018, 79261, 53482, 101250 y 104024, respectivamente, y solo para oír y recibir notificaciones, recibir documentos y valores e imponerse de los autos a cualquiera de los señoresTanya Aguirre de la Torre, Pedro Trueba Gutiérrez, Alberto García Cárdenas, Guillermo Castillo Guzmán, Mauricio Mendoza Cuenca, Santiago Orvañanos Senties, Ricardo Calvillo Ortiz, Santiago Javier Núñez Chaim, Francisco Javier Nuño Calderón, José Fernando Quezada Treviño y Manuel Suarez Ortiz.

N) **CAROLINA MACHADO DUFAU** licenciada en Derecho con cédula profesional número, 2135137 expedida por la Dirección General de Profesiones de la Secretaría de Educación Pública, en representación de **JPMORGAN CHASE BANK, N.A.** personalidad que acredito y pido me sea reconocida en términos del instrumento notarial que se exhibe adjunto al presente escrito como **Anexo 2-N)**, señalando como domicilio para recibir notificaciones la casa marcada con el número cincuenta y cinco, de la calle de Capuchinas, en la Colonia San José Insurgentes, código postal 03900, México, Distrito Federal, autorizando en términos del tercer párrafo del artículo 1069 del Código de Comercio de aplicación supletoria a la Ley de Concursos Mercantiles, a nuestros apoderados y abogados patronos licenciados; Javier Quijano Baz, Francisco Xavier Cortina Cortina, Alan Gerardo de la Torre Lobera, Javier Quijano Decanini, Enrique Ballester Izaguirre, y Fernando de Ovando Gómez Morín, titulares de la Cédulas Profesionales expedidas por la Dirección General de Profesiones de la Secretaría de Educación Pública números; (C.P. 163353), (C.P. 1466302), (C.P. 1921879), (C.P. 2465889), (C.P. 2730750) y (C.P. 5646160), respectivamente, a quienes solicito se les reconozca el doble carácter de apoderados y abogados patronos con que actuarán en el presente juicio. Autorizo asimismo para oír y recibir notificaciones, tomar apuntes e imponerse de los autos del expediente sacar fotografías, obtener copias y recibir documentos en términos del penúltimo párrafo del precepto legal antes referido a los señores; Miguel Ángel Bisogno Carreón, Ana Laura Aguilar Vélez, Miranda Carrillo Quijano, Hayde Jennyfer Rodarte Berbera, Pablo

González de Cossío Higuera, Alejandro Guillermo Carranza Vera, Francisco Javier de la Torre Jiménez, Patricio Ogarrio Healy y José Bernardo Garza Galván, indistintamente.

Todos, ante Usted, con el debido respeto, comparecemos y exponemos:

**SOLICITUD DE CONCURSO MERCANTIL CON PLAN DE REESTRUCTURA PREVIO**

Con fundamento en lo dispuesto por los artículos 1, 2, 3, 7, 8, 9, 10, 11, 15, 17, 20, 21, 22, 24, 25, 26, 37, 339, 340, 341, 342 y demás relativos y aplicables de la Ley de Concursos Mercantiles, tanto la Comerciante como los titulares de al menos el 85% (ochenta y cinco por ciento) del total de sus adeudos, venimos a solicitar se declare en Concurso Mercantil a la sociedad denominada **Controladora Comercial Mexicana, S.A.B. de C.V.**, dado que se encuentra en incumplimiento generalizado en el pago de sus obligaciones y, de manera particular, ubicada en el supuesto del inciso b), fracción III, del artículo 339 de la Ley de Concursos Mercantiles en relación con las fracciones I y II del artículo 10 y II del artículo 11 de la propia Ley de Concursos Mercantiles.

En términos de lo dispuesto por el artículo 339, fracción II, segundo párrafo, de la Ley de Concursos Mercantiles, bajo protesta de decir verdad la Comerciante declara que los acreedores que firman la presente solicitud son titulares de más del 40% (cuarenta por ciento) del total de los pasivos de la Comerciante, ya que ascienden al menos al 85% (ochenta y cinco por ciento) de dichos pasivos. Asimismo, la Comerciante reconoce que los acreedores que suscriben la presente solicitud de concurso mercantil con plan de reestructura previo asumen la responsabilidad que corresponde respecto de la suscripción del plan de reestructura previo pero no asumen responsabilidad alguna en relación con los hechos y declaraciones realizados por la Comerciante.

**ACTUALIZACIÓN DE LOS SUPUESTOS DE LOS ARTÍCULOS 10, 11 Y 339 DE LA LEY DE CONCURSOS MERCANTILES**

Para los efectos de la fracción III, inciso b), del artículo 339 de la Ley de Concursos Mercantiles, **Controladora Comercial Mexicana, S.A.B. de C.V.** manifiesta **bajo protesta de decir verdad** que se encuentra dentro de los supuestos de los artículos 10, 11 y 339 de la mencionada Ley de Concursos Mercantiles en virtud de que:

I. Es inminente que en treinta días estarán vencidas más del treinta y cinco por ciento de todas las obligaciones a cargo del Comerciante a esta fecha. Para efectos de acreditar lo anterior, se adjunta como **Anexo 3)** a esta solicitud, la lista de la totalidad de los acreedores de la Comerciante, con indicación del monto de que es titular cada uno de ellos y la fecha de vencimiento de sus créditos.

II. **Controladora Comercial Mexicana, S.A.B. de C.V.** no tiene activos de los enunciados en la fracción II del artículo 10 de la Ley de Concursos Mercantiles, para hacer frente a por lo menos el ochenta por ciento de sus obligaciones vencidas a esta fecha, tal y como se acredita con el inventario de activos y bienes de la Comerciante que se adjunta como **Anexo 4)** a esta solicitud y, además, porque según se indica en el **Anexo 4-A)**, existen diversos embargos trabados sobre las acciones de las empresas que son sus subsidiarias.

III. **Controladora Comercial Mexicana, S.A.B. de C.V.** ha incumplido en el pago de sus obligaciones con dos o más acreedores desde el año 2008.

## EL PLAN DE REESTRUCTURA PREVIO

Producto de negociaciones con sus diversos acreedores, **Controladora Comercial Mexicana S.A.B de C.V.** ha llegado a un acuerdo con la mayoría de ellos para reestructurar sus pasivos. Los acreedores con los cuales ha alcanzado un acuerdo previo son titulares de más del 40% (cuarenta por ciento) del total de sus pasivos, ya que ascienden al menos al 85% (ochenta y cinco por ciento) de dichos pasivos.

Como consecuencia, **Controladora Comercial Mexicana, S.A.B de C.V.** y dichos acreedores que representan al menos el 85% (ochenta y cinco por ciento) de sus pasivos, han suscrito un plan de reestructura de la totalidad de los pasivos de la Comerciante, mismo que se acompaña como **Anexo 5)** a esta solicitud, generando derechos y obligaciones para las partes.

Este plan de reestructura tiene el carácter de plan con reestructura previo para los efectos del Título Décimo Cuarto de la Ley de Concursos Mercantiles.

Es intención tanto del Comerciante como de los acreedores que han suscrito el plan de reestructura previo, los cuales suscriben también esta solicitud, que una vez que se dicte la Sentencia de Reconocimiento, Graduación y Prelación de Créditos, el conciliador designado en el concurso mercantil, en términos del artículo 161 de la Ley

de Concursos Mercantiles, presente a los Acreedores Reconocidos una propuesta de convenio que incorpore, con las adecuaciones formales necesarias, exclusivamente la totalidad de los términos y condiciones previstos en el plan de reestructura previo que se acompaña como **Anexo 5)** a este escrito, para su firma y eventualmente aprobación de su Señoría.

En cumplimiento a lo dispuesto por el artículo 339 de la Ley de Concursos Mercantiles, en relación con el artículo 20 del mismo ordenamiento legal, a continuación se señala:

## I. DENOMINACIÓN, DOMICILIOS SOCIALES Y DE LAS OFICINAS DEL COMERCIANTE.

**Controladora Comercial Mexicana, S.A.B. de C.V.** tiene su domicilio social en la Ciudad de México, Distrito Federal, según consta en la escritura pública número 101,252, de fecha 7 de abril de 2006, pasada ante la fe del licenciado Enrique Almanza Pedraza, Notario Público número 198 del Distrito Federal, inscrita en el Registro Público de la Propiedad y del Comercio del Distrito Federal. Dicho documento se exhibe como **Anexo 6).**

La administración principal de la empresa tiene su oficina en Avenida Revolución número 780, Módulo 2, Colonia San Juan, Código Postal 03730, en México, Distrito Federal.

**Controladora Comercial Mexicana, S.A.B. de C.V.** tiene diversas oficinas, establecimientos, almacenes y bodegas así como diversas subsidiarias mismas que se listan con su domicilio dentro del Inventario que conforma el **Anexo 4)** de este escrito.

## II. ESTADOS FINANCIEROS.

En términos de lo dispuesto por la fracción I del artículo 20 de la Ley de Concursos Mercantiles, acompañamos a este escrito los estados financieros auditados individuales (o no consolidados) de **Controladora Comercial Mexicana, S.A.B. de C.V.**, por los años 2007, 2008 y 2009 identificados como **Anexos 7), 8) y 9)**, respectivamente. Por considerarlo relevante para los efectos de la determinación de los pasivos de la Comerciante, se acompañan también los Estados Financieros parciales (no auditados) individuales de la sociedad al 6 de julio de 2010, como **Anexo 10)**, que aún no están auditados porque no ha terminado el ejercicio fiscal de 2010 y no es obligación tenerlos auditados a la fecha de esta solicitud.

### III. MEMORIA SOBRE LAS CAUSAS DEL INCUMPLIMIENTO DE LAS OBLIGACIONES DEL COMERCIANTE.

1. El día  28 de enero de 1944, ANTONINO GONZÁLEZ E HIJO, S. EN C. se constituyó al amparo de las leyes de los Estados Unidos Mexicanos  como una sociedad en comandita simple.

2. El día 1° de julio de 1957, ANTONINO GONZÁLEZ E HIJO, S. EN C. cambió su denominación social por la de COMERCIAL MEXICANA, S.A.

3. El día 5 de marzo de 1982, COMERCIAL MEXICANA, S.A. cambió su estructura de capital y su denominación social por la de COMERCIAL MEXICANA, S.A. DE C.V.

4. El día 9 de diciembre de 1988, COMERCIAL MEXICANA, S.A. DE C.V. cambió su denominación social por la de CONTROLADORA COMERCIAL MEXICANA, S.A. DE C.V.

5. El día 7 de abril de 2006, CONTROLADORA COMERCIAL MEXICANA, S.A. DE C.V. cambió su denominación social por la de CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. y se reformaron sus estatutos sociales, a fin de hacerlos acordes a las modificaciones realizadas a la Ley del Mercado de Valores. El acta de las asambleas celebradas en la fecha mencionada consta en la escritura pública número 101,252, de fecha 7 de abril de 2006, y se acompaña como **Anexo 6)** a este escrito.

6. En cumplimiento a su objeto social, CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. funciona como empresa controladora del capital social de diversas empresas dedicadas al ramo de tiendas de autoservicio y restaurantes.

7. Por lo tanto, las principales actividades de CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. son: (i) apoyar con capital de inversión a las diversas empresas que controla; (ii) fungir como tesorería de todas sus subsidiarias, recibiendo excedentes de efectivo y distribuyendo los recursos obtenidos conforme a las necesidades y estrategia del grupo; (iii)  arrendamiento de bienes y activos intangibles; y (iv) por la fusión que surtió efectos el 31 de diciembre de 2009, también desempeña la actividad que antes realizaba Mercándia, S.A. de C.V., sociedad que se fusionó en CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V.

8. Por su función de sociedad controladora de acciones, CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. no tiene empleados.

9. Desde el año de mil novecientos noventa y uno, CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. y sus subsidiaras empezaron a ejecutar diversos programas de expansión, indispensables para mantener la competitividad dentro del sector de las tiendas de autoservicio.

10. Desde el año de 1991, a la fecha, la mayor parte del flujo generado por CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. ha sido destinado a invertir en la expansión de todo el grupo.

11. No obstante lo anterior, el flujo generado por CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. no fue suficiente para poder solventar todas las inversiones necesarias a fin de lograr la expansión del grupo conforme a las necesidades requeridas para hacer frente a los competidores.

12. A fin de lograr mantener los flujos necesarios para que la expansión del grupo fuera acorde con las necesidades de crecimiento suficientes para hacer frente a la competencia, se requirió acudir al financiamiento, del cual una importante porción se concertó en moneda extranjera.

13. Las subsidiarias del grupo que operan el negocio de autoservicio adquieren obligaciones de pago a diversos proveedores en moneda extranjera, principalmente en dólares, moneda de curso legal de los Estados Unidos de América, específicamente para la compra de mercancía de importación. Igualmente, estas subsidiarias adquieren compromisos en moneda extranjera para sufragar sus gastos de expansión.

14. De esta forma y al fungir CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. como tesorería de sus subsidiarias, la Comerciante está expuesta a los riesgos asociados con la fluctuación en el tipo de cambio, puesto que, por sus ventas en el territorio nacional, la sociedad genera únicamente ingresos en pesos, moneda nacional.

15. Para minimizar estos riesgos, CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. celebró ciertos contratos para llevar a cabo diversas operaciones financieras derivadas de cobertura, es decir, operaciones por las que obtuvo una cobertura frente a las fluctuaciones en el tipo de cambio del peso frente al dólar o, dicho en términos simples, aseguró un tipo de cambio en sus operaciones.

16. Desde el año de 2006, el peso se apreció frente al dólar, es decir, tuvo mayor fortaleza y la fluctuación en el tipo de cambio fue poca. Esto motivó que se modificaran los términos de las operaciones financieras de derivados para ajustarlas a un peso más "fuerte".

17. A finales de septiembre y principios de octubre de 2008, el mundo se vio sacudido por los colapsos de diversas instituciones financieras, lo que provocó una crisis financiera global. La moneda mexicana quedó expuesta a la volatilidad e inestabilidad de los mercados, lo que condujo a una fuerte presión sobre la moneda mexicana y una consiguiente devaluación.

18. Como consecuencia de esta devaluación de la moneda mexicana, CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. no pudo cubrir la totalidad de las garantías requeridas y/o no realizó los pagos correspondientes conforme a los contratos celebrados para documentar dichas operaciones financieras de derivados y, por esta razón, se dieron por terminadas anticipadamente estas operaciones y los contratos que documentaban las mismas.

19. Producto de esta terminación anticipada de las operaciones financieras de derivados y de los contratos que documentaban las mismas, CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. y las instituciones financieras con las que celebró estos contratos entraron en una controversia respecto a la validez legal y monto de estas operaciones, lo que dio lugar a que cinco de estas instituciones Barclays Bank PLC, J. Aron & Company (causahabiente de Goldman Sachs Paris Inc. et Cie), JPMorgan Chase Bank, N.A., Merrill Lynch Capital Markets AG y Merrill Lynch Capital Services, Inc., presentaran procedimientos judiciales en Nueva York en contra de la Comerciante. Una relación de estos procedimientos se acompaña como **Anexo 11)** a esta solicitud.

20. Como consecuencia, CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. incurrió en incumplimiento de pago de otros créditos con bancos mexicanos, así como en incumplimiento de pago en las emisiones de instrumentos de deuda conocidos como "bonos", que se colocaron tanto en México como en los Estados Unidos de América, y en las emisiones de certificados bursátiles que se colocaron en Mexico. La mayoría de las instituciones de banca comercial mexicanas y los tenedores de los certificados bursátiles también iniciaron procedimientos judiciales en contra de la Comerciante y llevaron a cabo varios embargos sobre la sociedad y sus bienes.

Una relación de estos procedimientos se acompaña como **Anexo 11)** a esta solicitud.

21. Desde el mismo octubre de 2008, CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. y sus diversos acreedores han sostenido pláticas para lograr un convenio que permita la reestructura de los pasivos de la Comerciante.

22. Estas negociaciones produjeron el acuerdo plasmado en el plan de reestructura previo que se acompaña a esta solicitud y que cuenta con la aprobación de acreedores que son titulares de más del 40% (cuarenta por ciento) de los pasivos del Comerciante, ya que los acreedores que suscriben la presente, así como el plan de reestructura previo, son titulares al menos del 85% (ochenta y cinco por ciento) de los pasivos de la Comerciante, por lo que queda plenamente satisfecho el requisito a que se refiere la fracción II del artículo 339 de la Ley de Concursos Mercantiles.

23. Por lo antes expuesto es que ahora se presenta, con fundamento en el artículo 339 y demás relativos y aplicables de la Ley de Concursos Mercantiles, la presente solicitud de declaración de concurso mercantil con plan de reestructura previo, que refleja el acuerdo alcanzado entre la Comerciante y acreedores que son titulares de al menos del 85% (ochenta y cinco por ciento) de sus pasivos, mismo que, previo los trámites de ley, se solicita sea aprobado por su Señoría y elevado al carácter de convenio concursal, toda vez que cumple con los lineamientos de la ley concursal.

## IV. RELACIÓN DE ACREEDORES.

En cumplimiento a la fracción III del artículo 20 de la Ley de Concursos Mercantiles, se adjunta al presente ocurso como **Anexo 3)**, la lista de acreedores de la solicitante, con indicación de nombres, domicilios, fecha de vencimiento de los créditos de cada uno, características particulares y grado en que se estima se deben reconocer, y en su caso las garantías de cada uno para garantizar las deudas correspondientes, haciéndose notar que todos los pasivos de la Comerciante corresponden a acreedores comunes, sin que existan créditos de superior grado y prelación.

## V. RELACIÓN DE DEUDORES.

En cumplimiento a la fracción III del artículo 20 de la Ley de Concursos Mercantiles, se adjunta como **Anexo 12)**, la lista de deudores de la solicitante, con indicación de nombres, domicilios, fecha de vencimiento, características particulares y garantías, en su caso.

