Dennis F. Dunne
Risa M. Rosenberg
Jeremy C. Hollembeak
MILBANK, TWEED, HADLEY & M^cCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Andrew M. Leblanc (*pro hac vice* pending)
MILBANK, TWEED, HADLEY & M^cCLOY LLP
1850 K Street, NW
Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

*Attorneys for Alejandro Francisco Sánchez-Mujica as
Foreign Representative of Vitro, S.A.B. de C.V.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>VITRO, S.A.B. de C.V.,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 10-_____ (___) |

**DECLARATION OF ALONSO RIVERA GAXIOLA,
AS MEXICAN COUNSEL TO VITRO, S.A.B. DE C.V.,
IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF
<u>FOREIGN MAIN PROCEEDING AND REQUEST FOR RELATED RELIEF</u>**

I, Alonso Rivera Gaxiola, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am the founding and majority partner in the Mexico-based law firm of Rivera Gaxiola y Asociados, S.C., located at Boulevard Manuel Ávila Camacho 32, Torre Esmeralda III, Piso 11, Colonia Lomas de Chapultepec, 11000, México, D.F. I hereby submit this declaration (this "<u>Declaration</u>") in support of the Verified Petition of Vitro, S.A.B. de C.V.

("Vitro SAB" or the "Debtor") for Recognition of Foreign Main Proceeding and Request for Related Relief (the "Verified Petition"), which is being filed contemporaneously herewith by Alejandro Francisco Sánchez-Mujica, the Debtor's duly authorized foreign representative, and which seeks entry of an order (i) recognizing a voluntary judicial reorganization proceeding (the "Mexican Proceeding") commenced on December 13, 2010 with respect to the Debtor under the Mexican Business Reorganization Act (as defined below) in the Federal District Court for Civil and Labor Matters for the State of Nuevo León (the "District Court of Nuevo León") as a "foreign main proceeding" pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and (ii) granting related relief pursuant to section 1520 of the Bankruptcy Code.

2. Although Spanish is my native language, I am fluent in English and have elected to execute and submit this Declaration in the English language.

3. In this Declaration, after describing my background and qualifications, I provide a description of the general structure of those provisions of the United States of Mexico's *Ley de Concursos Mercantiles*, as officially published in the *Diario Oficial de la Federación* on May 12, 2000 and amended (the "Mexican Business Reorganization Act"),[1] that are relevant to this Court's consideration of the Verified Petition. I then describe the status of the Debtor as the subject of a voluntary judicial reorganization proceeding pursuant to the Mexican Business Reorganization Act.

4. In preparing this Declaration, I have reviewed (i) the Verified Petition, (ii) the pleadings filed by Vitro SAB in the District Court of Nuevo León in connection with the

---

[1] The Spanish version of the Mexican Business Reorganization Act can be found on the Internet website of the Mexican Federal Institute of Business Reorganization Specialists ("IFECOM"), at http://www.ifecom.cjf.gob.mx/PDF/LCMyND/8.pdf.

Mexican Proceeding, and (iii) the Mexican Business Reorganization Act as it relates to chapter 15 of the Bankruptcy Code.

## BACKGROUND AND QUALIFICATIONS

5. Pertinent aspects of my legal background are as follows: I earned my law degree from the *Universidad Nacional Autónoma de México*, in Mexico City, in 1998. I am a co-founder of the law firm Rivera Gaxiola y Asociados S.C., and have been a practicing attorney with this firm since 2002. I have significant experience in corporate, civil, commercial, and administrative litigation in Mexico, as well as in Mexican and international arbitration. As part of my practice, I have been involved in several insolvency litigation proceedings under the Mexican Business Reorganization Act.

6. Since October 2008, I have represented and advised the Debtor with respect to a planned financial restructuring, and I am the counsel of record in the Mexican Proceeding. In addition to serving as the Debtor's insolvency and restructuring counsel with respect to the Mexican Proceeding, since November 2006 I have also advised the Debtor with respect to other corporate and litigation matters.

7. The Mexican Proceeding is summarized below.[2] All papers submitted by the Debtor in the Mexican Proceeding have been drafted by me or under my supervision.