## VI. INVENTARIO.

En cumplimiento a la fracción IV del artículo 20 de la Ley de Concursos Mercantiles, se exhibe como **Anexos 4) y 4-A)** el inventario que comprende todos los bienes del Comerciante, así como los embargos que los mismos han sufrido,

## VII. JUICIOS.

La Comerciante es parte de diversos juicios, mismos que se señalan en la relación que se acompaña como **Anexo 11).**

## VIII. GARANTÍA CONTEMPLADA EN EL ARTÍCULO 20 DE LA LEY DE CONCURSOS MERCANTILES.

De conformidad con lo dispuesto por el artículo 341 de la Ley de Concursos Mercantiles, al presentarse una solicitud de Concurso Mercantil con plan de reestructura previo, no es necesario que se lleve a cabo la etapa de visita contemplada en ley, por lo que, en consecuencia, no es necesario otorgar la garantía contemplada en la fracción VI del artículo 20 de la Ley de Concursos Mercantiles.

## D E R E C H O

Fundan la presente solicitud de Concurso Mercantil los artículos 1, 2, 3, 7, 8, 9, 10, 11, 15, 17, 20, 21, 22, 24, 25, 26, 29, 30, 31, 32, 33, 37, 339, 340, 341, 342 y demás relativos y aplicables de la Ley de Concursos Mercantiles.

Por lo expuesto;

**A USTED C. JUEZ**, atentamente solicito:

**PRIMERO:** Tenernos por presentados con la personalidad con la que cada uno de quienes suscribimos la presente solicitud nos ostentamos, misma que solicitamos sea reconocida en merito de los instrumentos notariales al efecto exhibidos, en nombre de **Controladora Comercial Mexicana, S.A.B. de C.V.** y de los acreedores referidos en el proemio de este escrito, respectivamente.

**SEGUNDO:** Tener por presentada la solicitud de declaración de Concurso Mercantil, conjuntamente con el Plan de Reestructura Previo signado por **Controladora Comercial Mexicana, S.A.B. de C.V.** y acreedores que son titulares de

al menos del 85% (ochenta y cinco por ciento) de los pasivos del Comerciante, cumpliendo con los requisitos aplicables que ordenan los artículos 20 y 339 de la Ley de Concursos Mercantiles.

**TERCERO:** Tener por presentada a la Comerciante, declarando bajo protesta de decir verdad, que se encuentra en incumplimiento generalizado en el pago de sus obligaciones y, de manera particular, ubicada en el supuesto del inciso b), fracción III, del artículo 339 en relación con los artículos 10 y 11 de la Ley de Concursos Mercantiles, y que los acreedores que suscriben esta solicitud y el plan de reestructura previo son titulares de más del 40% (cuarenta por ciento) del total de sus pasivos.

**CUARTO:** Ratificar que no es necesario otorgar la garantía prevista en el artículo 24 de la Ley de Concursos Mercantiles.

**QUINTO:** Por encontrarse ajustada a derecho, con fundamento en lo establecido por el artículo 341 de la Ley de Concursos Mercantiles, dictar sentencia que declare el Concurso Mercantil de **Controladora Comercial Mexicana, S.A.B. de C.V.** con Plan de Reestructura Previo.

**SEXTO:** Solicitar al Instituto Federal de Especialistas en Concursos Mercantiles la intervención que le corresponda en términos de la Ley de Concursos Mercantiles y, particularmente, la designación de Conciliador.

**SÉPTIMO:** En su oportunidad y previos los trámites de ley, decretar el Concurso Mercantil con plan de reestructura previo de la sociedad **Controladora Comercial Mexicana, S.A.B. de C.V.**, con los efectos legales correspondientes.

**PROTESTAMOS LO NECESARIO**

México, Distrito Federal a 6 de julio de 2010.

| **CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V.** |
| --- |
| |
| **FERNANDO DEL CASTILLO ELORZA** |

| **BARCLAYS BANK PLC** |
| --- |
| |
| **JORGE LUIS PEÓN SEGURA** |

**Monumental Life Insurance Company**

**Transamerica Financial Life Insurance Company**

**Transamerica Life Insurance Company**

**Siefore Bancomer Protege, S.A. de C.V.**; **Siefore Bancomer Real, S.A. de C.V.**; **Siefore Bancomer Progresa, S.A. de C.V.**; **Siefore Bancomer Adelante, S.A. de C.V.**; y **Siefore Bancomer Emprende, S.A. de C.V.**

**Siefore Invercap, S.A. de C.V.**; **Siefore Invercap II, S.A. de C.V.**; **Siefore Invercap III, S.A. de C.V.**; **Siefore Invercap IV, S.A. de C.V.**; y **Siefore Invercap V, S.A. de C.V.**

**Chiletech, S.A., Administradora de Fondos de Inversión como Administradora de Chiletec Fondo de Inversión**

**Moneda Absolute Return Fund Limited**

**Moneda Latin American Corporate Debt**

**Moneda, S.A., Administradora de Fondos de Inversión como Administradora de los Fondos de Inversión, Moneda Deuda Latinoamericana Fondo de Inversión, Moneda Retorno Absoluto Fondo de Inversión, Moneda Small Cap Latinoamérica Fondo de Inversión y Moneda Latinoamérica Deuda Local Fondo de Inversión**

**Ohio National Life Assurance Corporation**

**The Ohio National Life Insurance Company**

**Sun Life Reinsurance (Barbados) Limited**

**Sun Life Reinsurance (Ireland) Limited**

**Sun Life Assurance Company of Canada (U.S.)**

**Sun Life Assurance Company of Canada**

**Sun Life Hong Kong Limited**

**Sun Life Insurance & Annuity Company of New York**

**Sun Capital Investment Grade Bond Fund**

**Anthion Master Fund, LP**

**Teachers Insurance and Annuity Association of America**,

**HSBC B1 Siefore, S.A. de C.V., Grupo Financiero HSBC**; **HSBC B2 Siefore, S.A. de C.V., Grupo Financiero HSBC**; **HSBC B3 Siefore, S.A. de C.V., Grupo Financiero HSBC**; **HSBC B4 Siefore, S.A. de C.V., Grupo Financiero HSBC**; y **HSBC B5 Siefore, S.A. de C.V., Grupo Financiero HSBC**

**Fondo Sólida Banorte Generali Uno, S.A. de C.V., Siefore**; **Fondo Sólida Banorte Generali Dos, S.A. de C.V.**, Siefore; **Fondo Sólida Banorte Generali Tres, S.A. de C.V., Siefore**; **Fondo Sólida Banorte Generali Cuatro, S.A. de C.V., Siefore**; y **Fondo Sólida Banorte Generali Cinco, S.A. de C.V., Siefore**

**Larraín Vial S.A. Sociedad Administradora de Fondos (también denominada Larraín Vial SAF) como Administradora del Fondo de Inversión Larraín Vial Renta Fija Latinoamericana FI**

**Macquarie Bank Limited**

**Instituto Mexicano del Seguro Social**

**Copernico Latin America Strategic Fund**

**Copernico Special Situations Fund**

**Bice Vida Compañía de Seguros, S.A.**

**Barclays Capital, Inc.**

**JCAM Global Fund (Master) LP**

**Atlantic Security Bank**

**Pascale Lehmann Scassi-Buffa**

**Leon Lehmann Scassi-Buffa**

**María C. Haro**

**BANCARD INTERNATIONAL INVESTMENT INC**

**ALEJANDRO SAINZ ORANTES**

| BANCO SANTANDER (MÉXICO), S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SANTANDER, (antes BANCO SANTANDER, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SANTANDER) | |
|---|---|
| LIC. GABRIEL PÉREZ RÍOS AGUILAR | ACT. MARÍA FERNANDA RUÍZ PADILLA |

| BBVA BANCOMER, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BBVA BANCOMER |
|---|
| GERARDO MANUEL RAMÍREZ ORNELAS |

| BANCO MERCANTIL DEL NORTE, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BANORTE |
|---|
| ANGEL VARELA TORRES |

| SCOTIABANK INVERLAT, S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SCOTIABANK INVERLAT | |
|---|---|
| JESÚS MIGUEL MARÍN SÁNCHEZ | ALBERTO GERARDO FERNÁNDEZ LÓPEZ |

| IXE SOLUCIONES, S.A. DE C.V., SOCIEDAD FINANCIERA DE OBJETO MÚLTIPLE, ENTIDAD REGULADA, IXE GRUPO FINANCIERO |
|---|
| JOSÉ TRINIDAD HERNÁNDEZ MENDOZA |

| HSBC MEXICO, S.A. INSTITUCION DE BANCA MULTIPLE, GRUPO FINANCIERO HSBC |
|---|
| FERNANDO MARTINEZ DE VELASCO MOLINA |

| MERRILL LYNCH CAPITAL MARKETS, A.G. |
|---|
| ORLANDO JOSÉ LOERA HERNÁNDEZ |

| MERRILL LYNCH CAPITAL SERVICES, INC. |
|---|
| ORLANDO JOSÉ LOERA HERNÁNDEZ |

| J. ARON & COMPANY | |
|---|---|
| JAIME RENÉ GUERRA GONZÁLEZ | JESÚS ÁNGEL GUERRA MÉNDEZ |

| BANCO NACIONAL DE MÉXICO, SOCIEDAD ANÓNIMA, INTEGRANTE DEL GRUPO FINANCIERO BANAMEX |
|---|
| FERNANDO BORJA MÚJICA |

| CITIBANK, N.A., | |
|---|---|
| FERNANDO BORJA MÚJICA | ROBERTO GLENN CÁRDENAS |
| JORGE DE HARO GONZÁLEZ | |

| JPMORGAN CHASE BANK |
|---|
| CAROLINA MACHADO DUFAU |

# **EXHIBIT D**

**C. HONORABLE FEDERAL COURT OF CIVIL MATTERS OF THE FEDERAL DISTRICT.**

**FERNANDO DEL CASTILLO ELORZA**, representing **CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V.**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as **Exhibit 1)**, establishing legal domicile for the service of notice at Campos Elíseos 345, Piso 11, Colonia Chapultepec Polanco, Código Postal 11560, México, Distrito Federal, authorizing, in the broadest terms of Article 1069 of the Commercial Code, the attorneys CARLOS ARTURO OLVERA FERRER (Professional ID License No. 1620393), GABRIELA GUADALUPE MEZA DÍAZ DE LEÓN (Professional ID License No. 3720580), CARLOS RODRIGO MONTES FLORES (Professional ID License No. 3854674), ROBERTO FERNÁNDEZ DEL VALLE MITTENZWEY (Professional ID License No. 4096751), FAVIO CAMILO VÁZQUEZ LÓPEZ (Professional ID License No. 3999969), CECILIA FLORES RUEDA (Professional ID License No. 3298793), FERNANDO ESPINOSA ASCARRAGA (Professional ID License No. 5714541), ANA LAURA ELIZALDE LEÓN (Professional ID License No. 4455257), CARLOS RICARDO BREHM TINOCO (Professional ID License No. 5744702), JOSÉ GABRIEL MENDOZA GONZÁLEZ (Professional ID License No. 5782012), JOAQUÍN SOLÍS RIVERA, ARTURO GUTIÉRREZ ZAMORA, ARTURO SOSA ESCUDERO, ANA ELIZABETH FLORES CORTES and SERGIO SÁNCHEZ ALVIRDE and, attorneys ADRIANA PADILLA RIVAS, ÁNGELA DANIELA REYES GONZÁLEZ, FERNANDO ZAPATA FONT and VÍCTOR MANUEL GARCÍA ALCÁZAR, without distinction, for the sole purpose of hearing and being served notices as well as collecting all types of documents and securities and act in these proceedings.

AS WELL AS THE FOLLOWING CREDITORS:

A) **JORGE LUIS PEON SEGURA**, Attorney-at-Law with Professional ID License No. 5193402, issued by the Bureau of Professional Licenses of the Department of Public Education, representing **BARCLAYS BANK PLC**, who asks that his authority be recognized in accordance with the notarial instrument which is attached to this document as **Exhibit 2-A)**, establishing legal domicile for the service of all types of notices located at Paseo de la Reforma 265, Piso 10, Colonia Cuauhtémoc, Código Postal 06500, México, Distrito Federal, and authorizing him, in accordance with the provisions of Article 1069 of the Code of Commerce, supplementary to the Ley de Concursos Mercantiles, and to collect all types of documents and securities, to lodge

appeals, to offer and intervene in the presentation of documentary evidence, to argue in hearings, to request that judgment be handed down and in general to carry out any act in defense of the interests of the Creditors and for approval of the Creditors' Agreement proposed to José Víctor Rodríguez Barrera, Carlos Alberto Orendain García de León, Luis Alberto Bonilla Herrera, Rebeca López Rojas y Mauricio Caso de la Parra, with Professional ID License Nos. 2736673, 3910091, 5088653, 5174325 y 6113120, issued by the Bureau of Professional Licenses of the Department of Public Education, as well as to Pedro Patricio Torres Marco Arzani, Jorge Cesar Almazán Álvarez, Roberto Carlos Cantoral Ramos, Sergio Francisco Cedillo García, Adrián González Moret, Alejandro Guerra Rousse, Arturo Issac Aquino Hernández, Alberto Quintana Pineda y Mauricio José Pasquel Rochin, without distinction.

B) ALEJANDRO SAINZ ORANTES, representing:

(i) **Monumental Life Insurance Company**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-1**;

(ii) **Transamerica Financial Life Insurance Company**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-2**;

(iii) **Transamerica Life Insurance Company**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-3**;

(iv) **Siefore Bancomer Protege, S.A. de C.V.**; **Siefore Bancomer Real, S.A. de C.V.**; **Siefore Bancomer Progresa, S.A. de C.V.**; **Siefore Bancomer Adelante, S.A. de C.V.**; and **Siefore Bancomer Emprende, S.A. de C.V.**, request that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-4**;

(v) **Siefore Invercap, S.A. de C.V.**; **Siefore Invercap II, S.A. de C.V.**; **Siefore Invercap III, S.A. de C.V.**; **Siefore Invercap IV, S.A. de C.V.**; and **Siefore Invercap V, S.A. de C.V.**, request that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-5**;

(vi) **Chiletech, S.A., Administrator of Investment Funds as Administrator of Chiletec Fondo de Inversión**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-6**;

(vii) **Moneda Absolute Return Fund Limited**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-7**;

(viii) **Moneda Latin American Corporate Debt**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-8**;

(ix) **Moneda, S.A., Administrator of Investment Funds as Administrator of the Investment Funds, Moneda Deuda Latinoamericana Fondo de Inversión, Moneda Retorno Absoluto Fondo de Inversión, Moneda Small Cap Latinoamérica Fondo de Inversión and Moneda Latinoamérica Deuda Local Fondo de Inversión**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-9**;

(x) **Ohio National Life Assurance Corporation**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-10**;

(xi) **The Ohio National Life Insurance Company**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-11**;

(xii) **Sun Life Reinsurance (Barbados) Limited**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-12**;

(xiii) **Sun Life Reinsurance (Ireland) Limited**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-13**;

(xiv) **Sun Life Assurance Company of Canada (U.S.)**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-14**;

(xv) **Sun Life Assurance Company of Canada**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-15**;

(xvi) **Sun Life Hong Kong Limited**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-16**;

(xvii) **Sun Life Insurance & Annuity Company of New York**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-17**;

(xviii) **Sun Capital Investment Grade Bond Fund**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-18**;

(xix) **Anthion Master Fund, LP**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-19**;

(xx) **Teachers Insurance and Annuity Association of America**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-20**;

(xxi) **HSBC B1 Siefore, S.A. de C.V., HSBC Financial Group**; **HSBC B2 Siefore, S.A. de C.V., HSBC Financial Group**; **HSBC B3 Siefore, S.A. de C.V., HSBC Financial Group**; **HSBC B4 Siefore, S.A. de C.V., HSBC Financial Group;** and **HSBC B5 Siefore, S.A. de C.V., HSBC Financial Group**, request that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-21**;

(xxii) **Fondo Sólida Banorte Generali Uno, S.A. de C.V., Siefore**; **Fondo Sólida Banorte Generali Dos, S.A. de C.V., Siefore**; **Fondo Sólida Banorte Generali Tres, S.A. de C.V., Siefore**; **Fondo Sólida Banorte Generali Cuatro, S.A. de C.V., Siefore**; and **Fondo Sólida Banorte Generali Cinco, S.A. de C.V., Siefore**, request that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-22**;

(xxiii) **Larraín Vial S.A. Funds Management Company (also called Larraín Vial SAF) as Administrator of the Investment Fund Larraín Vial Renta Fija Latinoamericana FI**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-23**;

(xxiv) **Macquarie Bank Limited**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-24**;

(xxv) **Instituto Mexicano del Seguro Social**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-25**;

(xxvi) **Copernico Latin America Strategic Fund**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-26**;

(xxvii) **Copernico Special Situations Fund**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-27**;

(xxviii) **Bice Vida Compañía de Seguros, S.A.**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-28**;

(xxix) **Barclays Capital, Inc.**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-29**;

(xxx) **JCAM Global Fund (Master) LP**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-30**;

(xxxi) **Atlantic Security Bank**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-31**;

(xxxii) **Pascale Lehmann Scassi-Buffa**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-32**;

(xxxiii) **Leon Lehmann Scassi-Buffa**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-33**; and

(xxxiv) **María C. Haro**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-34**,

(xxxv) **BANCARD INTERNATIONAL INVESTMENT INC**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as Exhibit **2-B)-35**,

all respectively establishing legal domicile at Boulevard Manuel Avila Camacho 24, piso 6, colonia Lomas de Chapultepec, delegación Miguel Hidalgo, código postal 11000, Distrito Federal, México for the service of all types of notices and documents, authorizing according to the provisions of the third paragraph of Article 1069 of the Code of Commerce, jointly or individually, without distinction, the attorneys-at-law Luis Alfonso Cervantes Muñiz, with Professional ID License 1056989, Manuel Ruiz de Chávez Gutiérrez de Velasco, with Professional ID License 2794401, Alejandro Campillo Talavera, with Professional ID License 1356999, Hugo López Coll, with Professional ID License 4516293, Daniel Alejandro Díaz Alvarez, with Professional ID License 4048429, Juan Carlos Cajigas Lozano, with Professional ID License 4260507, Diana Elvira Guzmán García, with Professional ID License 6260346, and Hildebrando García Alvarez, with Professional ID License 6356157, and also attorneys Estefanía Sierra Ulibarri as well as Diego Seguí Trueba, Santiago Alessio Robles Seguí, Alejandro Díaz Steta, Roberto Benjamín Ibarra de Rueda, Marino Castillo Moreno and Rodrigo Guaida Azar, jointly or separately, without distinction, solely to hear and being served notices, receive documents and securities and to act in these proceedings signing documents where necessary,

C) **GABRIEL PÉREZ RÍOS AGUILAR**, Attorney-at-Law, with Professional ID License No. 1649997and **MARÍA FERNANDA RUÍZ PADILLA**, Clerk of the Court, with Professional ID License No. 2427950, issued by the Bureau of Professional Licenses of the Department of Public Education, respectively, representing **BANCO SANTANDER (MÉXICO), S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SANTANDER, (formerly BANCO SANTANDER, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SANTANDER),** whose authority we ask be recognized in accordance with the notarial instruments attached to this document as **Exhibit 2-C)**, establishing legal domicile at the first floor of Building Number Twenty-nine, calle de José Ibarrarán, Colonia San José Insurgentes, código postal 03900, México, Distrito Federal, for the service of notices, authorizing our attorneys Everardo A. Hegewisch Arrillaga, and Dr. Fernando Hegewisch Díaz Infante to hear them as well as to receive documents in accordance with the third paragraph of Article 1069 of the Code of Commerce, supplementary to the Ley de Concursos Mercantiles, as well as attorneys Ángel Armando Peña Santiago, Claudia Celina Vega López, Ricardo Aguirre Marín, Jacqueline Pérez Rentería, Silvia Elizabeth Vázquez Zamora, Abel Chávez Salinas y Paola Melodía Solís Pérez with Professional ID License Nos. 79583,

1290648, 1611753, 1974998, 3374475, 3577965, 4818142, 4898629, and 6000598, respectively, issued by the Bureau of Professional Licenses of the Department of Public Education and authorizing law assistants Elías Iván Loza Fortanel, Erick García Castañeda, Víctor Arellano Ramírez, Casilda Aguilar Castro y Andrés Bran Jasso, with professional authorization numbers 74160, 74051, 74493, 75004 and 75108, respectively, issued by the same Bureau of Professional Licenses, solely for intervening in hearings, hearing notices and receiving documents in accordance with the abovementioned legal precept, as well as María Teresa Mendoza Ramírez, María del Rosario Pérez Hernández, Alejandra Velásquez Tello, Esteban Díaz Reséndiz and Maetzín Ramírez Carlock, without distinction.