## MEXICAN BUSINESS REORGANIZATION ACT
### (*LEY DE CONCURSOS MERCANTILES*)

**A. Overview of Pertinent Provisions of Mexican Business Reorganization Act**

8. The Mexican Business Reorganization Act, which went into effect on May 15, 2000, was intended to replace Mexico's 1943 *Ley de Quiebras y de Suspensión de Pagos*,

---

[2] The summary of the Mexican Proceeding herein is based either on public documents or on my personal knowledge. In preparing this Declaration, I have not relied on any confidential attorney-client communications or on confidential documents prepared in anticipation of litigation.

3

officially published in the *Diario Oficial de la Federación* on April 20, 1943.  The older law was frequently criticized for delays in concluding proceedings.

9.      The Mexican Business Reorganization Act expressly recognizes that it is "in the public interest to preserve companies and to prevent a general default in payment from risking their failure and the failure of other companies with which they have dealings."  (Mexican Business Reorganization Act, Art. 1.)  To that end, the Mexican Business Reorganization Act establishes a reorganization process similar to that which, as I understand, exists under chapter 11 of the Bankruptcy Code in the United States.

10.     As I understand the process of commencing a chapter 11 case under the Bankruptcy Code, a proceeding brought under the Mexican Business Reorganization Act is similarly commenced by the filing of a petition for business reorganization either by a debtor, a creditor, or a government official.  (See Mexican Business Reorganization Act at Art. 21.)  In Mexico, such a petition is filed in the federal district court (the "Mexican District Court") in the jurisdiction in which the debtor has its corporate domicile (*domicilio social*) or, in certain cases, in which the debtor has the principal management of its business.  (See Mexican Business Reorganization Act at Arts. 3, 17.)  Since Vitro has its corporate domicile and the principal management of its business in the city of San Pedro Garza García, Nuevo León, Vitro filed its petition and prepackaged restructuring plan with the Mexican District Court of Nuevo León on December 13, 2010.

11.     As opposed to a regular voluntary business reorganization proceeding, the filing of a petition and prepackaged restructuring plan under the Mexican Business Reorganization Act (a "Mexican Pre-Pack") excludes the commencement of an "auditing" process in which a court-appointed examiner (a "*visitador*") examines the company's books and records to determine if

4

the company satisfies the eligibility requirements to be a debtor as defined and required under the Mexican Business Reorganization Act. (See Mexican Business Reorganization Act at Arts. 10, 29-40, 341.) In lieu of this auditing process, the representative of a petitioner in a Mexican Pre-Pack must declare under penalty of perjury that the petitioner meets the thresholds provided for by the Mexican Business Reorganization Act to be declared eligible for a reorganization proceeding.

12. In a Mexican Pre-Pack, following the filing of a petition, a Mexican District Court will issue a "business reorganization judgment" determining whether the petition will be granted and the debtor admitted to a judicial reorganization proceeding. (See Mexican Business Reorganization Act at Art 341.) If the Mexican District Court grants a petition and admits a debtor to a judicial reorganization proceeding, a Mexican Pre-Pack thereafter follows the same rules as a regular voluntary business reorganization proceeding. (See Mexican Business Reorganization Act at Art. 342.)

13. Once a Mexican District Court grants a petition and admits a debtor to a reorganization proceeding, all actions by creditors to enforce judgments or otherwise seize the debtor's assets are automatically stayed. (See Mexican Business Reorganization Act at Art. 43, section IV; Art. 65.)[3] This automatic stay is analogous to the stay I understand is imposed upon the commencement of a chapter 11 case under the Bankruptcy Code.

---

[3] In relevant part, Article 65 of the Mexican Business Reorganization Act provides as follows:
> From the business reorganization judgment issue date to the end of the conciliation stage, no seizure or enforcement order may be executed against the Merchant's properties and rights.

Under the Mexican Business Reorganization Act, the term "Merchant" has the same meaning as the term "debtor" under the Bankruptcy Code.