D) **GERARDO MANUEL RAMÍREZ ORNELAS**, attorney with Professional ID License 687988, registered in the Computerized System for the Registry of Law Professionals before the Circuit and District courts of the Federal Board of Judges, with the number 22307; representing **BBVA BANCOMER, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BBVA BANCOMER**, requests that his authority as such be recognized as evidenced by virtue of the notarial instrument which is attached as **Exhibit 2-D)**, establishing legal domicile at Andrés Bello 45, piso 12, Colonia Chapultepec Polanco, C.P. 11560, México, Distrito Federal for the service of all types of notices and documents, authorizing in accordance with the provisions of the third paragraph of Article 1069 of the Code of Commerce, jointly or individually, the attorneys Carlos David Villasante Santoyo, with professional ID License 2613630, registered in the Computerized System for the Registry of Law Professionals before the Circuit and District courts of the Federal Board of Judges, with the number 39172; Ángel Fabricio Escalante Sánchez, attorney with profession ID License 3635201, registered in the Computerized System for the Registry of Law Professionals before the Circuit and District courts of the Federal Board of Judges, with the number 50359; Jordi Oropeza Solórzano, with Professional ID License 4492260, registered in the Computerized System for the Registry of Law Professionals before the Circuit and District courts of the Federal Board of Judges, with the number 79818; Marisol Zaraí Roque Paz, with Professional ID License 3815024, registered in the Computerized System for the Registry of Law Professionals before the Circuit and District courts of the Federal Board of Judges, with the number 3698; and Jorge Mario Lanz Santamaría, with Professional ID License 5254915, registered in the Computerized System for the Registry of Law Professionals before the Circuit and District courts of the Federal Board of Judges, with the number 79133; and also, Israel Ernesto Sahagún Morales, Erika Monzerrat Campuzano Navarrete, José Juan Sánchez Navarrete, Angélica Janet Torres Lázaro, Mario Alberto Márquez Navarro, Daniel Arouesty Finkelstein, Ángel Eduardo Piña Hernández, José Pablo Peralta Mondragón, Cristian Efrén Sánchez Salgado y Pablo Gonzáles Anciola, jointly or separately, solely to hear and be served notices, receive documents and securities and act in these proceedings, signing where necessary.

E) **ANGEL VARELA TORRES**, attorney with Professional ID License number one million eighty-eight thousand five hundred four, issued by the Bureau of Professional Licenses of the Department of Public Education and in the capacity of attorney-in-fact for lawsuits and collections of the banking institution known as **BANCO MERCANTIL DEL NORTE, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BANORTE**, evidences his authority by virtue of the certified copy relative to public document number fifty-eight thousand one hundred ten dated the twenty-ninth of August of the year two thousand seven executed before Primitivo Carranza Acosta, notary public acting for notary number seventy-two and notary of the government-owned real property, Javier García Ávila, practicing in the municipality of the city of Monterrey, State of Nuevo León, which is shown as **Exhibit 2-E)**, establishing legal domicile for the service of notices the tenth floor of the building marked with the number one thousand two hundred thirty, located on Avenida Prolongación Paseo de la Reforma, Colonia Cruz Manca, Delegación Cuajimalpa, of Mexico City, Federal District, Postal Code zero five thousand three hundred forty-five, authorizing for the same purposes, as well as for collecting documents and intervening in these proceeding, without distinction, the attorneys Sergio Romero Velázquez, Gilberto Ordóñez Anselmo, Leticia Salvador Romero, Guillermo Prieto Alcázar y César Ignacio del Valle Anaya, with professional ID license numbers two million nine hundred thirteen thousand six hundred thirty-seven four million five hundred sixty three thousand nine hundred seventy-two, five million three hundred ninety-six thousand five hundred thirty-five, three million eight hundred fifty-four thousand six hundred seventy-seven and five million one hundred seventy thousand two hundred fifty-eight, respectively.

F) **JESÚS MIGUEL MARÍN SÁNCHEZ and ALBERTO GERARDO FERNÁNDEZ LÓPEZ**, acting in our capacity as attorneys-in-fact of **SCOTIABANK INVERLAT, S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SCOTIABANK INVERLAT**, request that our authority be recognized, according to the notarial certified copies that are attached to this petition as **Exhibit 2-F)**, and establishing legal domicile for the service of all types of notices, documents and securities at calle de Río Rhin número 22, Despacho 303, colonia y delegación Cuauhtémoc, Código Postal 06500, in Mexico City, Federal District, and authorizing in accordance with the third paragraph of Article 1069 of the Code of Commerce, supplement to the Ley de Concursos Mercantiles, and in general to carry out any act aimed at the defense of the rights of the creditor institution of credit and above all for the approval of the proposed creditors' agreement , without distinction, the attorneys LUIS RISCHIA VELÁZQUEZ, with professional ID license number 3369644, FRANCISCO MARTÍNEZ MÁRQUEZ, with professional ID license number 4841715, JUAN CARLOS MALDONADO PATIÑO, with professional ID license number 6314553, JORGE LUIS DORANTES LIRA, with professional ID license number 3230465, and authorizing, for the sole purpose of hearing and being served all types of notices, documents and securities, JUAN CARLOS GONZÁLEZ MAGALLANES, RAFAEL ALEJANDRO

URUSQUIETA RESÉNDIZ, SUSANA MAYWARINA URUSQUIETA LEYVA and GERARDO ISRAEL MORFÍN SÁNCHEZ.

G) **JOSÉ TRINIDAD HERNÁNDEZ MENDOZA**, attorney-at-law with professional ID license number 1870933 issued by the Bureau of Professional Licenses of the Department of Public Education, representing **IXE SOLUCIONES, S.A. DE C.V., A REGULATED MULTIPLE-PURPOSE FINANCIAL INSTITUTION, IXE GRUPO FINANCIERO**, requests that his authority be recognized as evidenced by virtue of the notarial instrument which is attached as **Exhibit 2-G)**, establishing legal domicile for the service of notices at Paseo de la Reforma N° 505, piso 45, Colonia Cuauhtémoc, México, Distrito Federal, C.P. 06500, authorizing, in the broadest terms of Article 1069 of the Code of Commerce, attorneys Martín Ollé Casals, Jorge Chávez Flores, Lynda Vanessa Castillo Madrid and José Humberto Estavané Dager, with professional ID license numbers 4016276, 64659-5, 3206369 and 3808114, issued by the Bureau of Professional Licenses of the Department of Public Education, as well as Erika Pintos Gutiérrez, Gabriela Jimeno Bautista, Marianna Melgoza García, Katya Ivonne Prado García, Jessica Janet Morales Casas, Dafne Suárez Valadez, Oscar Tena Castro and Roberto Ortiz Mina without distinction.

H) **FERNANDO MARTINEZ DE VELASCO MOLINA**, acting in the capacity of attorney-in-fact of **HSBC MEXICO, S.A. A MULTI-PURPOSE FINANCIAL INSTITUTION, HSBC FINANCIAL GROUP** (hereinafter for quick reference, it will be mentioned only as HSBC), evidences his authority to the limits of the notarial instrument which accompanies this document as **Exhibit 2-H)**; establishing legal domicile for the service of notices at avenida Santa Fé número 481 piso 6, of the colonia Cruz Manca Santa Fé, C.P. 05349 in Mexico City; authorizing the attorneys JUAN JESÚS MEZA ROMÁN, JOSÉ RAMOS BARRAGÁN, GONZALO GARCIA VELASCO, FERNANDO GARCIA DE LUCA, CLAUDIA IVETTE PÉREZ DIAZ, PATRICIA PEREZ ULLOA, and MARIA ANGELES GARCIA NARANJO to appear and be served notices as well as to collect all types of documents, and authorizing the law students EDUARDO ZULOAGA MAYTORENA, JOSE ANDRES RIVAS RODRIGUEZ and CHRISTIAN AMABILE COMELLAS to appear and be served notices.

I) and J) **ORLANDO JOSÉ LOERA HERNÁNDEZ**, acting in the capacity of attorney-in-fact of the companies known as **MERRILL LYNCH CAPITAL MARKETS, A.G**. and **MERRILL LYNCH CAPITAL SERVICES, INC**. evidence my authority in accordance with the notarial instruments that are attached to this document as **Exhibits 2-I) y 2-J)**, establishing legal domicile for the service of all types of notices, even those of a personal nature, at calle de Montes Urales número 505, Colonia Lomas de Chapultepec, Delegación Miguel Hidalgo, Código Postal 11000, in Mexico City, Federal District, and authorizing, in accordance with Article 1069 or the Code of Commerce, the attorneys Fernando María de Salvidea de Miguel (professional ID license number

1855570), Carlos Malpica Hernández (professional ID license number 2258052), Rodrigo Buj García (professional ID license number 4494360), María del Rocío González Alcántara Lammoglia (professional ID license number 3682958), Luis Ernesto Peón Barriga (professional ID license number 4354400), Rolando Zárate Guzmán (professional ID license number 5712956) and José Manuel Guillemot Cesari (professional ID license number 1833842), who from this moment on are authorized to act jointly or separately in accordance with the abovementioned legal precept and in general to carry out any act deemed to be necessary for the defense of the rights of my principal; I likewise authorize the law clerks Fernanda Robleda Martínez, Federico Martens Alva, Zaida Toquero Reyes and Patricio Rivas San Román, without distinction to hear and be served notices, take notes, take photographs, request copies, collect documents and securities, and to act in these proceedings.

K) **JAIME RENÉ GUERRA GONZÁLEZ**, attorney with professional ID license number 239138 issued by the Bureau of Professional Licenses of the Department of Public Education and **JESÚS ÁNGEL GUERRA MÉNDEZ**, attorney with professional ID license number 3659314 issued by the Bureau of Professional Licenses of the Department of Public Education, representing **J. ARON & COMPANY**, request that our authority be recognized in accordance with the notarial document attached as **Exhibit 2-K)**, establishing legal domicile for the service of notices at calle de Santa Margarita número 232, Colonia del Valle, Delegación Benito Juárez, Código Postal 03100, in Mexico City, Federal District, and authorizing for the same purposes, to collect all types of documents and securities, as well as to act with the full authority referred to in the third paragraph of Article 1069 of the Code of Commerce, attorneys Jaime René Guerra González with professional ID license number 239138, Eduardo M. Galdós Muñoz with professional ID license number 1129883, Jaime Corenstein Gitlin with professional ID license number 1367755, Abel Flores Lugo with professional ID license number 1482365, Jesús Armando Treviño Moyeda with professional ID license number 924965, Alfonso Peniche García with professional ID license number 2138562, José María Morfín Castillejos with professional ID license number 2369017, Ernesto Luis Rodríguez León with professional ID license number 2619713, Ricardo Silverbauer Carvallo with professional ID license number 4048491, Román Salazar Castillo with professional ID license number 3721588, Gabriel Aguilera Romero with professional ID license number 3868519, Patricio Fabián Hidalgo Estrada with professional ID license number 3417914, Roberto Vega Treviño with professional ID license number 3420891, Raúl García Herrera with professional ID license number 4682030, Sergio Cabañas Mier with professional ID license number 4079561, Juan de Garay Alfaroli with professional ID license number 5742170, Rogelio Héctor Palacios Beltrán with professional ID license number 3813471, Octavio Ochoa Huerta with professional ID license number 4048987, Rodrigo Medina de Velasco with professional ID license number 5544153, Sirse María Garza Cavazos with professional ID license number 2710261, Armando Preciado Orozco c with professional ID license number 4418855, Eloy Vázquez Castilla with

professional ID license number 3550326, Gonzalo Campos Pizarro with professional ID license number 5543566, Iris María Guajardo Guerra with professional ID license number 5779732, Oscar Alejandro De La Fuente Manzano with professional ID license number 4882040, Adrián Amador Salas with professional ID license number 5040761, Gabriel Iván Sarabia Zúñiga with professional ID license number 5040192, Marco Enrique González Medrano with professional ID license number 5789056, Abraham Mizael Comparan Núñez with professional ID license number 6113873 y Carlos Gutiérrez Topete Forzante with professional ID license number 6329680, as well as the law clerks Salvador García Ortega, Eloy Monroy León, René Salvador Renaud Moreno, Laura Alejandra González Santa Cruz, Juan Carlos Heredia Lañas, Marco Antonio Aguilar Portillo, Elías Mendoza Murguía, Víctor Erick Menchaca Hidalgo, Allan Galileo Olmedo Villegas, Carlos Alberto García Mora, Ramsés Sánchez Trinidad, Alejandro Luna Castañeda, Silvia María Del Carmen Salas Cariño, Sebastián Aragón Cuahonte, Fernanda Sánchez Hernández, Arianna de la Torre Bazúa and Carlos Javier Arreola Castro, without distinction.

L) **FERNANDO BORJA MÚJICA**, in the capacity of attorney-in-fact for lawsuits and collections, acts of administration and ownership of **BANCO NACIONAL DE MÉXICO, SOCIEDAD ANÓNIMA, MEMBER OF THE GRUPO FINANCIERO BANAMEX**, requests that his authority be recognized in accordance with notarial document number 50,830, dated the nineteenth of January of two thousand four, executed in the presence of Roberto Núñez y Bandera, Notary Public number 1 of the Federal District, and is attached hereto as **Exhibit 2-L), establishing legal domicile for the service of** all types of notices at the 20th floor of the building "Arcos Bosques Corporativo" located at Paseo de los Tamarindos número 400-A, Colonia Bosques de las Lomas, Delegación Cuajimalpa, Código Postal 05120, in Mexico City, Federal District, authorizing to hear notices on our behalf with all the authority set forth in the first part of the third paragraph of Article 1069 of the Code of Commerce, without distinction, attorneys Mario Roberto Martínez Guerrero, with professional ID license number 105554, Ernesto Fernando Algaba Berlanga, with professional ID license number 290889, Jorge de Haro González, with professional ID license number 291242, Javier Curiel Obscura, with professional ID license number 1394335, Daniel Ortega González, with professional ID license number 2213730, Javier Altamirano Hernández, with professional ID license number 2958507, Giselle Garduño Altamirano, with professional ID license number 4049774, Ricardo Escalante Garcíadiego, with professional ID license number 4097254, Ernesto Palacios Juárez, with professional ID license number 4522181, María Eugenia López Vallejo Castro, with professional ID license number 4897977, Diego Gutiérrez Martínez-Parente, with professional ID license number 5089874, Alejandro Legaspi Lanz, with professional ID license number 5649087, Tania Divana González Durán, with professional ID license number 4169662, Jorge Rodrigo Farell Kambourian, with professional ID license number 6107192, Ricardo García Cordero Sasía, with professional ID license number 5295709, Francisco Javier Sánchez Saldaña Cardoso,

with professional ID license number 3276312, Bernardo Basaldúa Ochoa, with professional ID license number 6257118 y Gerardo Quintana Pineda, with professional ID license number 6000584, licenses that are registered in the Computerized System for the Registry of Law Professionals before the Circuit and District courts of the Federal Board of Judges, with the numbers 51819, 85425, 26823, 85432, 27375, 982, 54358, 4051, 65634, 103548, 73844, 89382, 86018, 79261, 53482, 101250 and 104024, respectively, and Tanya Aguirre de la Torre, Pedro Trueba Gutiérrez, Alberto García Cárdenas, Guillermo Castillo Guzmán, Mauricio Mendoza Cuenca, Santiago Orvañanos Senties, Ricardo Calvillo Ortiz, Santiago Javier Núñez Chaim, Francisco Javier Nuño Calderón, José Fernando Quezada Treviño and Manuel Suarez Ortiz, without distinction, only for hearing and being served notices, receiving documents and securities and acting in these proceedings.