14. Additionally, once a petition is granted and a case judicially recognized as a business reorganization proceeding, the case enters a "conciliation" stage and a conciliator (a "*conciliador*") is appointed. (See Mexican Business Reorganization Act at Art. 43, sections IV, V.) The conciliation stage is analogous to what I understand to be the exclusivity period under the Bankruptcy Code. A *conciliador* is a professional associated with the Federal Institute of Business Reorganization Specialists (the *Instituto Federal de Especialistas de Concursos Mercantiles,* or "IFECOM"), a branch of the Mexican federal judiciary. A *conciliador* is responsible for procuring an agreement between a debtor and its creditors, and is also responsible for proposing a plan of reorganization. ( See Mexican Business Reorganization Act at Arts. 148-151.) So long as a debtor remains in control of its business, the *conciliador* is empowered to "monitor the accounting and any transactions carried out by the Merchant." (See Mexican Business Reorganization Act at Art. 75.) In addition, a *conciliador* is empowered to authorize the acceptance or rejection of the debtor's executory contracts, incurrence of additional debt, and post-petition sale of assets outside the regular course of business. (See Mexican Business Reorganization Act at Art. 75.) A *conciliador* is further empowered to ask the Mexican District Court to remove and replace the management of the debtor if done so to protect the debtor's estate. (See Mexican Business Reorganization Act at Art. 81.)

15. The conciliation process can last no longer than 365 days. (See Mexican Business Reorganization Act at Art. 145.) If, within that time, a plan of reorganization is not proposed, a debtor will be directed by the Mexican District Court to commence liquidation proceedings.

16. If a debtor, with the assistance of a *conciliador*, succeeds in formulating a reorganization agreement or plan (a "*convenio*"), the *conciliador* must submit such *convenio* to the debtor's creditors for their approval. In order to be considered valid, among other

requirements, a *convenio* must be ratified by a majority of "common" creditors, as further explained herein. (See Mexican Business Reorganization Act at Art. 157.)

17. After receiving approval of a *convenio* from the debtor's creditors, the *conciliador* must submit the *convenio* to the Mexican District Court in charge of the proceeding for its own review and approval. (See Mexican Business Reorganization Act at Art. 161.) Creditors who object to a *convenio* are entitled to file objections. (See Mexican Business Reorganization Act at Art. 162.) Following this period of comments and objections, the Mexican District Court may approve the *convenio* if it finds that the "proposed agreement meets all of the [applicable] requirements . . . and is not inconsistent with any public policy provision." (See Mexican Business Reorganization Act at Art. 164.)[4]

**B.      Mexican Business Reorganization Act Satisfies All Applicable Factors of Section 1507 of Bankruptcy Code for Granting Additional Relief**

        **(i)      *Provisions Providing for Just Treatment of All Holders of Claims Against or Interests in Debtor's Property***

18. In accordance with my understanding of section 1507(b)(1) of the Bankruptcy Code, the Mexican Business Reorganization Act provides for the just treatment of all holders of claims against or interests in a debtor's property, including foreign creditors. Article 290 of the Mexican Business Reorganization Act specifically provides that "foreign creditors shall have the same rights as Mexican creditors in relation to the commencement of a proceeding in this State and the participation in it pursuant to this act." (Mexican Business Reorganization Act at Art. 290.)

---

[4]     The foregoing description of a reorganization agreement process summarizes only the most pertinent provisions of the Mexican Business Reorganization Act.

**(ii)** *Protection of Foreign Creditors Against Prejudice and Inconvenience in Processing of Claims in Mexican Proceeding*

19. In accordance with my understanding of section 1507(b)(2) of the Bankruptcy Code, the Mexican Business Reorganization Act protects the rights of foreign creditors, including those in the United States, against prejudice and inconvenience in the processing of claims against a debtor. Specifically, the Mexican Business Reorganization Act expressly provides that claims of foreign creditors will be treated exactly the same as those of domestic creditors and even extends the term for filing initial proofs of claim for foreign creditors. (See Mexican Business Reorganization Act at Arts. 290, 291.)

**(iii)** *Protection Against Preferential or Fraudulent Disposition of Property of the Debtor*

20. In accordance with my understanding of with section 1507(b)(3) of the Bankruptcy Code, the Mexican Business Reorganization Act contains several protections against the preferential or fraudulent disposition of property of a debtor's estate.

21. First, throughout the entire process of reorganization, a debtor's estate is subject both to the review of a Mexican District Court and the specific review and supervision of an outside *visitador* (in the initial phase)[5] and the independent *conciliador* (in the conciliation phase). (See Mexican Business Reorganization Act at Art. 75.)