M) **FERNANDO BORJA MÚJICA, ROBERTO GLENN CÁRDENAS and JORGE DE HARO GONZÁLEZ**, in the capacity of attorneys-in-fact of **CITIBANK, N.A.**, request that their authority be recognized in accordance with notarial instruments number 59,204, dated the twenty-ninth of September of two thousand eight, executed in the presence of Roberto Núñez y Bandera, Notary Public number 1 of the Federal District, and 19,802, dated the seventh of June of one thousand nine hundred seventy-six, executed in the presence of Ignacio Soto Borja, Notary Public number 129 of the Federal District, which are attached hereto as **Exhibit 2-M),** establishing legal domicile for the service of all types of notices at the 20th floor of the building "Arcos Bosques Corporativo" located at Paseo de los Tamarindos número 400-A, Colonia Bosques de las Lomas, Delegación Cuajimalpa, Código Postal 05120, in Mexico City, Federal District, authorizing to hear notices on our behalf with all the authority set forth in the first part of the third paragraph of Article 1069 of the Code of Commerce, without distinction, attorneys Mario Roberto Martínez Guerrero, with professional ID license number 105554, Ernesto Fernando Algaba Berlanga, with professional ID license number 290889, Jorge de Haro González, c with professional ID license number, Javier Curiel Obscura, with professional ID license number 1394335, Daniel Ortega González, with professional ID license number 2213730, Javier Altamirano Hernández, with professional ID license number 2958507, Giselle Garduño Altamirano, with professional ID license number 4049774, Ricardo Escalante Garcíadiego, with professional ID license number 4097254, Ernesto Palacios Juárez, with professional ID license number 4522181, María Eugenia López Vallejo Castro, with professional ID license number 4897977, Diego Gutiérrez Martínez-Parente, with professional ID license number 5089874, Alejandro Legaspi Lanz, with professional ID license number 5649087, Tania Divana González Durán, with professional ID license number 4169662, Jorge Rodrigo Farell Kambourian, with professional ID license number 6107192, Ricardo García Cordero Sasía, with professional ID license number 5295709, Francisco Javier Sánchez Saldaña Cardoso, with professional ID license number 3276312, Bernardo Basaldúa Ochoa, c with professional ID license number 6257118 and Gerardo Quintana Pineda, with

professional ID license number 6000584, licenses that are registered in the Computerized System for the Registry of Law Professionals before the Circuit and District courts of the Federal Board of Judges, with the numbers 51819, 85425, 26823, 85432, 27375, 982, 54358, 4051, 65634, 103548, 73844, 89382, 86018, 79261, 53482, 101250 and 104024, respectively, and Tanya Aguirre de la Torre, Pedro Trueba Gutiérrez, Alberto García Cárdenas, Guillermo Castillo Guzmán, Mauricio Mendoza Cuenca, Santiago Orvañanos Senties, Ricardo Calvillo Ortiz, Santiago Javier Núñez Chaim, Francisco Javier Nuño Calderón, José Fernando Quezada Treviño and Manuel Suarez Ortiz, without distinction, only for hearing and being served notices, receiving documents and securities and acting in these proceedings.

N) **CAROLINA MACHADO DUFAU,** attorney-at-law with profession ID license number 2135137 issued by the Bureau of Professional Licenses of the Department of Public Education, representing **JPMORGAN CHASE BANK, N.A.** requests that her authority be recognized in accordance with the notarial instrument attached hereto as **Exhibit 2-N)**, establishing legal domicile for the service of notices at the house marked number fifty-five on calle de Capuchinas, in Colonia San José Insurgentes, código postal 03900, México, Distrito Federal, authorizing, in accordance with the third paragraph of Article 1069 of the Code of Commerce supplemental to the Ley de Concursos Mercantiles, our attorneys-in fact and trial attorneys: Javier Quijano Baz, Francisco Xavier Cortina Cortina, Alan Gerardo de la Torre Lobera, Javier Quijano Decanini, Enrique Ballester Izaguirre, and Fernando de Ovando Gómez Morín, holders of professional ID licenses issued by the Bureau of Professional Licenses of the Department of Public Education numbers (C.P. 163353), (C.P. 1466302), (C.P. 1921879), (C.P. 2465889), (C.P. 2730750) y (C.P. 5646160), respectively. It is requested that their dual role in this lawsuit as attorneys-in-fact and trial attorneys be recognized. Likewise, the following people are authorized to hear and be served notices, take notes and act in these proceedings, to take photographs, obtain copies and receive documents in accordance with the penultimate paragraph of the abovementioned legal precept: Miguel Ángel Bisogno Carreón, Ana Laura Aguilar Vélez, Miranda Carrillo Quijano, Hayde Jennyfer Rodarte Berbera, Pablo González de Cossío Higuera, Alejandro Guillermo Carranza Vera, Francisco Javier de la Torre Jiménez, Patricio Ogarrio Healy and José Bernardo Garza Galván, without distinction.

Wherefore, with all due respect, we all appear before the court and set forth:

**PETITION FOR INSOLVENCY WITH PREPACKAGED RESTRUCTURING PLAN**

Based on the provisions of Articles 1, 2, 3, 7, 8, 9, 10, 11, 15, 17, 20, 21, 22, 24, 25, 26, 37, 339, 340, 341, 342 and others relative and applicable to the Ley de Concursos Mercantiles, both the Merchant and the holders of at least 85% (eighty-

five percent) of the total of its debts, we hereby request that the company known as **Controladora Comercial Mexicana, S.A.B. de C.V.** be declared in insolvency, given that it is in general default on the payment of its obligations, and particularly, based on the statutory presumption in section b), sub-section III, of Article 339 of the Ley de Concursos Mercantiles in relation to sub-sections I y II of Article 10 and II of Article 11 of the Ley de Concursos Mercantiles itself.

In terms of the provisions of Article 339, sub-section II, second paragraph, of the Ley de Concursos Mercantiles, under oath to tell the truth, the Merchant declares that the creditors who signed this petition are holders of more than 40% (forty percent) of the total liabilities of the Merchant, since they amount at least 85% (eighty-five percent) of said liabilities. Likewise, the Merchant acknowledges that the creditors who signed this petition for insolvency with prepackaged restructuring plan assume the corresponding responsibility in regard to signing the prepackaged restructuring plan but disclaim any responsibility in relation to the actions and declarations of the Merchant.

## ELIGIBILITY UNDER THE PROVISIONS OF ARTICLES 10, 11 AND 339 OF THE LEY DE CONCURSOS MERCANTILES

For purposes of sub-section III, section b), of Article 339 of the Ley de Concursos Mercantiles, **Controladora Comercial Mexicana, S.A.B. de C.V.** declares **under oath to tell the truth** that it is within the statutory presumptions of Articles 10, 11 and 339 of the abovementioned Ley de Concursos Mercantiles by virtue of the fact that:

I. It is imminent that in thirty days, more than thirty-five percent of all the obligations payable by the merchant on this date will be in arrears. For purposes of proving the foregoing, attached to this petition is **Exhibit 3)**, which is a list of all the Merchant's creditors with the amounts due to each one and the due date.

II. **Controladora Comercial Mexicana, S.A.B. de C.V.** does not have the assets stated in sub-section II del Article 10 of the Ley de Concursos Mercantiles, in order to pay at least eighty percent of its obligations in arrears on this date, as is evidenced by the Merchant's inventory of assets and goods, which is attached to this petition as **Exhibit 4)** and moreover, as is indicated in **Exhibit 4-A)**, there are various attachments on the shares of its subsidiary companies.

III. **Controladora Comercial Mexicana, S.A.B. de C.V.** has been in arrears in the payment of its obligations with two or more creditors since the year 2008.

## THE PREPACKAGED RESTRUCTURING PLAN

As a result of negotiations with various creditors, **Controladora Comercial Mexicana S.A.B de C.V.** has come to an agreement with the majority of them to restructure its liabilities. The creditors with whom it has reached a prior agreement are holders of more than 40% (forty percent) of the total of its liabilities since they amount to at least 85% (eighty-five percent) of said liabilities.

Therefore, **Controladora Comercial Mexicana, S.A.B de C.V.** and the aforementioned creditors that represent at least 85% (eighty-five percent) of its liabilities, have signed a plan for restructuring all the Merchant's liabilities, which is attached hereto as **Exhibit 5)**, creating rights and obligations for the parties.

This restructuring plan has the characteristics of a plan with prior restructuring for purposes of the Ley de Concursos Mercantiles.

It is the intention of both the Merchant and the creditors who have signed the prepackaged restructuring plan, who have also signed this petition, that once a Credit recognition and Priority Order Resolution is issued, the Conciliator appointed in the debt restructuring, in accordance with Article 161 of the Ley de Concursos Mercantiles, may submit an agreement proposal to the Recognized Creditors, which may exclusively incorporate, with all the necessary formal adaptations, the entirety of the terms and conditions provided for in the prepackaged restructuring plan, which is attached hereto as **Exhibit 5)** for signing and possible approval by the Court.

In compliance with the provisions of Article 339 of the Ley de Concursos Mercantiles, in regard to Article 20 of the same law, the following is set forth:

## I. NAME, CORPORATE DOMICILE AND OFFICES OF THE MERCHANT.

**Controladora Comercial Mexicana, S.A.B. de C.V.** has its corporate domicile in Mexico City, Federal District, as is stated in notarial document number 101,252, dated April 7, 2006, certified by Enrique Almanza Pedraza, Notary Public number 198 of the Federal District, recorded in the Real Estate and Business Registry of the Federal District. Said document is shown as **Exhibit 6)**.

The company's corporate headquarters are located at Avenida Revolución número 780, Módulo 2, Colonia San Juan, Código Postal 03730, México, Distrito Federal.

**Controladora Comercial Mexicana, S.A.B. de C.V.** has various offices, establishments, warehouses and stores as well as various subsidiaries that are listed with their domiciles in the Inventory that makes up **Exhibit 4)** of this document.

## II. FINANCIAL STATEMENTS.

In compliance with the provisions of sub-section I of Article 20 of the Ley de Concursos Mercantiles, we are including with this document the audited individual (not consolidated) financial statements of **Controladora Comercial Mexicana, S.A.B. de C.V.**, for the years 2007, 2008 and 2009 identified as **Exhibits 7), 8) and 9)**, respectively. Because of their relevance for the purpose of determining the liability of the Merchant, partial individual financial statements (unaudited) of the company as of July 6, 2010 are also included as **Exhibit 10)**. These have still not been audited because fiscal year 2010 has not yet ended and it is not required to have them audited at the date of this petition.

## III. HISTORY OF THE CAUSES OF MERCHANT'S FAILURE TO MEET ITS OBLIGATIONS

1. On January 28, 1944, ANTONINO GONZÁLEZ E HIJO, S. EN C. was established pursuant to the laws of the United Mexican States as a limited partnership company.

2. On July 1, 1957, ANTONINO GONZÁLEZ E HIJO, S. EN C. changed its corporate name to COMERCIAL MEXICANA, S.A.

3. On March 5, 1982, COMERCIAL MEXICANA, changed its capital structure and corporate name to COMERCIAL MEXICANA, S.A. DE C.V.

4. On December 9, 1988, COMERCIAL MEXICANA, S.A. DE C.V. changed its corporate name to CONTROLADORA COMERCIAL MEXICANA, S.A. DE C.V.

5. On April 7, 2006, CONTROLADORA COMERCIAL MEXICANA, S.A. DE C.V. changed its corporate name to CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. and amended its corporate bylaws, with the aim of bringing them in line with the changes made in the Securities Market Law. The minutes of the shareholders' meetings held on the date mentioned is recorded in public

document number 101,252, dated April 7, 2006, and is included with this document as **Exhibit 6)**.

6. In pursuing its corporate purpose, CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. functions as a holding company controlling the corporate capital of various companies devoted to the sector of self-serve stores and restaurants.

7. Therefore the main activities of CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. are: (i) support with investment capital the various companies it controls; (ii) perform treasury functions for all its subsidiaries, receiving cash surpluses and allocating resources in accordance with the financial requirements and strategy of the group; (iii) renting of goods and intangible assets; and (iv) because of the merger that was effective on December 31, 2009, it also engages in the activities formerly carried out by Mercándia, S.A. de C.V., the company that merged with CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V.

8. Because it functions as a holding company, CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. does not have employees.

9. Since the year nineteen ninety-one, CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. and its subsidiaries began to engage in various expansion programs, indispensable for facing competition in the sector of self-serve stores.

10. Since 1991, most of the cash flow generated by CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. has been reinvested in the expansion of the entire group.

11. Despite the foregoing, the cash flow generated by CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V. was insufficient to pay for all the investments necessary to bring about the expansion of the group in order to face up to competitors.

12. In order to maintain the cash flow necessary so that the group's expansion was in line with the growth required to meet the competition, the company had to resort to financing, a major portion of which was negotiated in foreign currency.

13. The subsidiaries of the group that operate the self-serve business assumed obligations to pay various suppliers in foreign currency, primarily in dollars, the legal currency of the United States of America, specifically for the purchase of imported merchandise. Likewise, these subsidiaries assumed commitments in foreign currency to fund their expansion costs.

14. In this way, and given that CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. was acting as the treasury of its subsidiaries, the Merchant was exposed to the risks associated with exchange rate fluctuations since, for its sales in Mexico, the company only generated revenues in pesos, the national currency.

15. To minimize these risks, CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. entered into certain financial derivative contracts for hedging purposes, that is, transactions to hedge against fluctuations in the MEX-USD exchange rate or, in simple terms, it locked in an exchange rate for its transactions.

16. Since the year 2006, the peso appreciated against the dollar, that is, it strengthened and the fluctuation in the exchange rate was slight. This gave rise to a change in the terms of derivative financial transactions in order to adjust them to a "stronger" peso.

17. At the end of September and beginning of October of 2008, the world was shaken by the collapse of various financial institutions, which brought on a global financial crisis. Mexican currency was exposed to the volatility and instability of the markets, which led to considerable pressure on the Mexican peso and the consequent depreciation.

18. As a result of this devaluation of Mexican currency, CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. was not able to cover all the guarantees required and/or did not make the corresponding payments in accordance with the contracts signed to document the derivative financial transactions, and thus, these transactions were terminated in advance along with the contracts that documented them.

19. As a result of this early termination of the derivatives transactions and the contracts that documented them, CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. and the financial institutions who had signed the contracts entered into a controversy in regard to the legal validity and amount of the transactions, which led to five of these institutions, Barclays Bank PLC, J. Aron & Company (assignee of Goldman Sachs Paris Inc. et Cie), JPMorgan Chase Bank, N.A., Merrill Lynch Capital Markets AG and Merrill Lynch Capital Services, Inc., filing legal proceedings against the Merchant in New York. An account of these proceedings accompanies this petition as **Exhibit 11)**.

20. As a result, CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. failed to pay loans taken out with Mexican banks, and defaulted on the payment of

debt instruments known as "bonds", which were issued both in Mexico and in the United States, and on issues of stock-market certificates placed in Mexico. The majority of Mexican commercial banking institutions and the holders of stock-market certificates also initiated legal proceedings against the Merchant and resulted in various attachments on the company and its assets. An account of these proceedings is included with this petition as **Exhibit 11)**.

21. Since October of 2008, CONTROLADORA COMERCIAL MEXICANA, S.A.B DE C.V. and its creditors have held talks in order to come to an agreement that would permit the restructuring of the Merchant's liabilities.

22. These negotiations gave rise to the agreement expressed in the prepackaged restructuring plan which accompanies this petition and has the approval of creditors who are holders of more than 40% (forty percent) of the Merchant's liabilities, since the creditors signing this petition, as well as the prepackaged restructuring plan, are holders of at least 85% (eighty-five percent) of the Merchant's liabilities, which fully satisfies the requirement referred to in sub-section II of Article 339 of the Ley de Concursos Mercantiles.

23. By virtue of the foregoing, this petition to declare insolvency with prepackaged restructuring plan is filed pursuant to Article 339 and others relative to the Ley de Concursos Mercantiles, which reflects the agreement reached between the Merchant and creditors who are holders of at least 85% (eighty-five percent) of its liabilities, agreement which, the legal steps having been taken, it is requested be approved by the Court and raised to the status of a debt restructuring agreement given that it complies with the guidelines of bankruptcy law.

### IV. ACCOUNT OF CREDITORS.

In compliance with sub-section III of Article 20 of the Ley de Concursos Mercantiles, attached to this document as **Exhibit 3)**, is the list of creditors of the petitioner, indicating names, domiciles, due dates of the loans of each one, particular characteristics and degree in which it is deemed they should be recognized, and if applicable, the collateral of securing the corresponding claims, providing that that all the liabilities of the Merchant pertain to common creditors, and there are no loans of a higher degree and priority.

### V. ACCOUNT OF DEBTORS.

In compliance with sub-section III of Article 20 of the Ley de Concursos Mercantiles, attached hereto as **Exhibit 12)**, is the list of debtors of the petitioner,

indicating names, domiciles, due dates, particular characteristics and guarantees, if applicable.

## VI. INVENTORY.

In compliance with sub-section IV of Article 20 of the Ley de Concursos Mercantiles, attached hereto as **Exhibits 4) and 4-A)** is the inventory that includes all the Merchant's assets as well as the attachments on them.

## VII. JUDGMENTS.

The Merchant is a party to several lawsuits which are indicated in the schedule attached hereto as **Exhibit 11).**

## VIII. GUARANTEE PROVIDED FOR IN ARTICLE 20 OF THE LEY DE CONCURSOS MERCANTILES.

In accordance with the provisions of Article 341 of the Ley de Concursos Mercantiles, upon filing a petition for Insolvency with prepackaged restructuring plan, it is not necessary to carry out the visit stage provided for in the law, and thus, it is not necessary to execute the guarantee provided for in sub-section VI of Article 20 of the Ley de Concursos Mercantiles.

## L A W

This petition for Insolvency is based on Articles 1, 2, 3, 7, 8, 9, 10, 11, 15, 17, 20, 21, 22, 24, 25, 26, 29, 30, 31, 32, 33, 37, 339, 340, 341, 342 and others relative and applicable to the Ley de Concursos Mercantiles.

By virtue of the foregoing

The petitioner prays that this **Honorable Court**:

**FIRST:** Record our appearance with the legal capacity that each of us who are signing this petition holds; we also request to be recognized by virtue of the notarial instruments presented for that purpose, on behalf of **Controladora Comercial Mexicana, S.A.B. de C.V.** and the creditors referred to in the preface of this document, respectively.