22. Second, Chapter VI of Title Three of the Mexican Business Reorganization Act (Articles 112-119) sets forth specific provisions prohibiting fraudulent acts against creditors, including fraudulent conveyances, transactions with family members, and transactions with related business associations, if done without proper consideration.

---

[5] As noted above, because Vitro's case is a Mexican Pre-Pack, no *visitador* or other independent examiner has been or will be appointed unless and until the Mexican Proceeding enters a conciliation phase.

23. <u>Third</u>, if a *conciliador* suspects fraud or preferential treatment of creditors, he or she may ask the supervising Mexican District Court to remove the debtor's management. (<u>See</u> Mexican Business Reorganization Act at Art. 81.)

### (iv) *Provisions Pertaining to Priority and Distribution of Debtor's Property or Proceeds Thereof*

24. Finally, in accordance with my understanding of section 1507(b)(4) of the Bankruptcy Code, the Mexican Business Reorganization Act provides for the recognition and prioritizing of creditor claims and the distribution of estate assets in accordance with such ranking, substantially in accordance with my understanding of the prioritization scheme provided by the Bankruptcy Code. Articles 217 through 228 of the Mexican Business Reorganization Act set forth a comprehensive ranking of creditor priorities. Apart from the *sui generis* category of "singularly privileged creditors," creditor classes are categorized and ranked as "creditors with collateral," "creditors with special privileges," and "common creditors." (<u>See</u> Mexican Business Reorganization Act at Art. 217.)

25. "<u>Creditors with collateral</u>" are defined as mortgagees and pledgees—based on the most common forms of security interest in Mexico. Such creditors are paid distributions out of the proceeds of the property used to collateralized their mortgages or pledges, and generally in the order that such pledges or mortgages have been registered in accordance with the applicable Mexican laws. (<u>See</u> Mexican Business Reorganization Act at Art. 219.)

26. "<u>Creditors with a special privilege</u>" are "those who, according to the Mexican Commerce Code or the applicable law, have a special privilege or a retention right," such as sellers in possession. (<u>See</u> Mexican Business Reorganization Act at Art. 220.)

27. "Common Creditors" are all creditors other than those described above. Such creditors collect on a *pro rata* basis without distinction as to the dates their claims against the debtor arose. (See Mexican Business Reorganization Act at Art. 222.)

28. In addition to the creditor rankings set forth above, the Mexican Business Reorganization Act recognizes certain administrative expenses of a debtor's estate which receive priority over any other claim. They consist of: (i) expenses incurred by the debtor in the administration of its estate, provided that such expenses are approved by a *conciliador*; (ii) expenses incurred in connection with the protection and preservation of the debtor's estate; (iii) expenses incurred as a result of judicial or extra-judicial proceedings that benefit the debtor's estate; and (iv) the necessary fees and expenses incurred by a *conciliador*, so long as such fees and expenses are in accordance with the regulations of the IFECOM.

29. The foregoing administrative expenses do not take priority, however, over creditors with collateral—which are senior in the order of priority—unless such expenses are (i) the result of "any litigation filed to defend or recover any properties which were the subject of the collateral or to which the privilege applies" or (ii) "necessary for the repair, preservation and sale" of the collateral to which the privilege applies. (See Mexican Business Reorganization Act at Art. 225.)

30. Article 221 requires that any tax and labor related liabilities be paid after satisfaction of the claims of the above-mentioned secured creditors. If a tax liability is secured by collateral, however, such liability will be treated in accordance with the priority afforded to creditors with collateral in accordance with Articles 217 and 225.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 13th day of December, 2010
in Santa Fé, México, D.F.

/s/ Alonso Rivera Gaxiola  
Alonso Rivera Gaxiola

Rivera Gaxiola y Asociados, S.C.
Boulevard Manuel Ávila Camacho 32, Torre Esmeralda III, Piso 11
Colonia Lomas de Chapultepec, 11000, México, D.F.
Telephone:  52-55-1084-1230
Fax:  52-55-1084-1239

*Corporate and Restructuring Counsel*
*to Vitro, S.A.B. de C.V. in Concurso*
*Proceeding Pending in Mexico*