**SECOND:** Record the petition for Insolvency with prepackaged restructuring plan signed by **Controladora Comercial Mexicana, S.A.B. de C.V.** and creditors who

are holders of at least 85% (eighty-five percent) of the liabilities of the Merchant, in compliance with the applicable requirements provided for in Articles 20 and 339 of the Ley de Concursos Mercantiles.

**THIRD:** Record the appearance of the Merchant, declaring under oath to tell the truth, that it is in general arrears in the payment of its obligations and, in particular, according to the provisions of section b), sub-section III, of Article 339 relative to Articles 10 and 11 of the Ley de Concursos Mercantiles, and that the creditors who sign this petition and prepackaged restructuring plan are holders of more than 40% (forty percent) of the total of its liabilities.

**FOURTH:** Confirm that it is not necessary to execute the guarantee provided for in Article 24 of the Ley de Concursos Mercantiles.

**FIFTH:** Based on the provisions of Article 341 of the Ley de Concursos Mercantiles, issue a judgment as a matter of law that declares the Insolvency of **Controladora Comercial Mexicana, S.A.B. de C.V.** with Prepackaged Restructuring Plan.

**SIXTH:** Request the intervention corresponding to the Instituto Federal de Especialistas en Concursos Mercantiles in terms of the Ley de Concursos Mercantiles and, particularly, in the appointment of a Mediator.

**SEVENTH:** After complying with legal formalities, in a timely fashion, declare the Insolvency with prepackaged restructuring plan of the company **Controladora Comercial Mexicana, S.A.B. de C.V.**, with the corresponding legal effects.

### WE DECLARE UNDER AFFIRMATION

Mexico City, Federal District on July 6, 2010.

| **CONTROLADORA COMERCIAL MEXICANA, S.A.B. DE C.V.** |
| --- |
| |
| **FERNANDO DEL CASTILLO ELORZA** |

| **BARCLAYS BANK PLC** |
| --- |
| |
| **JORGE LUIS PEÓN SEGURA** |

**Monumental Life Insurance Company**

**Transamerica Financial Life Insurance Company**

**Transamerica Life Insurance Company**

**Siefore Bancomer Protege, S.A. de C.V.**; **Siefore Bancomer Real, S.A. de C.V.**; **Siefore Bancomer Progresa, S.A. de C.V.**; **Siefore Bancomer Adelante, S.A. de C.V.**; y **Siefore Bancomer Emprende, S.A. de C.V.**

**Siefore Invercap, S.A. de C.V.**; **Siefore Invercap II, S.A. de C.V.**; **Siefore Invercap III, S.A. de C.V.**; **Siefore Invercap IV, S.A. de C.V.**; y **Siefore Invercap V, S.A. de C.V.**

**Chiletech, S.A., Administrator of Investment Funds as Administrator of Chiletec Fondo de Inversión**

**Moneda Absolute Return Fund Limited**

**Moneda Latin American Corporate Debt**

**Moneda, S.A., Administradora de Fondos de Inversión como Administradora de los Fondos de Inversión, Moneda Deuda Latinoamericana Fondo de Inversión, Moneda Retorno Absoluto Fondo de Inversión, Moneda Small Cap Latinoamérica Fondo de Inversión y Moneda Latinoamérica Deuda Local Fondo de Inversión**

**Ohio National Life Assurance Corporation**

**The Ohio National Life Insurance Company**

**Sun Life Reinsurance (Barbados) Limited**

**Sun Life Reinsurance (Ireland) Limited**

**Sun Life Assurance Company of Canada (U.S.)**

**Sun Life Assurance Company of Canada**

**Sun Life Hong Kong Limited**

**Sun Life Insurance & Annuity Company of New York**

**Sun Capital Investment Grade Bond Fund**

**Anthion Master Fund, LP**


**Teachers Insurance and Annuity Association of America**,


**HSBC B1 Siefore, S.A. de C.V., HSBC Financial Group**; **HSBC B2 Siefore, S.A. de C.V., HSBC Financial Group**; **HSBC B3 Siefore, S.A. de C.V., HSBC Financial Group**; **HSBC B4 Siefore, S.A. de C.V., HSBC Financial Group**; and **HSBC B5 Siefore, S.A. de C.V., HSBC Financial Group**


**Fondo Sólida Banorte Generali Uno, S.A. de C.V., Siefore**; **Fondo Sólida Banorte Generali Dos, S.A. de C.V.**, Siefore; **Fondo Sólida Banorte Generali Tres, S.A. de C.V., Siefore**; **Fondo Sólida Banorte Generali Cuatro, S.A. de C.V., Siefore**; and **Fondo Sólida Banorte Generali Cinco, S.A. de C.V., Siefore**

**Larraín Vial S.A. Sociedad Administradora de Fondos (also known as Larraín Vial SAF) as Administrator of the Investment Fund Larraín Vial Renta Fija Latinoamericana FI**


**Macquarie Bank Limited**


**Instituto Mexicano del Seguro Social**


**Copernico Latin America Strategic Fund**


**Copernico Special Situations Fund**


**Bice Vida Compañía de Seguros, S.A.**


**Barclays Capital, Inc.**


**JCAM Global Fund (Master) LP**


**Atlantic Security Bank**


**Pascale Lehmann Scassi-Buffa**


**Leon Lehmann Scassi-Buffa**


**María C. Haro**

**BANCARD INTERNATIONAL INVESTMENT INC**


**ALEJANDRO SAINZ ORANTES**

| BANCO SANTANDER (MÉXICO), S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SANTANDER, (formerly BANCO SANTANDER, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SANTANDER) | |
|---|---|
| **GABRIEL PÉREZ RÍOS AGUILAR** Attorney-at-Law | **ACT. MARÍA FERNANDA RUÍZ PADILLA** |

| BBVA BANCOMER, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BBVA BANCOMER |
|---|
| **GERARDO MANUEL RAMÍREZ ORNELAS** |

| BANCO MERCANTIL DEL NORTE, S.A., INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO BANORTE |
|---|
| **ANGEL VARELA TORRES** |

| SCOTIABANK INVERLAT, S.A. INSTITUCIÓN DE BANCA MÚLTIPLE, GRUPO FINANCIERO SCOTIABANK INVERLAT | |
|---|---|
| **JESÚS MIGUEL MARÍN SÁNCHEZ** | **ALBERTO GERARDO FERNÁNDEZ LÓPEZ** |

| IXE SOLUCIONES, S.A. DE C.V., A REGULATED MULTIPLE-PURPOSE FINANCIAL INSTITUTION, IXE GRUPO FINANCIERO |
|---|
| **JOSÉ TRINIDAD HERNÁNDEZ MENDOZA** |

| HSBC MEXICO, S.A. MULTIPLE PURPOSE FINANCIAL INSTITUTION, HSBC FINANCIAL GROUP |
|---|
| **FERNANDO MARTINEZ DE VELASCO MOLINA** |

| MERRILL LYNCH CAPITAL MARKETS, A.G. |
|---|
| |
| ORLANDO JOSÉ LOERA HERNÁNDEZ |

| MERRILL LYNCH CAPITAL SERVICES, INC. |
|---|
| |
| ORLANDO JOSÉ LOERA HERNÁNDEZ |

| J. ARON & COMPANY ||
|---|---|
| JAIME RENÉ GUERRA GONZÁLEZ | JESÚS ÁNGEL GUERRA MÉNDEZ |

| BANCO NACIONAL DE MÉXICO, SOCIEDAD ANÓNIMA, MEMBER OF THE GRUPO FINANCIERO BANAMEX |
|---|
| |
| FERNANDO BORJA MÚJICA |

| CITIBANK, N.A., ||
|---|---|
| FERNANDO BORJA MÚJICA | ROBERTO GLENN CÁRDENAS |
| JORGE DE HARO GONZÁLEZ ||

| JPMORGAN CHASE BANK |
|---|
| |
| CAROLINA MACHADO DUFAU |

**<u>Exhibit E</u>**

WHITE & CASE LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone:  (305) 371-2700
Facsimile:  (305) 358-5744
John K. Cunningham (JC 4661)


1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore (JS-6031)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re | ) | Chapter 15 |
| | ) | |
| Corporación Durango, S.A.B. de C.V., | ) | Case No. 08-_____ (      ) |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

**DECLARATION OF GABRIEL VILLEGAS SALAZAR**
**PURSUANT TO 28 U.S.C. § 1746**

I, Gabriel Villegas Salazar, declare under penalty of perjury under the laws of the United

States of America that the following is true and correct:

1.       I hereby submit this declaration (the "Declaration") in support of the Verified

Petition for Recognition of Foreign Main Proceeding and Request for Related Relief (the

"Petition"), which is to be filed contemporaneously herewith, and which seeks entry of an order

(i) recognizing the voluntary judicial reorganization proceeding (the "Concurso Proceeding")

that was initiated by Corporación Durango, S.A.B. de C.V. ("Corporación Durango" or the

"Debtor") in the District Court for Civil Matters in Durango, Mexico (the "Durango District

Court"), on October 6, 2008,  as a foreign main proceeding pursuant to sections 1515 and 1517

of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and

(ii) granting related relief pursuant to section 1520 of the Bankruptcy Code.  Except as set forth below, I have personal knowledge of the matters set forth in this Declaration.

2.      Although Spanish is my native language, I am fluent in English and have elected to execute and submit this Declaration in English.

3.      I am an officer holding the title of General Counsel and Secretary of the Board of Corporación Durango.  As the General Counsel and Secretary of the Board of Corporación Durango, I have supervisory control over all business records concerning (a) Corporación Durango's 10.50% Senior Notes due 2017 (the "Senior Notes"), including, without limitation, any guarantees executed in connection therewith, and (b) the financial condition of Corporación Durango, all of which are generally created contemporaneously with the events they reflect and are kept in the ordinary course of business by Corporación Durango.  Further, I also regularly provide services to certain Mexican operating subsidiaries of Corporación Durango (collectively, the "Mexican Subsidiary Guarantors") that are guarantors under the Senior Notes.[1]

4.      In order to carry out my duties, I am the recipient of a Power of Attorney from both Corporación Durango and the Mexican Subsidiary Guarantors, which authorize me to, among other things, initiate legal proceedings on behalf of these entities.

5.      True and correct copies of the Power of Attorney granted to me by Corporación Durango and the English translation thereof are annexed hereto as Exhibit "A" and Exhibit "B",

---

[1]     The Mexican Subsidiary Guarantors are Porteadores de Durango, S.A. de C.V., Administración Corporativa de Durango, S.A. de C.V., Ponderosa Industrial de México, S.A. de C.V., Empaques de Cartón Titán, S.A. de C.V., Reciclajes Centauro, S.A. de C.V., Lineas Aéreas Ejecutivas de Durango, S.A. de C.V., Inmobiliaria Industrial Tizayuca, S.A. de C.V., Compañia Norteamericana de Inversiones en Celulosa y Papel, S.A. de C.V., Servicios Industriales Tizayuca, S.A. de C.V., Atenmex, S.A. de C.V., Atensa, S.A. de C.V., ECTSA, S.A. de C.V., EYEMSA, S.A. C.V., Cartonpack, S.A. de C.V., Administración Industrial Centauro, S.A. de C.V., and Administración Industrial Durango, S.A. de C.V.  The Senior Notes are also guaranteed by two of the Debtor's U.S. subsidiaries, i.e., Paper International, Inc. ("International"), formerly known as Durango International, Inc., and Fiber Management of Texas, Inc. ("FMT").  Both International and FMT are filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code concurrently herewith.

.

respectively.[2]

6.     On October 6, 2008, Corporación Durango initiated the Concurso Proceeding
pursuant to the provisions of the *Ley de Concursos Mercantiles* (the "Mexican Business
Reorganization Act" or "Concurso Law") by submitting its petition to commence a case under
the Mexican Business Reorganization Act (the "Voluntary Petition") with the Durango District
Court.  True and correct copies of the Voluntary Petition filed with the Durango District Court
and the English translation thereof are annexed hereto as Exhibit "C" and Exhibit "D",
respectively.

7.     As set forth in Corporación Durango's Power of Attorney referenced in paragraph
3 above, I am empowered to appear as the duly appointed representative of Corporación
Durango in the Concurso Proceeding.

8.     On October 1, 2008, the Board of Directors of Corporación Durango authorized
the commencement of a proceeding under chapter 15 of the Bankruptcy Code (the "Chapter 15
Proceeding"), and I was duly selected as the foreign representative of Corporación Durango and
its estate in connection with the Chapter 15 Proceeding.  An English translation of the
aforementioned resolution is annexed hereto as Exhibit "B".

9.     Contemporaneously herewith, I have caused this chapter 15 case to be
commenced through the filing of the Petition.

10.     Corporación Durango serves as the holding company for a number of Mexican
and U.S. companies (collectively, the "Company"), which together comprise one of the leading
producers of corrugated containers, containerboard and industrial paper in North America.  An
organizational chart of the Corporación Durango family of companies is attached hereto as

---

[2]     I have caused a translator to translate each of the documents appended hereto.

Exhibit "E".  The Company is one of Mexico's largest paper companies and sells its products to a broad range of Mexican and U.S. manufacturers of consumable and durable goods.

11.     In Mexico, the Company is a domestic producer of newsprint with an estimated 31% market share in 2007, based on information published by the Mexican National Chamber for the Pulp and Paper Industry (*Cámara Nacional de las Industrias de la Celulosa y del Papel*), and the leading producer of corrugated containers with an approximate market share of 30% in 2007.  Corporación Durango's customers in the United States and Mexico include many of the largest industrial, construction, consumer, agricultural, and media companies such as Nestlé, Pepsico, Daimler A.G., Sara Lee, Kimberly-Clark, Vitro, Cementos Apasco, Pacess-Nike, the El Universal and Reforma newspapers, two major Mexico dailies, Quik-crete Concrete and Chiquita.

12.     As of December 31, 2007, Corporación Durango's revenues were approximately Ps. 10.1 billion which translates to approximately US$927.6 million under Mexican Financial Reporting Standards ("NIFs").[3]

13.     As a holding company, Corporación Durango has no employees of its own, as all corporate and administrative level employees are employed and compensated by Administración Corporativa de Durango, S.A. de C.V. ("ACD"), a Mexican corporation (*sociedad anónima de capital variable*) and subsidiary of Corporación Durango, formed for the purpose of providing accounting, administrative, auditing, legal and treasury services to Corporación Durango's other subsidiaries.  In return, Corporación Durango's other subsidiaries pay ACD a fixed monthly administrative fee for providing such services.

---

[3]     Amounts stated in pesos in Corporación Durango's Audited Financial Statements, dated April 29, 2008, for year ending December 31, 2007, have been converted to U.S. dollars using an exchange rate of US$1.00 = Ps. 10.9157 under NIFs.

14.     As of June 30, 2008, Corporación Durango's direct and indirect subsidiaries employed thousands of individuals to administer and operate the various plants and facilities located in the United States and Mexico.

15.     As of the date hereof, Corporación Durango has approximately US$535 million of indebtedness under the Senior Notes, which were issued by Corporación Durango and guaranteed by several of its direct and indirect subsidiaries.

16.     More specifically, beginning in 2002 and continuing through 2004, Corporación Durango experienced a severe liquidity crisis that caused the company to default on various payments of principal and interest on its unsecured indebtedness.  As a result of this crisis, and in an effort to implement a long-term solution to its capital structure and debt service requirements, Corporación Durango filed a voluntary petition to commence an insolvency proceeding under the Mexican Business Reorganization Act on May 18, 2004 (the "2004 Concurso Proceeding").

17.     Shortly thereafter, on May 20, 2004, the company's foreign representative, Gabriel Villegas Salazar, commenced a case ancillary to a foreign proceeding under section 304 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York, Case No. 04-13487 (RDD) (the "304 Proceeding" and, collectively with the 2004 Concurso Proceeding, the "2004 Proceedings"), in order to obtain ancillary relief in the United States in furtherance of Corporación Durango's ongoing reorganization efforts in Mexico.

18.     As a result of the 2004 Proceedings, Corporación Durango was able to propose a plan of reorganization that was approved by a majority of its claimholders, confirmed by the Mexican court, and ultimately consummated on February 7, 2005.  Pursuant to the aforementioned plan, Corporación Durango restructured approximately US$833.2 million (Ps.9.4 billion) in existing obligations in exchange for (i) approximately 17% of the company's issued

and outstanding capital stock (the "Series B Shares"), (ii) the execution of a restructured credit agreement by and between the company and its bank creditors (the "Restructured Credit Agreement"), pursuant to which the company issued notes in an aggregate principal amount of US$116.1 million, and (iii) the issuance of notes (the "Series B Notes") in an aggregate principal amount of US$433.8 million.

19.     More than two years after the 2004 Proceedings, Corporación Durango initiated an effort to purchase and/or redeem all of the then-outstanding Series B Notes and to prepay all amounts due under the Restructured Credit Agreement.  As of June 30, 2007, the aggregate principal amount of outstanding Series B Notes was US$418.6 million (Ps. 4.5 billion) and the aggregate principal amount outstanding under the Restructured Credit Agreement was US$86.2 million (Ps. 930.6 million).

20.     In order to effectuate the aforementioned transactions, on June 21, 2007, Corporación Durango commenced a cash tender offer for any and all of the outstanding Series B Notes.  Subsequently, on or about October 5, 2007, the company issued $520 million in principal amount of the Senior Notes—which remain outstanding—to (i) purchase all of the Series B Notes tendered in connection with the cash tender offer, (ii) redeem all of the Series B Notes not purchased in the tender offer, and (iii) prepay all amounts due under the Restructured Credit Agreement.

21.     As noted above, Corporación Durango's obligations under the Senior Notes are guaranteed by the Mexican Subsidiary Guarantors as well as by two of the company's U.S. subsidiaries.

22.     Over the course of the last year, and since the issuance of the Senior Notes in 2007, Corporación Durango, like many other entities in a variety of industries throughout the

world, has faced significant challenges stemming in large part from an unprecedented, unexpected and sustained rise in global energy prices. Specifically, the rising price of energy has resulted in a rapid escalation in the company's input costs.

23.     Corporación Durango's aggregated cost of energy, raw materials and freight, for example, increased by US$72.3 million in the first half of 2008 as compared to the first half of 2007. The financial consequences of these increased costs have been significant, causing the company's EBITDA to decrease by approximately 68% from the second quarter of 2007 through the second quarter of 2008. Notably, 32% of this decrease occurred in the second quarter of 2008.

24.     Unfortunately, the rising cost of energy, coupled with (i) the well-documented downturn in the U.S. economy—punctuated by recent governmental efforts to restore confidence to the world's ailing credit markets through a massive infusion of capital—which has had worldwide implications, (ii) increased foreign competition in the paper industry, and (iii) the appreciation of the Mexican Peso, have made it difficult for Corporación Durango to transfer its rising cost of goods to its customers.

25.     As a result of the foregoing, Corporación Durango is facing a liquidity crisis that has led to its failure today to make its scheduled interest payment of approximately $26.5 million on the Senior Notes. Based on these facts, Corporación Durango believed it was in the best interests of the company and its creditors to seek relief under the Mexican Business Reorganization Act in order to preserve its value as a going concern and maximize the value of its assets for the benefit of all creditors.

26.     Notwithstanding the pendency of the Concurso Proceeding, I believe that there are various U.S.-based creditors of Corporación Durango who have already or are actively

seeking to institute legal proceedings, either against Corporación Durango or against its Mexican Subsidiary Guarantors and/or its officers and directors (the "Officers and Directors"), in order to seize assets located within the United States and/or to disrupt the reorganization process that has been commenced in Mexico, in derogation of the rights of Corporación Durango's other creditors.

27.     An action against any of the aforementioned parties would be an attempt to circumvent the bankruptcy reorganization process in Mexico. If any such action is commenced, Corporación Durango will suffer irreparable harm in being deprived of its right to, among other things, have its Officers and Directors control its reorganization. Indeed, if creditors are permitted to initiate or continue actions against any of the aforementioned parties, I believe that Corporación Durango's reorganization efforts may completely fail, and such injury is not compensable in money damages.

28.     As a result of these concerns, I am seeking entry of a temporary restraining order to temporarily enjoin creditors of Corporación Durango from initiating or continuing any action in the U.S. in respect of Corporación Durango, the Mexican Subsidiary Guarantors, the Officers and Directors and/or their assets pending a hearing on the request for injunctive relief set forth in the Petition. I am also seeking a preliminary and permanent injunction because the likelihood of irreparable harm is certain.

29.     I fully anticipate that Corporación Durango will be able to structure and consummate a successful plan of reorganization under the Mexican Business Reorganization Act.

30.     I believe that the entry of a temporary restraining order would pose little, if any, harm upon parties opposing the issuance of the temporary restraining order, preliminary or

permanent injunction because the scope of any such injunction would be limited to the territorial jurisdiction of the U.S. and such parties would be free to seek available relief in Mexico. Corporación Durango will continue to preserve its business as a going concern. Thus, it is not as if the assets of Corporación Durango will be irretrievably depleted to the detriment of the creditors. On the other hand, I believe that Corporación Durango will be irreparably harmed should creditors commence actions against Corporación Durango and the Mexican Subsidiary Guarantors in the U.S. As such, the balance of harms weighs heavily in favor of issuing the preliminary injunction.

**STATEMENT PURSUANT TO**
**SECTION 1515(c) OF THE BANKRUPTCY CODE**

31.     I am informed that section 1515(c) of the Bankruptcy Code provides that "[a] petition for recognitions shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative."

32.     In compliance with section 1515(c) of the Bankruptcy Code, I hereby declare that the only foreign proceeding (as such term is defined in section 101(23) of the Bankruptcy Code) pending with respect to Corporación Durango that is known to me is the Concurso Proceeding.

**LIST PURSUANT TO**
**INTERIM BANKRUPTCY RULE 1007(a)(4)**

33.     I am informed that Interim Bankruptcy Rule 1007(a)(4) provides as follows:

> Unless the court orders otherwise, a foreign representative filing a petition for recognition under chapter 15 shall file with the petition a list containing the name and address of all administrators in foreign proceedings of the debtor, all parties to any litigation in which the debtor is a party and that is pending in the United States at the time of the filing of the petition, and all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

9

34.     In compliance with Interim Bankruptcy Rule 1007(a)(4), I hereby provide the following lists:

### Administrators in the Concurso Proceeding

As noted above, the Concurso Proceeding was commenced through the filing of the Voluntary Petition in the Durango District Court earlier today.  As such, administrators have yet to be appointed.  This list will be supplemented as soon as practicable, but no later than five (5) business days following the appointment of any administrator in the Concurso Proceeding.

### Parties to Litigation in the United States

As of the date of this Declaration, Corporación Durango is not a party to any litigation pending in the United States of which I am aware.

### Entities Against Whom Provisional Relief is Sought under Section 1519

Concurrently herewith, Corporación Durango has commenced an adversary proceeding seeking a temporary restraining order and preliminary injunctive relief against the indenture trustee for the Senior Notes, Law Debenture Trust Company of New York, certain unknown holders of the Senior Notes and other creditors of Corporación Durango generally.

MIAMI 796166 (2K)

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Dated:  October 6, 2008
       Mexico City, Mexico

_____
Gabriel Villegas Salazar

CORPORACIÓN DURANGO, S.A.B. DE C.V.
CONSEJO DE ADMINISTRACIÓN

## Constancia de resoluciones adoptadas por unanimidad de votos fuera de Sesión

Gabriel Villegas Salazar, Secretario del Consejo de Administración de Corporación Durango, S.A.B de C.V., (en adelante la ("Sociedad") hace constar que las siguientes resoluciones adoptadas por unanimidad de votos de la totalidad de los miembros del Consejo de Administración de la Sociedad, han sido confirmadas por escrito a la fecha de esta constancia, los cuales se encuentran depositados en la oficina de la propia Secretaría:

## RESOLUCIONES

**Primera.-** Se autoriza a la Sociedad a que presente aquellas solicitudes o peticiones que los apoderados posteriormente designados estimen necesarias, convenientes o recomendables, a fin de remediar la situación financiera de la Sociedad y de sus subsidiarias y/o afiliadas, a través de los procedimientos de concurso mercantil, reorganización, quiebra o bancarrota a los que se refiere el Código de Bancarrotas (*"Bankruptcy Code"*) de los Estados Unidos de América y/o conforme a la Ley de Concursos Mercantiles de los Estados Unidos Mexicanos (en adelante "México"), incluyéndose enunciativa, mas no limitativamente, los procedimientos a que se refieren los capítulos 11 y 15 (*"Chapter 11" y "Chapter 15"*) del Código de Bancarrotas de los Estados Unidos de América (en adelante los "Procedimientos"), ya que este Consejo de Administración considera que dichos Procedimientos son del mayor interés y beneficio para la Sociedad, sus acreedores, accionistas y demás partes interesadas.

**Segunda.-** Sin perjuicio de los poderes generales que la Sociedad ha otorgado a diversas personas y que no hayan sido revocados o limitados y continúen en pleno vigor a la fecha de ejecución respectiva, se autoriza a los señores Miguel Rincón Arredondo, Mayela Rincón de Velasco, Gabriel Villegas Salazar, José Alfredo Velasco Najar, Carlos Orozco Rentaría, Antonio Díaz de León Mena y Wilfrido Rincón Cardoza (en adelante los "Apoderados Designados") para que conjunta o separadamente, cualquiera de ellos, tramite los Procedimientos y otorgue y suscriba las peticiones o solicitudes a que se refiere la resolución anterior y ordene su presentación ante la Corte de Bancarrotas de los Estados Unidos de América (*"United States Bankruptcy Court"*) con jurisdicción en cualesquiera de los distritos de los Estados Unidos de América que los Apoderados Designados determinen en su oportunidad, así como en los Juzgados, Tribunales o Cortes de México en el que los Apoderados Designados determinen presentar dichas solicitudes o peticiones, en su caso. Adicionalmente, se designa, autoriza y otorgan las más amplias facultades a



Gabriel Villegas Salazar, funcionario de la Sociedad, para que actúe como representante en el extranjero (en adelante el "Representante en el Extranjero")*("Foreign Representative")* de la Sociedad y de sus bienes y derechos, con relación a los Procedimientos que se llevarán a cabo en los Estados Unidos de América, incluyéndose, enunciativa mas no limitativamente, el otorgamiento y firma de todas y cada una de las acciones, peticiones y presentaciones relacionadas con el procedimiento a que se refiere el Capítulo 15 (*"Chapter 15"*) del Código de Bancarrotas de los Estados Unidos de América, ante cualquier Corte de Bancarrotas de los Estados Unidos de América en las que el Representante en el Extranjero determine hacerlo en su oportunidad.

**Tercera.-** Se autoriza a cualquiera de los Apoderados Designados para que, conjunta o separadamente, suscriban y presenten toda clase de demandas, recursos, apelaciones, peticiones, solicitudes, pruebas, anexos, listas y cualquier otro documento o promoción, así como para que realicen todas y cada una de las acciones que estimen necesarias o apropiadas (los "Actos") con relación a los Procedimientos, y para dichos efectos se autoriza a los Apoderados Designados para que contraten a todos los asesores legales o de cualquier otra índole, tales como asesores financieros, en comunicaciones y relaciones con inversionistas, banqueros de inversión, contadores, y expertos en reestructuras, entre otros, (las "Contrataciones") y que los Apoderados Designados consideren necesario o apropiado contratar para la mejor resolución de los Procedimientos, conforme a los términos y condiciones que los propios Apoderados Designados aprueben en su oportunidad. Específicamente, se autoriza al Representante en el Extranjero para que realice los Actos y las Contrataciones, con respecto a los Procedimientos que se llevarán a cabo en los Estados Unidos de América, incluyéndose enunciativa, mas no limitativamente, los procedimientos a que se refiere el Capítulo 15 (*"Chapter 15"*) del Código de Bancarrotas de dicho país.

**Cuarta.-** Se autoriza conjunta o separadamente a cualquiera de los Apoderados Designados y específicamente al Representante en el Extranjero en el caso de actuaciones en los Estados Unidos de América, para que en nombre y representación de la Sociedad y en conexión al inicio de los Procedimientos, a negociar, suscribir y otorgar programas de crédito o préstamo, incluyéndose, enunciativa, mas no limitativamente, créditos de deudor en posesión (*"debtor in possession loan facility"*) o cualquier otro tipo de apoyo crediticio o para la mejora financiera de la Sociedad (incluyéndose a ese respecto la suscripción o otorgamiento de aquellos valores, títulos de crédito, contratos de garantía y cualquier otro acuerdo o instrumento que los Apoderados Designados consideren conveniente o apropiado suscribir u otorgar) en los términos y condiciones que dichos Apoderados Designados consideren necesario, apropiado o deseable, incluyéndose el otorgamiento de garantías, supraprioridades por reclamaciones administrativas (*"superpriority chapter 11 administrative claims"*) y la garantía de obligaciones de cualquier subsidiaria o afiliada o cuya terminación sea evidenciada en forma concluyente mediante la ejecución de dicha acción, así como la consumación de las transacciones contempladas, por dichos acuerdos o instrumentos en nombre de la Sociedad y/o la presentación de los recursos o apelaciones que se consideren necesarias, con las autoridades ante las que se siga el Procedimiento.

2

**Quinta.**- Se ratifican, confirman y aprueban todos los actos y acciones que conforme a las leyes de México y de los Estados Unidos de América, se efectúen o tomen por cualquiera de los Apoderados Designados o por el Representante en el Extranjero, con relación a la presentación de los Procedimientos o en cualquier otra forma relacionada con los mismos.

**Sexta.**- Se autoriza conjunta o separadamente a cualquiera de los Apoderados Designados y específicamente al Representante en el Extranjero en el caso de actuaciones en los Estados Unidos de América, para que a nombre y representación de la Sociedad tomen o causen que se tomen todas y cada una de las acciones adicionales que a su juicio resulten necesarias, apropiadas o recomendables y para que ejecuten y otorguen o causen que se ejecuten u otorguen todos los demás acuerdos, convenios, contratos, certificaciones y demás documentos que suscribirá la Sociedad o cualesquiera de sus subsidiarias o afiliadas, así como el que se incurra en todos los gastos y honorarios que a su juicio resulten necesarios o convenientes, a fin de dar plena vigencia a todas y cada una de las resoluciones aquí adoptadas.

**Séptima.**- Para todos los efectos legales a que haya lugar, el Consejo de Administración acuerda **OTORGAR** a los Apoderados Designados, Miguel Rincón Arredondo, Mayela Rincón de Velasco, Gabriel Villegas Salazar, José Alfredo Velasco Najar, Carlos Orozco Rentaría, Antonio Díaz de León Mena y Wilfrido Rincón Cardoza, (i) **PODER GENERAL PARA PLEITOS Y COBRANZAS Y ACTOS DE ADMINISTRACION**, delegable y sustituible y para ejercerse conjunta o separadamente por cualquiera de ellos, en términos del primero y segundo párrafos del artículo 2,554 del Código Civil para el Distrito Federal y sus correlativos en el Código Civil de cada uno de los Estados de la República Mexicana, (ii) **PODER PARA SUSCRIBIR TÍTULOS DE CRÉDITO**, conforme a lo establecido en las fracciones I y II del artículo 9 de la Ley General de Títulos y Operaciones de Crédito y en el entendido que, en forma enunciativa, mas no limitativa, los Apoderados Designados podrán avalar, endosar, recibir pagos, protestar, aceptar para su pago, pagar, cambiar, ceder y en general realizar cualquier otro acto relacionado, ya sea que los títulos de crédito hayan sido emitidos por la propia Sociedad o por terceros, así como celebrar toda clase de operaciones de crédito, que en forma enunciativa y no limitativa, podrán consistir en contratos de crédito Refaccionarios, de Habilitación o Avío, Simples, Prendarios, Hipotecarios o de cualquier otra índole, así como para constituir fideicomisos de cualquier género o cauciones bursátiles, otorgando y recibiendo toda clase de garantías que, en forma enunciativa y no limitativa, podrán consistir en hipotecas, prendas, fianzas, avales o cauciones de obligaciones contraídas por la propia Sociedad o por terceros; por lo que para el ejercicio de las facultades señaladas, bastará simple declaración escrita dirigida al tercero con quien se contrate o la inscripción de estas resoluciones en el Registro Público de Comercio correspondiente. Todo lo anterior, LIMITADO a la ejecución de las resoluciones antes aprobadas y de los actos y/o actividades que de ellas deriven.

**Octava.**- Se designa a los señores licenciados Gabriel Villegas Salazar y Antonio Díaz de León Mena, para que, en caso de ser necesario o conveniente, indistintamente cualquiera de

ellos, certifique copias, acuda ante el Notario Público de su elección a efecto de que sea protocolizada la constancia que se elabore de estas resoluciones fuera de sesión y la inscriba en el Registro Público de Comercio que corresponda, así como para realizar cualquier otra gestión necesaria o conveniente a fin de formalizar las resoluciones antes trascritas.

Gabriel Villegas Salazar
Secretario del Consejo de Administración
Corporación Durango, S.A.B. de C.V.
Durango, Dgo. a 1 de octubre de 2008

4

**Record of resolutions adopted out of the meeting
by unanimity of votes**

Gabriel Villegas Salazar, Secretary of the Board of Directors of Corporacion Durango, S. A. B de C. V., (hereinafter the "Corporation") hereby certifies that the following resolutions adopted by unanimous votes of the entire members of the Corporation's Board of Directors, have been confirmed in writing as of this record date, which have been deposited in the Secretary's office:

**RESOLUTIONS**

**First**.- The Corporation is hereby authorized to file those applications or requests that the attorneys in fact, Designated below, deem necessary, convenient or advisable, in order to remedy the financial situation of the Corporation and its subsidiaries and/or affiliates, through the bankruptcy proceeding (concurso mercantil), reorganization or bankruptcy provided by the United States Bankruptcy Code and/or the Bankruptcy Proceeding Law (Concurso Mercantil) of the United Mexican States (hereinafter "Mexico"), including enunciatively but not restrictively, the procedures referred to in Chapter II and Chapter 15 of the United States Bankruptcy Code (hereinafter the "Proceedings"), because this Board of Directors considers that such Proceedings are of more interest and benefit for the Corporation, its creditors, shareholders and other interested parties.

**Second**.- Without prejudice to the general powers of attorney that the Corporation has granted to several individuals, which have not been revoked or limited and are still in full force and effect as of the corresponding execution date, Messrs: Miguel Rincon Arredondo, Mayela Rincon de Velasco, Gabriel Villegas Salazar, Jose Alfredo Velasco Najar, Carlos Orozco Rentaria, Antonio Diaz de Leon Mena and Wilfrido Rincon Cardoza (hereinafter the "Designated Attorneys in Fact") are authorized herein, either jointly or separately, and any of them, to conduct the Proceedings and to grant and subscribe the requests or applications referred to in the preceding resolution and to order their filing in the United States Bankruptcy Court with jurisdiction in any of the United States of America districts that the Designated Attorneys in Fact determine in due time, as well as in the Mexican Courts where the Designated Attorneys in Fact determine to file such applications or petitions, as the case may be. In addition, Gabriel Villegas Salazar, officer of the Corporation, is designated, authorizing and granting him full faculties to act as foreign representative (hereinafter the "Foreign Representative") of the Corporation and of its properties and rights, in relation to the Proceedings that will take place in the United

States of America, including enunciatively but not restrictively, the granting and subscription of each and all the actions, requests and presentations related to the proceeding referred to in Chapter 15 of the United States Bankruptcy Code, in any United States Bankruptcy Court where the Foreign Representative determines to do so in due time.

**Third**.- Each of the Designated Attorneys in Fact is authorized herein so that either jointly or separately, subscribes and files all kind of complaints, remedies, appeals, petitions, applications, proofs, exhibits, lists and any other document or promotion, as well as to conduct each and all the actions deemed necessary or appropriate (the "Acts") in relation to the Proceedings, and for such purposes the Designated Attorneys in Fact are authorized herein to contract all the legal advisers or consultants of any other kind, such as financial advisers, in communications and relationships with investors, investment bankers, accountants and restructuring experts, among others, (the "Contracting") that the Designated Attorneys in Fact deemed necessary or appropriate to contract for the best resolution of the Proceedings, according to the terms and conditions that the own Designated Attorneys in Fact approve in due time. Specifically, the Foreign Representative is authorized to conduct all the Acts and Contracting, in relation to the Proceedings that will take place in the United States of America, including enunciatively but not restrictively, the proceedings referred to in Chapter 15 of the United States Bankruptcy Code.

**Fourth**.- On behalf of the Corporation and in relation to the initiation of the Proceedings, any of the Designated Attorneys in Fact, and specifically the Foreign Representative regarding the procedures in the United States of America, is authorized to negotiate, subscribe and grant credit or loan programs, including enunciatively but not restrictively, debtor in possession loan facility or any other kind of loan support or for the Corporation's financial improvement (including in this respect the subscription and granting of those securities, credit instruments, security agreements and any other agreement or instrument that the Designated Attorneys in Fact deem convenient or appropriate to subscribe or grant) under the terms and conditions that such Designated Attorneys in Fact deem necessary, appropriate or advisable, including the granting of securities, super priority chapter 11 administrative claims and the debentures collateral of any subsidiary or affiliate or which termination is evidenced on a conclusive basis through the execution of such action, as well as the completion of the transactions provided by such agreements or instruments on behalf of the Corporation and/or the filing of the remedies or appeals deemed necessary, with the authorities where the Proceedings are followed.

**Fifth**.- All the acts and actions that under the laws of Mexico and the United States of America are undertaken or adopted by any of the Designated Attorneys in Fact or by the Foreign Representative, in relation to the filing of the Proceedings or otherwise related thereto, are hereby ratified, confirmed and approved.

**Sixth**.- Each of the Designated Attorneys in Fact and specifically the Foreign Representative in relation to the procedures in the United States of America, is authorized,

either jointly or separately and on behalf of the Corporation, to adopt or to cause to be adopted each and all the additional actions that in his/her opinion are necessary, appropriate or advisable and to execute and grant or cause to be executed or granted all other settlements, agreements, contracts, certifications and other documents that the Corporation or any of its subsidiaries or affiliates shall subscribe, as well as to incur in all the expenses and fees in his/her opinion are necessary or convenient, in order enforce each and all the resolutions adopted herein.

**Seventh.-** For all the legal purposes deemed convenient, the Board of Directors resolves to **GRANT** to the Designated Attorneys in Fact, Miguel Rincon Arredondo, Mayela Rincon de Velasco, Gabriel Villegas Salazar, Jose Alfredo Velasco Najar, Carlos Orozco Rentaria, Antonio Diaz de Leon Mena and Wilfrido Rincon Cardoza, (i) **GENERAL POWER OF ATTORNEY FOR LAWSUITS AND COLLECTION AND ACTS OF ADMINISTRATION**, delegable and substitutable and to be exercised either jointly or separately by any of them, as provided by the first and second paragraphs of Article 2,554 of the Civil Code for the Federal District and its correlated Civil Codes for each of the States of the Mexican Territory; (ii) **POWER OF ATTORNEY TO SUBSCRIBE CREDIT INSTRUMENTS**, as provided by Article 9 items I and II of the General Law of Credit Instruments and Transactions, understanding that, enunciatively but not restrictively, the Designated Attorneys in Fact might guarantee, endorse, receive payments, protest, accept for payment, pay, change, assign and, in general, conduct any other related act, either if the credit instruments had been issued by the own Corporation or by third parties, as well as to execute all kind of credit transactions, which enunciatively but not restrictively, might consist of fixed assets loan, working capital loan, simple, pledge, mortgage or any other kind of contracts, as well as to constitute any kind of trusts or stock market securities, granting and receiving all kind of securities which, enunciatively but not restrictively, might consist of mortgages, pledges, bonds, special guarantees, or securities of obligations acquired by the own Corporation or by third parties; therefore, to exercise the already mentioned faculties, a simple statement addressed to the contracting third party or the registration of these resolutions in the corresponding Public Registry of Commerce shall be sufficient. All the above mentioned shall be LIMITED to the execution of the above approved resolutions and to the acts and/or activities derived thereof.

**Eighth.-** Messrs. Gabriel Villegas Salazar and Antonio Diaz de Leon Mena are Designated, so that if necessary or convenient, any of them indistinctively, might certify copies with the Notary Public of their election, in order to legalize the record issued of these out of meeting resolutions and for the registration thereof in the corresponding Public Registry of Commerce, as well as to conduct any other procedure necessary or convenient to legalize the above quoted resolutions.

Gabriel Villegas Salazar
Secretary of the Board of Directors
Corporacion Durango, S. A. B. de C. V.
Durango, Dgo. , October 1, 2008

Numero de registro: 000002/2008
Fecha de recibido: Lunes, 06/Oct/2008             Hora de recibido: 10:50 Hrs.
Fecha de turno: Lunes, 06/Oct/2008              Hora de turno: 10:53 Hrs.

Turnado al: JUZGADO PRIMERO DE DISTRITO EN EL ESTADO DE DURANGO.

Actor: CORPORACION DURANGO SAB DE CV

Demandado: ***

Tipo de Juicio: ***
No. copias: 3
Descripción anexos: DOCUMENTOS           No.de anexos: 10
Autorizado Representante: GABRIEL VILLEGAS SALAZAR
Materia: CONCURSO MERCANTIL

FICINA DE CORRESPONDENCIA COMÚN
DE LOS JUZGADOS DE DISTRITO
EN EL ESTADO DE DURANGO

- 6 OCT. 2008

Recibido a las _10:50_ hrs.

con _original y 3 copias_
_10 anexos._

**CORPORACIÓN DURANGO, S.A.B. DE C.V.**

<u>**SOLICITUD DE CONCURSO MERCANTIL**</u>

**C. JUEZ DE DISTRITO EN MATERIA CIVIL EN TURNO EN DURANGO, DURANGO.**

    **GABRIEL VILLEGAS SALAZAR**, en representación de **CORPORACIÓN DURANGO, S.A.B. DE C.V.**, personalidad que acredito en capítulo posterior de este ocurso, señalando como domicilio para oír y recibir notificaciones el ubicado en la calle Potasio Número 150, Colonia Ciudad Industrial, Durango, Durango, Código Postal 34208, autorizando para que las reciban, así como para recoger todo tipo de documentos y valores en términos del artículo 1069 del Código de Comercio, de aplicación supletoria a la Ley de Concursos Mercantiles, a los licenciados en Derecho FERNANDO DEL CASTILLO ELORZA (Cédula Profesional 1878951), CARLOS ARTURO OLVERA FERRER (Cédula Profesional número 1620393), GABRIELA GUADALUPE MEZA DÍAZ DE LEÓN (Cédula Profesional 3720580), CARLOS RODRIGO MONTES FLORES (Cédula Profesional número 3854674), ROBERTO FERNÁNDEZ DEL VALLE MITTENZWEY (Cédula Profesional número 4096751), FAVIO CAMILO VÁZQUEZ LÓPEZ (Cédula Profesional número 3999969), PATRICIA IZQUIERDO PIÑA (Cédula Profesional número 4209284), CECILIA FLORES RUEDA (Cédula Profesional 3298793), FERNANDO ESPINOSA ASCARRAGA (Cédula Profesional en trámite) y ANTONIO DÍAZ DE LEÓN MENA (Cédula Profesional 2717505) y ALFREDO BRACHO BARBOSA únicamente para oír y recibir notificaciones, así como para recibir toda clase de documentos y valores, e imponerse de autos, a los señores CHRISTIAN JOSUÉ LEO VARELAS, CARLOS RAFAEL BREHM TINOCO, JOSÉ GABRIEL MENDOZA GONZÁLEZ, ADRIANA PADILLA RÍVAS y CARLOS ANDRÉS BRAMBILA CHIMÉS indistintamente, ante Usted, con el debido respeto, comparezco para exponer:

## CAPITULO DE PERSONALIDAD

    El suscrito Gabriel Villegas Salazar es apoderado para pleitos y cobranzas así como para actos de administración de **Corporación Durango, S.A.B. de C.V.**, según lo acredito con la copia certificada del primer testimonio de la escritura

pública número 1302 del volumen 49 de fecha 23 de febrero de 2007, pasada ante la fe del Lic. Humberto Nevárez Lara, Notario Público número 2 de la ciudad de Lerdo, quedando inscrito bajo el folio mercantil número 1209 * 1 de fecha 26 de febrero de 2007 en el Registro Público de la Propiedad y del Comercio de Durango Durango. Dicho documento adjunto se exhibe como **Anexo 1).**

Atentamente solicito a su Señoría que dicha personalidad me sea reconocida en términos de la copia certificada del testimonio aludido.

## SOLICITUD DE CONCURSO MERCANTIL

Con fundamento en lo dispuesto por los artículos 1, 2, 3, 7, 9, 10, 11, 15, 17, 20, 21, 24 y demás relativos y aplicables de la Ley de Concursos Mercantiles, vengo a solicitar se declare en Concurso Mercantil a la sociedad denominada **Corporación Durango, S.A.B. de C.V.**, dado que se encuentra, de manera general, en incumplimiento generalizado en el pago de sus obligaciones y de manera particular, ubicada en el supuesto previsto por la fracción II del artículo 10 de la Ley de Concursos Mercantiles.

Para los efectos legales a que haya lugar, manifiesto que esta solicitud la realiza el propio comerciante.

En cumplimiento a lo dispuesto por el artículo 20 de la Ley de Concursos Mercantiles, a continuación señalo:

## I. DENOMINACIÓN, DOMICILIOS SOCIALES Y DE LAS OFICINAS DEL COMERCIANTE.

**Corporación Durango, S.A.B. de C.V.**, tiene su domicilio social en Durango, Estado de Durango, según consta en el primer testimonio de la escritura pública número 3,584 de fecha 1° de julio de 2003, pasada ante la fe del Lic. Vicente Guerrero Romero, Notario Público número Uno de Durango, Durango, inscrita en el Registro Público de la Propiedad y del Comercio de Durango. Dicho documento se exhibe como **Anexo 2).**

Su administración, oficinas y establecimientos principales se encuentran ubicados en la calle de Potasio Número 150, Colonia Ciudad Industrial, Durango, Durango, Código Postal 34208.

La sociedad no cuenta con otro establecimiento, ni plantas, almacenes o bodegas.

## II. ESTADOS FINANCIEROS.

En términos de lo dispuesto por la fracción I del artículo 20 de la Ley de Concursos Mercantiles, acompañamos a este escrito los estados financieros auditados de **Corporación Durango, S.A.B. de C.V.**, por los años 2005, 2006 y 2007 identificados como **Anexos 3), 4)** y **5)**, respectivamente.

## III. MEMORIA SOBRE LAS CAUSAS DEL INCUMPLIMIENTO DE LAS OBLIGACIONES DEL COMERCIANTE.

### III.1 ANTECEDENTES CORPORATIVOS.

La asamblea general extraordinaria de accionistas celebrada el 8 de diciembre de 2006, modificó íntegramente los estatutos sociales de **Corporación Durango, S.A.B. de C.V.** Lo anterior se acredita con copia certificada de la escritura pública número 1,172, del volumen 43, de fecha 12 de diciembre de 2006, pasada ante la fe del Lic. Humberto Nevárez Lara, Notario Público número Dos de ciudad Lerdo, Durango, inscrita en el folio mercantil electrónico 1209*1 en el Registro Público de la Propiedad y del Comercio de Durango. Dicho documento se exhibe como **Anexo 6).**

La asamblea general extraordinaria de accionistas celebrada el 23 de mayo de 2008, modificó el artículo seis de los estatutos sociales de **Corporación Durango, S.A.B. de C.V.**, referente a la integración del capital social. Lo anterior se acredita con copia certificada de la escritura pública número 1,883 del volumen 72, de fecha 26 de mayo de 2008, pasada ante la fe del Lic. Humberto Nevárez Lara, Notario Público número Dos de ciudad Lerdo, Durango, inscrita en el folio mercantil electrónico 1209*1 en el Registro Público de la Propiedad y del Comercio de Durango. Dicho documento se exhibe como **Anexo 7).**

### III.2 MEMORIA SOBRE LAS CAUSAS DE INCUMPLIMIENTO.

Como resultado de diversos problemas económicos y financieros, el 18 de mayo de 2004 **Corporación Durango, S.A.B. de C.V.**, promovió una solicitud de concurso mercantil. En dicho procedimiento logró la reestructura de sus adeudos, y a través de la suscripción con la mayoría de sus acreedores de un convenio concursal que fue aprobado, salió del concurso mercantil el 7 febrero de 2005. Este convenio fue íntegramente pagado por **Corporación Durango, S.A.B. de C.V.** el 5 de octubre de 2007.

Al principio, el plan de negocios y de reestructura de la compañía había funcionado satisfactoriamente, no obstante tener una estructura de alto apalancamiento financiero, pero con una economía en crecimiento que permitía generar un flujo de efectivo para cumplir con sus compromisos financieros.

Las subsidiarias de **Corporación Durango, S.A.B. de C.V.** se dedican a la fabricación y venta de papel, cartón y cajas de cartón en México y en los Estados Unidos de América.

Las perspectivas para **Corporación Durango, S.A.B. de C.V.** empezaron a cambiar a partir del mes de noviembre de 2007 cuando la economía de México y de su principal socio comercial, los Estados Unidos de América, iniciaron una de las más difíciles recesiones económicas de las últimas décadas, que puso en evidencia las debilidades de la apalancada industria papelera internacional y su alta sobrecapacidad instalada de producción, así como la gran fragilidad de los mercados internacionales de capital y deuda.

Como resultado de esta recesión económica, la industria papelera internacional entró en crisis y su rentabilidad se desplomó, acompañada de una fuerte caída en la demanda y en sus precios y un incremento desbordado en el costo de sus materias primas y energéticos.

La materia prima fundamental para las subsidiarias de **Corporación Durango, S.A.B. de C.V.** es el papel reciclado, cuyo precio ha aumentado en **aproximadamente 27%** del **segundo trimestre de 2007** al **segundo trimestre de 2008.**

El desajuste de la economía mundial por el petróleo ha ocasionado el incremento de los energéticos en **aproximadamente 52%** lo que aunado al incremento en las materias primas, ha traído como consecuencia el alza en los costos para la fabricación de papel y cartón, mismos que por una desmedida competencia, no se han podido trasladar al consumidor.

Como consecuencia, nuestros clientes han disminuido considerablemente el consumo de los productos que elaboran las subsidiarias de **Corporación Durango, S.A.B. de C.V**

El panorama mundial de la crisis del petróleo no tiene una sencilla solución e implica el incremento de otros productos lo que ha desatado una crisis mundial en la industria papelera y de cartón.

Siendo la papelera una industria global, sus efectos han afectado severamente a las subsidiarias de **Corporación Durango, S.A.B. de C.V.,** cuya situación se agravó por las siguientes razones:

1) La sobrevaluación de la moneda mexicana, que reduce la competitividad de la empresa al volver más baratos los productos importados principalmente de los E.U.A.

2) La reducción de la demanda de productos de su cliente número uno, la industria manufacturera.

3) La imposibilidad, en una economía débil, de trasladar los aumentos de costos.

4) La imposibilidad de absorber los altos costos fijos propios de una empresa con deudas extraordinarias.

5) La necesidad, durante los últimos años de refinanciar la deuda, aceptando pagar tasas de interés muy altas, y condiciones de crédito gravosas, dado el perfil financiero de la compañía y los factores de riesgo de la economía del país.

Como resultado de lo anterior, la generación de utilidad de operación antes de intereses, impuestos, depreciación y amortización (UAFIRDA) de la empresa pasó de $ 80.5 millones de dólares en el 2005 a **$119.0** millones en el 2006, a **$101.2** millones en el 2007 y a **$21.3** millones en los primeros 6 (seis) meses de 2008.

Es importante considerar que en los próximos meses **Corporación Durango, S.A.B. de C.V.,** tendrá que cumplir diversas obligaciones que representan una gran cantidad de dinero; estas obligaciones están principalmente relacionadas al pago de intereses que, con el flujo actual de efectivo, son imposibles de cumplir del modo en que fueron pactadas y del modo en que serán exigibles.

**Corporación Durango, S.A.B. de C.V.,** pretende llevar a cabo una reestructura financiera integral de la compañía, que permita la viabilidad sustentable de la empresa en los diferentes escenarios y ciclos de la economía y de la industria papelera.

Es por lo anterior que **Corporación Durango, S.A.B. de C.V.** ha decidido recurrir al Concurso Mercantil a fin de lograr una reestructura de sus pasivos de manera ordenada a efecto de continuar operando en el mercado papelero y sanear su situación financiera actual.

## IV. RELACIÓN DE ACREEDORES.

En cumplimiento a la fracción III del artículo 20 de la Ley de Concursos Mercantiles, se anexa al presente ocurso la lista de acreedores de la solicitante, con indicación de nombres, domicilios, fecha de vencimiento, características particulares y grado en que se estima se deben reconocer, y en su caso las garantías de cada uno, como **Anexo 8).**

## V. RELACIÓN DE DEUDORES.

En cumplimiento a la fracción III del artículo 20 de la Ley de Concursos Mercantiles, se adjunta como **Anexo 9)** la lista de deudores de la solicitante, con indicación de nombres, domicilios, fecha de vencimiento, características particulares y garantías, en su caso.

## VI. INVENTARIOS.

En cumplimiento a la fracción IV del artículo 20 de la Ley de Concursos Mercantiles, el inventario de los bienes inmuebles y muebles, títulos valores, géneros de comercio y derechos de cualquier otra especie de la solicitante, se exhibe como **Anexo 10).**

## VII. OFRECIMIENTO DE OTORGAR LA GARANTÍA

De conformidad con lo dispuesto por la fracción VI del artículo 20 de la Ley de Concursos Mercantiles, mi representada se compromete a otorgar la garantía a que hace referencia el artículo 24 de la referida ley para el caso de que su Señoría admita a trámite la presente solicitud de concurso mercantil.

## VIII. SOLICITUD DE MEDIDA PRECAUTORIA.

Con fundamento en lo dispuesto por el segundo párrafo del artículo 26 de la Ley de Concursos Mercantiles, vengo a solicitar a su Señoría, se sirva dictar las providencias precautorias que considere necesarias a fin de evitar que se ponga en riesgo la viabilidad de la empresa con motivo de los procedimientos presentados o que se pudieren presentar, que tengan como objeto llevar a cabo

un procedimiento de ejecución en contra de los bienes de **Corporación Durango, S.A.B. de C.V.**, con detrimento de los diversos acreedores del Comerciante y con el propósito de salvaguardar el interés público previsto en el artículo primero de la mencionada ley.

La medida precautoria solicitada a su Señoría, consiste en la orden de suspensión de todo procedimiento de ejecución contra los bienes y derechos de mi representada, según lo prevé el artículo 37 de la Ley de Concursos Mercantiles, cuyo efecto es salvaguardar la buena marcha de la sociedad como una empresa en operaciones, los derechos de todos los acreedores con la conservación de los activos de la sociedad solicitante del Concurso Mercantil, así como el empleo de los trabajadores que actualmente prestan sus servicios en sus subsidiarias.

Fundan la presente solicitud de medida precautoria, lo dispuesto en los artículos 26 y 37 de la Ley de Concursos Mercantiles.

## D E R E C H O

Fundan la presente solicitud de Concurso Mercantil los artículos 1, 2, 3, 7, 9, 10, 11, 15, 17, 20, 21, 24, 26, 29, 30, 31, 32, 33, 37, y demás relativos y aplicables de la Ley de Concursos Mercantiles.

Por lo expuesto;
**A USTED C. JUEZ**, atentamente solicitamos:

**PRIMERO:** Tenerme por presentado en los términos de este escrito, con la personalidad que ostento y en representación de **Corporación Durango, S.A.B. de C.V.**, misma que solicito me sea reconocida en mérito de la copia certificada del testimonio de poder notarial exhibido.

**SEGUNDO:** Tenerme solicitando la declaración de Concurso Mercantil, para todos los efectos legales a que haya lugar, exhibiendo los anexos a que alude el artículo 20 de la Ley de Concursos Mercantiles.

**TERCERO:** Por encontrarse ajustada a derecho, decretar el auto admisorio de la solicitud de Concurso Mercantil.

**CUARTO:** Solicitar al Instituto de Especialistas en Concursos Mercantiles la intervención que le corresponda y particularmente la designación de Visitador.

**QUINTO:** En su oportunidad y previos los trámites de ley, decretar el Concurso Mercantil con los efectos legales correspondientes.

Protesto lo necesario
Durango, Durango a 6 de octubre de 2008

**GABRIEL VILLEGAS SALAZAR**

**CORPORACIÓN DURANGO, S.A.B. DE C.V.**

**PETITION OF BANKRUPTCY PROCEEDING**

**C. DISTRICT JUDGE IN CIVIL MATTER ON DUTY IN DURANGO, DURANGO.**

**GABRIEL VILLEGAS SALAZAR**, in representation of **CORPORACIÓN DURANGO, S.A.B. DE C.V.**, legal capacity that I credit in the subsequent chapter of the present petition, stating as address for the service of process to receive notices, the one located at the street Potasio No. 150, Colonia Ciudad Industrial, Durango, Durango, Código Postal 34208, authorizing to receive them, as well as to pick up all kinds of documents and securities under the terms of article 1069 of the Code of Commerce, of suppletory application to the Bankruptcy Law, to the Attorneys at Law, FERNANDO DEL CASTILLO ELORZA (Professional Certificate1878951), CARLOS ARTURO OLVERA FERRER (Professional Certificate number 1620393), GABRIELA GUADALUPE MEZA DÍAZ DE LEÓN (Professional Certificate 3720580), CARLOS RODRIGO MONTES FLORES (Professional Certificate number 3854674), ROBERTO FERNÁNDEZ DEL VALLE MITTENZWEY (Professional Certificate number 4096751), FAVIO CAMILO VÁZQUEZ LÓPEZ (Professional Certificate number 3999969), PATRICIA IZQUIERDO PIÑA (Professional Certificate number 4209284), CECILIA FLORES RUEDA (Professional Certificate 3298793), CHRISTIAN LAWRENT CRUZ CÓRDOVA (Professional Certificate 4506864) and FERNANDO ESPINOSA ASCARRAGA (Professional Certificate in progress) y ANTONIO DÍAZ DE LEÓN MENA (Professional Certificate number 2717505) and ALFREDO BRACHO BARBOSA and solely to hear and receive notices, as well as to receive all kinds of documents and securities, and to impose of writs to Messrs. CHRISTIAN JOSUÉ

LEO VARELAS, CARLOS RAFAEL BREHM TINOCO, JOSÉ GABRIEL MENDOZA GONZÁLEZ, ADRIANA PADILLA RIVAS and CARLOS ANDRÉS BRAMBILA CHIMÉS indistinctively, before You, with due respect I hereby appear to expose as follows:

## LEGAL CAPACITY CHAPTER

The subscribed Gabriel Villegas Salazar is an attorney in fact with faculties for litigation and collection and for acts of administration of **Corporación Durango, S.A.B. de C.V.,** as I herein credit it with the certified copy of the first testimony of the public document number 1302, volume 49 dated February 23 2007, attested by Humberto Nevárez Lara, Esq., Notary Public number 2 in and for the State of Durango, being the same filed under the mercantile folio number 1209*1 dated February 26, 2007 the Public Registry of Property and Commerce of Durango, Durango. You will find enclosed such document to the present as **Exhibit 1).**

I hereby attentively request to Your Honor to recognize such legal capacity under the terms of the certified copy of the testimony above quoted.

## PETITION OF BANKRUPTCY PROCEEDING

Grounded on the provided by articles 1, 2, 3, 7, 9, 10, 11, 15, 17, 20, 21, 24, and other related and applicable of the Bankruptcy Law, I hereby request to decree under bankruptcy proceeding to the corporation denominated **Corporación Durango, S.A.B. de C.V.**, since it is now, in general, on a generalized default status regarding the payment of its obligations and particularly, under the assumption provided by section II of article 10 of the Bankruptcy Law.

For the legal effects that may be applicable, I hereby state that this petition is made by the merchant.

In compliance with the provided by article 20 of the Bankruptcy Law, I hereby state the following:

## I. DENOMINATION, REGISTERED ADDRESSES AND OFFICES OF THE MERCHANT.

**Corporación Durango, S.A.B. de C.V.** registered address is in Durango, State of Durango, as evidenced in the first testimony of the public document number 3,584 dated July 1, 2003, attested by Vicente Guerrero Romero, Esq., Notary Public number One of Durango, Durango, filed in the Public Registry of Property and Commerce of Durango. Such document is hereby exhibited as **Exhibit 2).**

Its management area, offices and main establishments are located at the street of Potasio Number 150, Colonia Ciudad Industrial, Durango, Durango, Código Postal 34208.

The corporation does not have any other establishment, plant, storehouse or warehouse.

## II. FINANCIAL STATEMENTS.

Under the terms of the provided by item I of article 20 of the Bankruptcy Law, we hereby accompany to the present instrument the audited financial statements of **Corporación Durango, S.A.B. de C.V.**, for the years 2005, 2006 y 2007 identified as **Exhibits 3), 4)** and **5)**, respectively.

## III. MEMORY ON THE DEFAULTING CAUSES OF THE MERCHANT OBLIGATIONS.

**III.1 CORPORATE BACKGROUND.**

The Shareholders' Extraordinary Meeting held on December 8, 2006, totality modified the bylaws of **Corporación Durango, S.A.B. de C.V.** The previously stated is credited with certified copy of the public document number 1,172, of volume 43, dated December 12, 2006, attested by Humberto Nevárez Lara, Esq., Notary Public number Two of Ciudad Lerdo, Durango, filed under the electronic mercantile folio 1209*1 in the Public Registry of Property and Commerce of Durango. Such document is hereby exhibited as **Exhibit 6).**

The Shareholders' Extraordinary Meeting held on May 23, 2008, modified article sixth of the bylaws of **Corporación Durango, S.A.B. de C.V.,** referring to the integration of the capital stock. The previously stated is credited with certified copy of the public document number 1,883 of volume 72, dated May 26, 2008, attested by Humberto Nevárez Lara, Esq., Notary Public number Two of Ciudad Lerdo, Durango, filed under the electronic mercantile folio 1209*1 in the Public Registry of Property and Commerce of Durango. Such document is hereby exhibited as **Exhibit 7).**

**III.2 MEMORY ON THE DEFAULTING CAUSES.**

As a result of the several economic and financial problems, on May 18, 2004, **Corporación Durango, S.A.B. de C.V.**, promoted a petition of bankruptcy proceeding. In such proceeding it was able to restructure its debts and through the subscription of a creditor's agreement with the majority of its creditors, same that was approved, it went out of the bankruptcy proceeding on February 7, 2005. This agreement was paid in full by **Corporación Durango, S.A.B. de C.V.** on October 5, 2007.

At the beginning, the business and restructuring plan of the company worked satisfactorily, notwithstanding a high financial leverage structure, but with a growing economy that enabled the generation of cash flow to comply with its financial commitments.

The subsidiaries of **Corporación Durango, S.A.B. de C.V.** are engaged in the manufacture and sale of paper, cardboard and cardboard boxes in Mexico and in the United States of America.

The perspectives for **Corporación Durango, S.A.B. de C.V.** started changing since the month of November, 2007 when the economy of Mexico and its main commercial partner, the United States of America, started experiencing one of the most difficult economic recessions of the last decades, which evidenced the weaknesses of the leveraged international paper industry and its high production installed overcapacity, as well as the significant fragility of the capital and debt international markets.

As a result of this economic recession, the international paper industry experienced a crisis and its profitability collapsed, jointly with a strong drop in the demand and its prices and a run over increase in the cost of its raw materials and energetics.

The fundamental raw material for the subsidiaries of **Corporación Durango, S.A.B. de C.V.** is the recycled paper, which price has increased by approximately 27% as of the second quarter of 2007 to the second quarter of 2008.

The breakdown of the world economy derived from oil has provoked the increase of energetics by approximately 52%, which together with the increase in raw materials, has resulted in the increase of costs to manufacture paper and cardboard, same that due to the disproportionate competency, has not been transferred to the consumer.

Consequently, our clients have significantly decreased the consumption of the products elaborated by the subsidiaries of **Corporación Durango, S.A.B. de C.V**

The world panorama of oil crisis has no simple solution and it implies the increase of other products, which has given rise to a world crisis in the paper and cardboard industry.

Being the paper a global industry, its effects have severely affected the subsidiaries of **Corporación Durango, S.A.B. de C.V.,** which situation worsen due to the following reasons:

1) The overvaluation of the Mexican Currency which reduces the competitiveness of the company, because of the price reduction of the products imported, mainly from the U.S.A.

2) The decline of the products demand from its client number one: the manufacturing industry.

3) The impossibility, in a weak economy, to transfer the increases of costs.

4) The impossibility to absorb the high fixed costs of a company with extraordinary debts.

5) The need, during the last years, to refinance the debt, accepting to pay very high interest rates and expensive credit conditions, in view of the financial profile of the company and the risk factors of the economy of the country.

In view of the previously stated, the generation of operating profit, before interests, taxes, depreciation and amortization (UAFIRDA) of the company passed from the amount of $80.5 million dollars in 2005 to $119.0 millions in 2006 , to $101.2 millions in 2007 and to $21.3 millions during the first 6 (six) months of 2008.

It is important to consider that during the next months **Corporación Durango, S.A.B. de C.V.**, will have to comply with diverse obligations that represent a significant amount of money; these obligations are mainly related to the payment of interests which, with the present cash flow, are impossible to comply with as agreed and in the way that these will be demandable.

**Corporación Durango, S.A.B. de C.V.**, intends to carry out an integral financial restructure of the company, which allows the sustainable viability of the company in the different settings and cycles of the economy and the paper industry.

It is because of the previously stated that **Corporación Durango, S.A.B. de C.V.** has decided to resort to the bankruptcy proceeding in order to be able to restructure its liabilities in an orderly way so as to continue operating in the paper market and to correct its present financial situation.

## IV. LIST OF CREDITORS.

In compliance with item III of article 20 of the Bankruptcy Law, we attach to the present petition as **Exhibit 8)** the list of creditors of the petitioner, indicating the names, addresses, maturity date, particular characteristics and degree in which it estimates that they should be recognized and, as applicable, the guarantees of each of them**.**

## V. LIST OF DEBTORS.

In compliance with item III of article 20 of the Bankruptcy Law, we attach to the present petition as **Exhibit 9)** the list of debtors of the petitioner, indicating the names, addresses, maturity date, particular characteristics and as applicable, the guarantees of each of them.

## VI. INVENTORIES.

In compliance with item IV of article 20 of the Bankruptcy Law, we hereby enclose as **Exhibit 10),** the inventory of the real estate and personal properties, securities, types of commerce and rights of any other kind of the petitioner.

## VII. OFFER TO GRANT GUARANTEE

In agreement with the provided by item VI of article 20 of the Bankruptcy Law, my represented commits to grant the guarantee referred to by article 24 of the referred Law, in case that Your Honor admits to transact the present petition of bankruptcy proceeding.

## VIII. PETITION OF PRECAUTONARY MEASURES.

Grounded on the provided by the second paragraph of article 26 of the Bankruptcy Law, I hereby request to Your Honor, to please issue the precautionary measures you may deem convenient in order prevent that the viability of the company is endangered because of the proceedings filed or which may be filed, which object is to carry out a foreclosure proceeding against the goods of **Corporación Durango, S.A.B. de C.V.**, with detriment of the several creditors of the Merchant and with the purpose to safeguard the public interest provided by article first of the mentioned Law.

The precautionary measure requested to Your Honor consists of the suspension order of every foreclosure (execution) proceeding against the goods and rights of my represented, as provided by article 37 of the Bankruptcy Law, which effect is to safeguard the proper functioning of the corporation as an ongoing company in operation, the rights of all the creditors with the preservation of the goods of the corporation requesting the bankruptcy proceeding, as well as the employment of the workers who are presently rendering their services in its subsidiaries.

The present request of precautionary measures is grounded on the provided by articles 26 and 37 of the Bankruptcy Law.

**L A W**

The present request of bankruptcy proceeding is grounded on the provided by articles 1, 2, 3, 7, 9, 10, 11, 15, 17, 20, 21, 24, 26, 29, 30, 31, 32, 33, 37, and other related and applicable articles of the Bankruptcy Law.

Due to the above stated,

**TO YOU, HONORABLE JUDGE,** we hereby attentively request:

**FIRST:** To consider me as appeared under the terms of the present instrument, with the legal capacity that I have and in representation of **Corporación Durango, S.A.B. de C.V.**, same that I hereby request to be recognized in merit of the certified copy of the testimony of the notarized power of attorney exhibited.

**SECOND:** To consider me as requesting the determination of the bankruptcy proceeding, for all legal effects that may be applicable, disclosing the Exhibits referred to by article 20 of the Bankruptcy Law.

**THIRD:** Since it complies with the provided by the Law, to decree the writ of admission of the petition of bankruptcy proceeding.

**FOURTH:** To request to the Institute of Specialists in Bankruptcy Proceedings (Instituto de Especialistas en Concursos Mercantiles) the intervention that may be applicable and particularly the designation of the Judicial Inspector.

**FIFTH:** In due time and prior legal procedures, to decree the bankruptcy proceeding with the respective legal effects.

**I Protest as Necessary**

Durango, Durango October 6, 2008

**GABRIEL VILLEGAS SALAZAR**



# CORPORACIÓN DURANGO, S.A.B. DE C.V.
## and subsidiaries



Corporación
Durango, S.A.B. de C.V.
(Mexican Corporation)

| 99.96% | 99.99% | 99.62% | 99.99% | 99.99% | 99.99% | 100% |
|---|---|---|---|---|---|---|
| Porteadores de Durango S.A. de C.V. (Mexican Corporation) | Administración Corporativa de Durango, S.A. de C.V. (Mexican Corporation) | Empaques de Cartón Titán, S.A. de C.V. (Mexican Corporation) | Inmobiliaria Industrial Tizayuca, S.A. de C.V. (Mexican Corporation) | Ponderosa Industrial de México, S.A. de C.V. (Mexican Corporation) | Grupo Pipsamex S.A. de C.V. (Mexican Corporation) | Paper International, Inc (New Mexico Corporation) |

99.99% Recidajes Centauro S.A. de C.V. (Mexican Corporation)

99.99% Conicepa * (Mexican Corporation)

71.65% **(1)** Líneas Aéreas Ejecutivas de Durango, S.A. de C.V. (Mexican Corporation)

99.99% Empresas Titán, S.A. de C.V. (Mexican Corporation)

99.99% Servicios Industriales Tizayuca, S.A. de C.V. (Mexican Corporation)

99.99% Atensa S.A. de C.V. (Mexican Corporation)

99.99% Eyemsa Industrial S.A. de C.V. (Mexican Corporation)

99.99% Administración Industrial Centauro, S.A. de C.V. (Mexican Corporation)

99.99% Atenmex S.A. de C.V. (Mexican Corporation)

99.99% Ectsa Industrial S.A. de C.V. (Mexican Corporation)

99.99% Cartonpack Industrial S.A. de C.V. (Mexican Corporation)

99.99% Administradora Industrial Durango, S.A. de C.V. (Mexican Corporation)

99.99% Mexpape S.A. de C.V. (Mexican Corporation)

99.99% Fapatux S.A. de C.V. (Mexican Corporation)

99.99% Servicios Pipsamex S.A. de C.V. (Mexican Corporation)

99.99% Formatodo Industrial S.A. de C.V. (Mexican Corporation)

100% SummaFibers Inc. (Texas Corporation)

100% Durango McKinley Paper Company (New Mexico Corporation)

100% Fiber Management of Texas, Inc. (Texas Corporation)

\* Conicepa = Compañía Norteamericana de Inversiones
en Celulosa y Papel, S.A. de C.V.

(1)          16.19% is controlled through Corporación Durango, S.A.B. de C.V.

October, 2008